**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JAERED N. ANDREWS, et al.,

                    Plaintiffs,

    vs.

FREMANTLEMEDIA N.A., INC., et al.,

                   Defendants.

Case No. 13-cv-5174-NRB

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFFS' NOVEMBER 12, 2013 COMPLAINT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

LEGAL DISCUSSION ...........................................................................................3

    I.      THE SECTION 1981 CLAIMS (COUNTS I, II, AND III) FAIL..........................3

          A.  Counts I, II, And III Are Time-Barred...............................................3

          B.  Counts I, II, And III Are Barred By The First Amendment ............................6

          C.  Plaintiffs' Allegations Fail To State A Section 1981 Claim...........................10

          D.  Plaintiffs Lack Standing To Seek Injunctive Relief In Count I .....................12

    II.     THE SECTION 1985(3) CLAIM (COUNT IV) FAILS.......................................13

          A.  Count IV Is Time-Barred ...............................................................13

          B.  Plaintiffs' Allegations Are Insufficient To Plead A Section 1985(3) Claim....................................................................................14

    III.    THE CLAIM FOR RESCISSION (COUNT V) FAILS.......................................15

          A.  There Is No Common Law Basis To Void The Contestant Agreements.........16

          B.  There Is No Statutory Basis To Void The Contestant Agreements ................18

    IV.    THE UNJUST ENRICHMENT CLAIM (COUNT VI) FAILS ...........................23

    V.     THE TITLE VII CLAIM (COUNT VII) FAILS ..................................................25

CONCLUSION....................................................................................................25

# TABLE OF AUTHORITIES

**Page**

### CASES

*Acosta v. City of N.Y.*,
2012 WL 1506954 (S.D.N.Y. Apr. 26, 2012)......................................................................11

*Alma Soc'y v. Mellon*,
601 F.2d 1225 (2d Cir. 1979)............................................................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................................12

*Baptiste v. N.Y. City Transit Auth.*,
2004 WL 626198 (S.D.N.Y. Mar. 29, 2004).....................................................................15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................................................17

*Best v. Berard*,
776 F. Supp. 2d 752 (N.D. Ill. 2011).................................................................................6

*Bhanusali v. Orange Reg'l Med. Ctr.*,
2013 WL 4828657 (S.D.N.Y. Aug. 2, 2013).....................................................................10

*Bioquest Venture Leasing Co.-A, N.V. v. VivoRx Autoimmune, Inc.*,
2009 WL 3719534 (Cal. Ct. App. Nov. 5, 2009)...............................................................24

*Bishop v. Best Buy, Co.*,
2010 WL 4159566 (S.D.N.Y. Oct. 13, 2010)...............................................................14, 15

*Bray v. Alexandria Women's Health Clinic*,
506 U.S. 263 (1993)..........................................................................................................14

*Brown v. City of Oneonta*,
221 F.3d 329 (2d Cir. 2000)..............................................................................................14

*Burstyn v. Wilson*,
343 U.S. 495 (1952)..........................................................................................................8

*Cal. Med. Assn. v. Aetna U.S. Healthcare of Cal., Inc.*,
94 Cal. App. 4th 151 (2008)..............................................................................................24

*Capri v. L.A. Fitness Int'l, LLC*,
136 Cal. App. 4th 1078 (2006) .........................................................................................22

*Carpenter v. Am. Honda Motor Co., Inc.*,
2004 WL 2596007 (Cal. Ct. App. Nov. 16, 2004).............................................................22

*Chukwueze v. NYCERS*,
891 F. Supp. 2d 443 (S.D.N.Y. 2012)...............................................................................25

i

## TABLE OF AUTHORITIES

**Page**

*Circuit City Stores, Inc. v. Adams,*
  532 U.S. 105 (2001)...................................................................................5

*City of L.A. v. Lyons,*
  461 U.S. 95 (1983)....................................................................................13

*Claybrooks v. Am. Broad. Cos., Inc.,*
  898 F. Supp. 2d 986 (M.D. Tenn. 2012).............................................6, 7, 9

*Clement v. United Homes, LLC,*
  914 F. Supp. 2d 362 (2d Cir. 2012) ........................................................6

*Dickerson v. State Farm Fire & Cas. Co.,*
  1996 WL 445076 (S.D.N.Y. Aug. 1, 1996)..............................................3

*Dieu v. McGraw,*
  2011 WL 38031 (Cal. Ct. App. Jan. 6, 2011)..........................................22

*DiFolco v. MSNBC Cable L.L.C.,*
  622 F.3d 104 (2d Cir. 2010)....................................................................16

*Durell v. Sharp Healthcare,*
  183 Cal. App. 4th 1350 (2010) ..........................................................23, 24

*Ellis v. Costco Wholesale Corp.,*
  657 F.3d 970 (9th Cir. 2011) ..................................................................13

*Frusetta v. Hauben,*
  217 Cal. App. 3d 551 (1990) ..................................................................17

*Gelbman v. Valleycrest Prod. Ltd.,*
  732 N.Y.S.2d 528 (N.Y. Sup. Ct. 2001) ................................................17

*Gen. Bldg. Contractors Ass'n v. Pa.,*
  458 U.S. 375 (1982)................................................................................11

*Gensler & Assocs., Inc. v. Larry Barrett, Inc.,*
  7 Cal. 3d 695 (1972) ..........................................................................20, 21

*Graham v. Long Island R.R.,*
  230 F.3d 34 (2d Cir. 2003)......................................................................11

*Grimes v. Fremont Gen. Corp.,*
  785 F. Supp. 2d 269 (S.D.N.Y. 2013)....................................................10

*Guitar v. Westinghouse Elec. Corp.,*
  396 F. Supp. 1042 (S.D.N.Y. 1975).......................................................20

## TABLE OF AUTHORITIES

**Page**

*Gulino v. N.Y. State Educ. Dep't*,
    460 F.3d 361, 370 (2d Cir. 2006)..................................................................4

*Gyadu v. Hartford Ins. Co.*,
    197 F.3d 590 (2d Cir.1999)..........................................................................15

*Hackbart v. Uppal*,
    2013 WL 4041955 (Cal. Ct. App. Aug. 8, 2013)........................................23

*Halliday v. Greene*,
    244 Cal. App. 2d 482 (1966) .......................................................................22

*Hason v. Office of Prof'l Med. Conduct*,
    314 F. Supp. 2d 241 (S.D.N.Y. 2004)..........................................................13

*Henderson v. City of N.Y.*,
    818 F. Supp. 2d 573 (E.D.N.Y. 2011) .........................................................14

*Higgins v. Disney/ABC Int'l Television, Inc.*,
    2009 WL 692701 (Cal. Ct. App. Mar. 18, 2009).....................................17, 22

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
    515 U.S. 557 (1995)................................................................................6, 7, 9

*Ibarra v. W.Q.S.U. Radio Broad. Org.*,
    2006 U.S. Dist. LEXIS 97642 (M.D. Pa. Mar. 8, 2006)..............................20

*In re Kolob Broad. Co.*,
    36 F.C.C.2d 586 (1972) ...............................................................................19

*Jones v. R.R. Donnelley & Sons, Co.*,
    541 U.S. 369 (2004).....................................................................................3, 5

*Keitt v. N.Y. City*,
    882 F. Supp. 2d 412 (S.D.N.Y. 2011)..........................................................13

*Klein v. Chevron U.S.A., Inc.*,
    202 Cal. App. 4th 1342 (2012) ....................................................................24

*Levine v. Blue Shield of Cal.*,
    189 Cal. App. 4th 1117 (2010) ....................................................................23

*Mahmud v. Kaufmann*,
    496 F. Supp. 2d 266 (S.D.N.Y. 2007)..........................................................4, 5

*McBride v. Boughton*,
    123 Cal. App. 4th 379 (2004) ......................................................................23

## TABLE OF AUTHORITIES

Page

*Melody Music, Inc. v. F.C.C.*,
  345 F.2d 730 (1965)....................................................................................................19

*Munoz v. MacMillan*,
  195 Cal. App. 4th 648 (2011) ......................................................................................23

*N.Y. State Nat'l Org. for Women v. Terry*,
  886 F.2d 1339 (2d Cir. 1989)......................................................................................14

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro LLP*,
  150 Cal. App. 4th 384 (2007) ......................................................................................23

*Perelman v. Deul*,
  2002 WL 1797228 (Cal. Ct. App. Aug. 6, 2002).......................................................24

*Peterson v. Cellco P'ship*,
  164 Cal. App. 4th 1583 (2008) ....................................................................................23

*Rosenthal v. Great W. Fin. Sec. Corp.*,
  14 Cal. App. 4th 394 (1996) ........................................................................................18

*Rosner v. Valleycrest Prod. Ltd.*,
  2003 WL 1701888 (Cal. App. Dep't Super. Ct. Jan. 13, 2003)..................................17

*Rosner v. Valleycrest Prod. Ltd.*,
  2004 WL 1166175 (Cal. Ct. App. May 26, 2004) ......................................................18

*Russell v. Cnty. of Nassau*,
  696 F. Supp. 2d 213 (E.D.N.Y. 2010) ........................................................................15

*Schad v. Mt. Ephraim*,
  452 U.S. 61 (1981)........................................................................................................6

*Stoner v. Young Concert Artists, Inc.*,
  2012 WL 4471602 (S.D.N.Y Sept. 26, 2012).............................................................12

*Styne v. Stevens*,
  26 Cal. 4th 42 (2001) ...................................................................................................21

*Sutcliffe v. Wells Fargo Bank, N.A.*,
  283 F.R.D. 533 (N.D. Cal. 2012).................................................................................16

*Tadros v. Coleman*,
  898 F.2d 10 (2d Cir. 1990) ............................................................................................4

*Town of Babylon v. Fed. Hous. Fin. Agency*,
  699 F.3d 221 (2d Cir. 2012)...........................................................................................3

# TABLE OF AUTHORITIES

**Page**

*U.S. v. Edge Broadcasting Co.,*
   509 U.S. 418 (1993)...........................................................................................8

*Wal-Mart Stores, Inc. v. Dukes,*
   131 S. Ct. 2541 (2011).....................................................................................13

*Washington v. Davis,*
   426 U.S. 229 (1976).........................................................................................11

*Webb v. Goord,*
   340 F.3d 105 (2d Cir. 2003)............................................................................15

*Winters v. N.Y.,*
   333 U.S. 507 (1948)...........................................................................................8

## STATUTES

42 U.S.C. § 1981 .................................................................................... passim

42 U.S.C. § 2000e–5 ....................................................................................25

47 U.S.C. § 502 ............................................................................................21

47 U.S.C. § 503(b) .......................................................................................20

47 U.S.C. § 509 ................................................................................18, 19, 20

CAL. CIV. PROC. CODE § 337(3) ..................................................................15

CAL. CIV. CODE § 1599 ...............................................................................22

CAL. CIV. CODE § 1668 .........................................................................16, 22

## REGULATIONS

47 C.F.R. § 73.1216 ...............................................................................20, 21

## PRELIMINARY STATEMENT

The ten plaintiffs in this lawsuit are former *American Idol* contestants who were eliminated from the show, either by public vote or through disqualification, as long as *ten years* ago.  Long after the statutes of limitations have expired for all but one plaintiff, they now ask the Court to revisit their eliminations.  Their core claim is that the producers of *American Idol* have discriminated against African-American male contestants, treating them less favorably than others and depriving them of the same opportunity to remain on the show that others received.[1]

Beyond the staleness of their claims, plaintiffs' assertions cannot be reconciled with reality.  By their own allegations, from the show's inception, approximately one-third of the "Golden Ticket" winners (who advance beyond the open auditions and travel to Hollywood), have been African American.  Plaintiffs also allege that approximately one-third of *American Idol*'s semi-finalists have been African American.[2]  During the show's twelve seasons, *four* of the winners have been African American.  African Americans thus have participated in key stages of the contest at more than double their proportion of the country's population.

Since 2002, *American Idol* has offered its contestants—regardless of race, gender, sexual orientation, or any other protected category—an opportunity to become the country's next music star.  The show is more than a talent contest, however.  As plaintiffs' complaint acknowledges, the show dramatizes the lives of the contestants, telling their back stories, personal struggles, and ambitions.  As an expressive work, *American Idol* is entitled to the First Amendment's full protection.  Thus, as explained below, the First Amendment bars plaintiffs' claims.

---

[1] Plaintiffs call this pleading an "abbreviated" complaint, a form of pleading not recognized by the Federal Rules of Civil Procedure.  In reality, it is plaintiffs' third amended complaint.  They initiated this action on July 24, 2013.  They amended that pleading before uploading it to PACER later that day.  They filed a *second* amended complaint on November 11.  Without leave of Court, they filed a *third* amended complaint ("TAC") on November 12.

[2] Prior to the semi-final stage, eligible contestants advance based on votes by expert judges.  Semi-finalist contestants advance based on votes from the audience.

Defendants noted the many legal defects with each of plaintiffs' claims in a September 26 letter to the Court, as the initial step in moving to dismiss this lawsuit. On October 3, the Court gave plaintiffs 30 days to file an amended complaint compliant with Rule 8. At 253 pages, the amended complaint is still not the "short and plain statement" required by Rule 8. Regardless, each claim—without exception—fails as a matter of law.

To begin, Counts I, II, and III, brought under section 1981 of the Civil Rights Act, are all time-barred, except for Chris Golightly's claim under Count II. These counts are also barred by the First Amendment because plaintiffs seek to force a change in the content of the show, contrary to established law. Moreover, despite the complaint's length, it fails to allege any facts to support racial animus or link such alleged animus to plaintiffs' disqualifications (much less their elimination by public vote), as required to state a claim under section 1981.

Count IV, brought under section 1985(3) of the Civil Rights Act, also suffers from fatal defects. First, it too is time-barred. Second, plaintiffs have not alleged—and cannot allege—the requisite wrongs: that defendants either violated plaintiffs' Thirteenth Amendment right to be free from involuntary servitude or to travel freely between the states, or that their claims arise from state action under the Fourteenth Amendment. Nor, as required under section 1985(3), have plaintiffs alleged a conspiracy to harm their constitutional rights.

The remaining Counts fare no better. Count V, framed as a rescission claim, seeks to invalidate the contestant agreements in which defendants agreed to provide plaintiffs an opportunity to be considered for the show, as well as travel and lodging costs, in exchange for plaintiffs' intellectual property and publicity rights and a limitation on defendants' liability. Apart from being time-barred (except for Golightly), similar contestant agreements have been upheld and enforced elsewhere, and the same result should occur here. To the extent that Count VI, a claim for unjust enrichment, constitutes a valid cause of action, it is time-barred. Further,

the principles of unjust enrichment are inapplicable where the subject matter of the claim is governed by an express contract as here.

As for Count VII, brought under Title VII of the Civil Rights Act, here too plaintiffs fall well outside the statute of limitations, and it too is barred by the First Amendment.

Plaintiffs cannot cure these matters with yet another amended complaint. Accordingly, defendants request that the Court grant this motion *without* leave to amend.

## LEGAL DISCUSSION[3]

## I.   THE SECTION 1981 CLAIMS (COUNTS I, II, AND III) FAIL.

Counts I, II, and III assert claims under 42 U.S.C. section 1981 ("Section 1981"). Count I alleges that defendants discriminated against plaintiffs in the making and enforcement of employment contracts. It seeks damages, as well as injunctive relief to limit defendants' actions towards future contestants.[4] Count II alleges that defendants interfered with making and enforcing "Prize Contracts" and seeks damages of $25 million per plaintiff.[5] Count III alleges that defendants interfered with other rights and seeks their restoration. All three Counts fail.[6]

### A.   Counts I, II, And III Are Time-Barred.

The statute of limitations for a Section 1981 claim depends on whether the claim arises under the original statute or the 1991 amendments. *Jones v. R.R. Donnelley & Sons, Co.*, 541 U.S. 369, 382 (2004). A claim arising under the original statute is subject to the forum state's

---

[3] Although defendants disagree with the allegations in the complaint, plaintiffs *factual* allegations are assumed to be true for the purpose of this motion. *See Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012). And as the Court stated during the pre-motion conference, plaintiffs' allegations in the prior pleadings are admissions which the Court can rely on in ruling on this motion.

[4] The complaint refers to the entity defendants as "Defendants." In Count I, that term is over-inclusive, as no claim is stated against the "sponsor defendants," Ford, Coca-Cola, and AT&T.

[5] Plaintiffs make allegations about three contracts: (1) Contestant Agreements, signed by Golden Ticket holders, TAC ¶ 228; (2) Prize Contracts, signed by the finalists in the first three seasons and the semi-finalists in the show's subsequent seasons, TAC ¶ 194; and (3) employment contracts, signed by the finalists, TAC ¶¶ 248, 1015.

[6] Beyond these arguments, Jacob John Smalley and Ju'not Joyner were eliminated based on the public vote, *see* TAC ¶¶ 404-405, 675, and thus cannot allege a Section 1981 claim, as defendants did not take any adverse action against them. *See Dickerson v. State Farm Fire & Cas. Co.*, 1996 WL 445076, at *3 (S.D.N.Y. Aug. 1, 1996) (a Section 1981 claim must involve adverse treatment).

statute of limitations.  A claim arising under the 1991 amendments is subject to the four-year federal "catch all" period.  *Id.*

In Count I, plaintiffs, other than Corey Clark, allege that, as "applicant[s] for employment," defendants interfered in the formation of their employment contracts.  (*See, e.g.*, TAC ¶¶ 1018, 1051.)[7]  Thus, for these nine so-called "employee-applicant" plaintiffs, Count I arises under the pre-1991 provisions of Section 1981.  *See, e.g.*, *Mahmud v. Kaufmann*, 496 F. Supp. 2d 266, 272 (S.D.N.Y. 2007) (Section 1981 claim involving right to enter contracts arises under "the original statute" enacted in 1964).  Accordingly, New York's three-year statute of limitations for personal injury claims applies.  *See Tadros v. Coleman*, 898 F.2d 10, 12 (2d Cir. 1990) (New York's three-year statute of limitations for personal injury actions applies to Section 1981 claims).  Here, the so-called employee-applicant plaintiffs admit they were disqualified from or voted off the show between January 31, 2003 and February 10, 2010.  (*See* TAC ¶¶ 266 (Jaered Andrews disqualified on Jan. 31, 2003), 405 (Smalley voted off on Feb. 13, 2003), 413 (Donnie Williams disqualified on Feb. 25, 2004), 462 (Terrell and Derrell Brittenum disqualified on Jan. 22, 2006), 579-81 (Akron Watson disqualified on Nov. 9, 2006), 556-58, 538 (Thomas Daniels disqualified in January 2007), 672-73 (Joyner voted off in February 2009), 709 (Golightly disqualified on Feb. 16, 2010).)  Because the nine so-called employee-applicant plaintiffs were disqualified or voted off more than three years before they sued on July 24, 2013, their claims are time-barred.

The remaining plaintiff, Clark, does not bring his claim as a purported employee applicant but instead alleges that his disqualification interfered with the "benefits and privileges"

---

[7] While defendants disagree that plaintiffs were employees or employee applicants, this motion assumes, as it must, that they were employees or employee applicants of defendant American Idol Productions ("AIP") as alleged.  (*See* TAC ¶¶ 42, 247).  Plaintiffs, however, have not alleged, and cannot allege, any employment relationship as to the remaining defendants.  Accordingly, with respect to all defendants other than AIP, Counts I and VII must be dismissed for this independent reason.  *See, e.g.*, *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006) ("[T]he existence of an employer-employee relationship is a primary element of Title VII claims.")

of his employment contract as a Top 10 contestant.  (TAC ¶¶ 1015-16, 1026.)  Clark's claim thus arises under Section 1981(b) of the 1991 amendments and is subject to the federal four-year statute of limitations.  *See Jones*, 541 U.S. at 383.  Clark was disqualified on March 31, 2003—more than ten years before he filed suit.  (TAC ¶ 367.)  Thus, his claim is time-barred.

In Count II, Andrews, Smalley, Williams, T. Brittenum, D. Brittenum, Daniels, and Watson allege interference in the formation of the Prize Contracts, *see, e.g.*, TAC p. 204 (entitled "Prize Contracts"), ¶¶ 1077, 1097, which, as explained above, is a claim subject to New York's three-year statute of limitations.  *See Mahmud*, 496 F. Supp. 2d at 272.  Here, too, the claims are time-barred because they were all disqualified more than three years before filing suit.  *See supra* p. 4.  The remaining plaintiffs, Clark, Joyner, and Golightly (the plaintiffs who signed the Prize Contracts, TAC ¶¶ 1076-77), claim interference with the "benefits and privileges" of these contracts.  (TAC ¶ 1095.)  Their claim is thus subject to the federal four-year limitations period.  *See Jones*, 541 U.S. at 383.  Clark and Joyner were disqualified ten and four years, respectively, before filing suit; their claims are time-barred.  *See supra* p. 4.  Golightly was disqualified three and a half years ago.  *See id*.  He is the only plaintiff whose Count II claim is not time-barred.[8]

Count III alleges that defendants interfered with plaintiffs' proprietary ownership interests, TAC ¶¶ 1119-23, 1127, which arises under the pre-1991 provisions.  *See* 42 U.S.C. § 1981(a) (all persons shall have the same right to the "full and equal benefit of all laws … for the security of persons and property") (not amended since 1964).  Thus, Count III is governed by New York's three-year period.  Because *all* plaintiffs were disqualified or voted off more than three years before they filed suit, Count III is entirely time-barred.  *See supra* p. 4, TAC ¶ 367.

---

[8] Golightly's claim under Count II independently fails for the reasons described below.  Moreover, even if Golightly had any viable claims, they would be subject to mandatory arbitration and should be dismissed.  *See* Robertson Decl. Ex. 2 at p. 20; *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001).  By filing this motion, defendants are not waiving their right to compel arbitration, but rather expressly reserve this right.

Knowing that their Section 1981 claims are untimely, plaintiffs allege that they did not "discover" defendants' alleged racial discrimination until the disqualification of a contestant known as "JXJ" (who is not a plaintiff) on March 14, 2012.  (TAC ¶ 722 n.6, ¶¶ 1057-58, 1060, 1104, 1130,  1140-41.)  The so-called discovery rule, however, cannot revive plaintiffs' claims. As an initial matter, plaintiffs fail to plead any facts explaining how JXJ's disqualification somehow revealed defendants' alleged discriminatory practices going back ten years, much less plead that JXJ's disqualification was racially motivated, TAC ¶¶ 748-50, 752, a fact which JXJ himself denies, TAC ¶ 722 n.6.  But even under the discovery rule, the limitations period "begins to run when [the plaintiff] learns of the discriminatory conduct, e.g. the unlawful termination, not when the plaintiff has reason to know of a possibly discriminatory motive for that conduct." *Clement v. United Homes, LLC,* 914 F. Supp. 2d 362, 372 (2d Cir. 2012).  Thus, even if the discovery rule applied, it would not change the outcome here.

## B.    Counts I, II, And III Are Barred By The First Amendment.

The anti-discrimination laws are a crucial part of American jurisprudence.  But plaintiffs cannot invoke them to limit defendants' First Amendment rights.  *See Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 580 (1995) (discrimination laws yield to the First Amendment where they seek to alter expressive speech).  The First Amendment's protections extend not just to newsgathering and political speech, but to most forms of entertainment.  *Schad v. Mt. Ephraim*, 452 U.S. 61, 65 (1981).  Television programs, including unscripted "reality" television programming like *American Idol*, are entitled to the First Amendment's full protection. *See id.*; *Best v. Berard*, 776 F. Supp. 2d 752, 758 (N.D. Ill. 2011) (reality show *Female Forces* protected as expressive speech under First Amendment); *Claybrooks v. Am. Broad. Cos., Inc.*, 898 F. Supp. 2d 986, 993 (M.D. Tenn. 2012) (reality shows *The Bachelor* and *The Bachelorette* protected as expressive speech under First Amendment).

In the case of reality programming, where the participants are—by the nature of the show—central features of the content, the First Amendment protection extends to decisions regarding who will participate. *See Claybrooks*, 898 F. Supp. 2d at 993, 999 ("[C]asting and the resulting work of entertainment are inseparable and must both be protected to ensure that the producers' freedom of speech is not abridged.") (emphasis in original).[9]

Plaintiffs' complaints about their disqualifications from the program go to the heart of fundamentally expressive decisions that are protected by the First Amendment. *See Hurley*, 515 U.S. at 574 (parade organizer's discretion to decide *who to include* in the parade was "enough to invoke its rights as a private speaker to shape its expression"). Plaintiffs themselves claim that *American Idol* is more than a singing contest. It is a narrative about the contestants and their personal stories. (*See, e.g.*, TAC ¶¶ 575 (Watson was excited to tell "his background story" on *American Idol*), 723, 731 (describing *American Idol*'s focus on contestant JXJ's personal backstory), 681 (alleging that certain contestants' "'background stories' were structured with greater care").) In fact, plaintiffs go further and allege that *American Idol* is a scripted "dramatic fiction," with the contestants being "actors" "cast" by defendants. (TAC ¶ 1132; *see also* TAC ¶ 1128 (the show "is a scripted dramatic work in which the Contestants are cast by [defendants] … to play a role in the Production."), 1157 (arrests and public disqualifications "were scripted into the *American Idol* television program by [defendants], who played out the drama as it unfolded and who thereafter promoted the scandals as a core part of the program's 'behind-the-scenes' narrative"), 1255 (the show has "scripted 'casting'"), 681 (Joyner stating "We're all actors.").)

This is not a minor aspect of plaintiffs' claim. Rather, the overarching theme of the complaint is that defendants used the show *to tell a story* of "white redemption" posed against a story "condemn[ing] Black *American Idol* Contestants[.]" (TAC ¶ 939.) While defendants deny

---

[9] Unless otherwise noted, all emphases are added.

these accusations, plaintiffs' own words demonstrate that they are attacking constitutionally protected speech.  Plaintiffs claim defendants:

- made "conscious, deliberate choices which invariably sought to condemn Black *American Idol* Contestants while at the same time making decisions to advertise the criminal record history of a very select number of White *American Idol* Contestants in order to 'teach' audiences about the virtue of redemption," TAC ¶ 939;

- "released the criminal arrest history of the white [ ] Contestants to … triumphantly champion[] them as models of excellence who were given a second chance to 'turn their life around' and live the 'American Dream' through participation on *American Idol*," TAC ¶ 935;

- "humanized" the criminal arrest records of the white contestants and "re-contextualized [them] into a story of redemption and positivity," TAC ¶ 947;

- "portrayed [plaintiffs] as 'untrustworthy' and 'dangerous criminals' who had to be cast into exile," TAC ¶ 936;

- "portrayed plaintiffs as stereotypical 'black criminals,'" TAC ¶ 944;

- engaged in "racial propaganda" with "commercial speech intending to indoctrinate target audiences with 'lessons' about the 'criminality' of young, Black males," TAC ¶ 1152(a);[10]

- sought to "propagate stereotypes that depict Black *American Idol* contestants as untrustworthy," TAC ¶ 306; and

- "utilized [disqualifications] for maximum 'indoctrination' effect." (TAC ¶ 946.)

---

[10] Although defendants did not engage in any such conduct, "propaganda" is a classic form of First Amendment-protected activity.  *See Winters v. N.Y.*, 333 U.S. 507, 510 (1948) ("The line between the informing and the entertaining is too elusive for the protection of that basic right [to a free press].  Everyone is familiar with instances of propaganda through fiction.  What is one man's amusement, teaches another's doctrine.").  And plaintiffs' labeling of *American Idol* as "commercial" speech (thus entitled to a lesser level of First Amendment protection) does not make it so.  *See U.S. v. Edge Broadcasting Co.*, 509 U.S. 418, 426 (1993).  *American Idol* is an expressive work entitled to full protection.  *Cf. Burstyn v. Wilson*, 343 U.S. 495, 501-02 (1952) (the commercial production, distribution, and exhibition of an expressive work does not transform it into commercial speech).

In fact, plaintiffs go so far as to seek injunctive relief to prevent defendants from making certain decisions about how to portray contestants, which contestants to disqualify, and how to depict any disqualifications.  (TAC p. 251.)  Plaintiffs thus seek to use Section 1981 to regulate defendants' creative choices and replace defendants' expressive "message" with their own.  This "violates the fundamental rule of protection under the First Amendment[:] that a speaker has autonomy to choose the content of his own message."  *Hurley*, 515 U.S. at 578.[11]

A district court in Tennessee last year rejected a similar attempt by would-be contestants on another television show, *The Bachelor*, to invoke Section 1981 to challenge the producers' decisions as to the race of the persons appearing on the show.  In *Claybrooks*, 898 F. Supp. 2d at 993, the court granted a Rule 12(b)(6) motion on the Section 1981 claim on First Amendment grounds, recognizing that invoking Section 1981 to undo decisions about the race of the contestants would change the message of the program and the stories it told.  *Id.* at 999 (finding that by plaintiffs' own allegations, their claim would alter defendants' message in order to "showcase [plaintiffs'] own more progressive message," in violation of the First Amendment); *see also id.* at 1000 ("[W]hatever messages *The Bachelor* and *The Bachelorette* communicate or are intended to communicate—whether explicitly, implicitly, intentionally, or otherwise—the First Amendment protects the right of the producers of these Shows to craft and control those messages, based on whatever considerations the producers wish to take into account.").

Because plaintiffs are impermissibly "attempt[ing] to regulate the content" of *American Idol* in violation of the First Amendment, the Court must dismiss their Section 1981 claims.  *Claybrooks*, 898 F. Supp. 2d at 999; *see also Hurley*, 515 U.S. at 578.  This cannot be cured with an amendment.  Accordingly, the dismissal should be with prejudice.

---

[11] Whether defendants are presenting a particular message is irrelevant.  *See id.* at 574 (even though the parade in *Hurley* did not produce a "particularized message," the organizer's discretion to decide who to include was "enough to invoke its rights as a private speaker to shape it expression").

C.      **Plaintiffs' Allegations Fail To State A Section 1981 Claim.**

To state a Section 1981 claim, a plaintiff must "specifically plead[]" not only "events of the intentional and purposeful discrimination" and "the racial animus" behind defendants' actions, but also a causal link between the two.  *See Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 295-96 (S.D.N.Y. 2011) (citing *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 338 (S.D.N.Y. 1999)).  Despite its length, the complaint does not contain such allegations.  Plaintiffs make no more than conclusory assertions of discrimination, *see, e.g.*, TAC ¶¶ 1137-38, 968, 979, 282, 720, and fail to allege any *facts* that constitute racial animus or link defendants' alleged animus to plaintiffs' disqualifications or eliminations.

To overcome that defect, plaintiffs attempt to juxtapose their disqualifications against the treatment of other contestants.  (*See* TAC ¶¶ 784-897, 927-34.)  But plaintiffs fail to identify legally valid comparators.  To constitute a valid comparator, the individual allegedly treated differently must be so similarly situated to plaintiff, except as to race, to give rise to an inference of racial discrimination.  *Bhanusali v. Orange Reg'l Med. Ctr.*, 2013 WL 4828657, at *5 (S.D.N.Y. Aug. 2, 2013) (dismissing Section 1981 claim because plaintiff failed to "plausibly allege that [the] comparators were similarly situated in all material respects," and therefore "failed to allege facts sufficient to plausibly support an inference of discriminatory intent").

For five of the plaintiffs (Smalley, Joyner, Golightly, T. Brittenum, and D. Brittenum), the complaint does not even *identify* a white contestant who was purportedly treated better.[12] (*See* TAC ¶¶ 927-34.)  As to the other five, the allegations confirm that the white comparators are not sufficiently similar to support an inference of discriminatory intent.  For example, unlike

---

[12] Amanda Overmyer, TAC ¶¶ 830-38, 932, Joanna Pacitti, TAC ¶¶ 839-45, and Amanda Brumfield, TAC ¶¶ 886-97, are not valid comparators as they were *female* contestants.  Plaintiffs claim discrimination against *men*.

Clark, his alleged comparator (Scott Savol) was allegedly forthright about his criminal history.[13] (*Compare* TAC ¶¶ 308, 342-43, *with* TAC ¶¶ 789, 792.)  Similarly, according to the complaint, Williams was cited for driving drunk the day before he was to perform live on the show, whereas his alleged comparators (Stefano Langone and Casey James) were arrested several months and a few years, respectively, prior to auditioning for the show.  (C*ompare* TAC ¶¶ 408-10, *with* TAC ¶¶ 871-82 *and* TAC ¶¶ 855-56.)   The other alleged comparators are similarly inadequate.[14]

Reading the complaint generously, the most plaintiffs have alleged is a time-barred disparate *impact* claim—that is, that African Americans were somehow disadvantaged by a race-neutral *American Idol* policy—not intentional disparate treatment, which requires a showing of intentional and less favorable treatment.  *See Washington v. Davis*, 426 U.S. 229, 239-40 (1976); *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2003).  Disparate impact alone is insufficient to state a Section 1981 claim.  *Gen. Bldg. Contractors Ass'n v. Pa.,* 458 U.S. 375, 391 (1982) (Section 1981 "can be violated only by intentional discrimination"); *see also Acosta v. City of N.Y.*, 2012 WL 1506954, at *5 (S.D.N.Y. Apr. 26, 2012) (dismissing claim where complaint "fail[ed] to advance a plausible claim for disparate treatment" under Section 1981).

Plaintiffs' pleading deficiencies are even more glaring as to the three sponsor defendants —who are named as defendants in Counts II and III, but only mentioned in passing.  (*See, e.g.*, TAC ¶ 1093.)  The sponsor defendants, who are *American Idol*'s advertisers, have no involvement in producing the show.  It is therefore not surprising that, in the 253-page

---

[13] Again, for the purpose of this motion only, defendants assume but do not necessarily agree with, these factual allegations regarding plaintiffs and their purported white comparators.

[14] Daniels violated contest rules by speaking with the press, unlike his alleged comparators.  *Compare* TAC ¶549, *with* TAC ¶¶ 869-85, *and* ¶¶ 853-68).  Andrews, who was disqualified for being involved in a pending criminal investigation for a violent incident that occurred during his participation on the show, is compared to a white contestant with a domestic violence incident that occurred well before he joined the show.  (*Compar*e TAC ¶¶ 258-59, *with* TAC ¶¶ 786-87, 792.)  Finally, Taylor Hicks had a drug charge, which was dropped, that occurred seven years prior to his participation on *American Idol*, while Watson's charge occurred more recently.  (*Compare* TAC ¶¶ 607, 817-18 *with* TAC ¶¶ 566-67, 571.)  And Bo Bice participated on the show two seasons before Watson, with a different set of circumstances surrounding any disqualification decisions.  (*Compare* TAC ¶ 793, *with* TAC ¶ 571.)

complaint, plaintiffs fail to allege anything beyond a conclusory statement about the sponsors' purported involvement in the alleged discriminatory disqualifications of *some* plaintiffs.  Such conclusory allegations are insufficient, and the sponsors should be dismissed.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Dismissal is also appropriate because, other than one plaintiff,[15] the complaint details legitimate, non-discriminatory reasons for the disqualifications.[16]  *See Stoner v. Young Concert Artists, Inc.*, 2012 WL 4471602, at *5 (S.D.N.Y Sept. 26, 2012) (dismissing discrimination claim because "plaintiff's pleadings … virtually establish defendant's non-discriminatory reasons for declining to advance him" in the competition.")  For example, Andrews, Clark, Williams, T. Brittenum, and D. Brittenum admit to having pending criminal charges during their participation on the show, casting doubt as to whether they could continuously be available to participate further.  (*See* TAC ¶ 1158.)  The complaint reveals that Daniels spoke with the media during the competition, TAC ¶ 549, a grounds for disqualification, *see* Robertson Decl. Ex. 1 at pp. A-1, A-2.  The complaint also admits that Golightly and Clark failed to disclose mandatory information in violation of the rules.  (*See* TAC ¶¶ 699 (Golightly previously member of band, DREAM5), 710 (implicitly admitting that Golightly did not disclose DREAM5 contract), 308 (Clark arrested), 342-43 (implicitly admitting that Clark answered "no" when asked if he had ever been arrested)); *cf*. Robertson Decl. Ex. 1 at p. 4; Ex. 2 at p. 4.  And Smalley and Joyner were voted off the show by the public, not disqualified by defendants.  (TAC ¶¶ 404-05, 675.)

### D.    Plaintiffs Lack Standing To Seek Injunctive Relief In Count I.

Count I requests primarily injunctive relief to limit defendants' actions towards future contestants.  (*See* TAC p. 251.)  Plaintiffs, however, are former contestants and have not shown

---

[15] The TAC does not explain the legitimate reason for Watson's disqualification.

[16] Again, defendants accept the factual allegations in the complaint as true and do not address the actual (or additional) reasons for the disqualifications.

(nor could they) a risk of repeated harm.  Thus, plaintiffs lack standing to seek injunctive relief.  *See City of L.A. v. Lyons*, 461 U.S. 95, 101-02 (1983) (to possess standing to pursue injunctive relief, plaintiffs must plead and demonstrate a "real and immediate threat of repeated injury"); *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2559-60 (2011) (holding that "those plaintiffs no longer employed by Wal-Mart lack standing to seek injunctive or declaratory relief against its employment practices"); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 988 (9th Cir. 2011) ("[O]nly current employees have standing to seek injunctive relief.").

## II.      THE SECTION 1985(3) CLAIM (COUNT IV) FAILS.

In Count IV, plaintiffs Andrews, T. Brittenum, D. Brittenum, Clark, Smalley, Watson, and Williams (the "1985 Plaintiffs") purport to assert a Section 1985(3) conspiracy claim against the two individual defendants, Nigel Lythgoe and Ken Warwick.  (*See* TAC ¶¶ 1144-69.)  Lythgoe and Warwick worked as executive producers for defendants 19 Entertainment and American Idol Productions, respectively.  The 1985 Plaintiffs claim that Lythgoe and Warwick conspired to deprive them of a purported Thirteenth Amendment right to be free from "badges and incidents of slavery" and their Fourteenth Amendment due process rights.  The claim fails.

### A.      Count IV Is Time-Barred.

Section 1985(3) claims filed in New York are subject to a three-year limitations period.  *See Hason v. Office of Prof'l Med. Conduct*, 314 F. Supp. 2d 241, 249-50 (S.D.N.Y. 2004); *Keitt v. N.Y. City*, 882 F. Supp. 2d 412, 423, 441 (S.D.N.Y. 2011).  The 1985 Plaintiffs were disqualified or voted off *seven to ten years* before they filed the complaint.  *See supra* p. 4.  Thus, Count IV is time-barred.

**B.      Plaintiffs' Allegations Are Insufficient To Plead A Section 1985(3) Claim.**

To plead a Section 1985(3) claim, a plaintiff must plead, *inter alia*, deprivation of a protected right and a conspiracy to deprive one of such right.  *See Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 1999).  Plaintiffs fail to allege either.

**1.      Plaintiffs Fail To Allege Injury Of A Protected Constitutional Right.**

To assert a conspiracy claim under Section 1985(3), a plaintiff must allege a conspiracy aimed at interfering with rights that are protected against *private* encroachment.  *See, e.g.*, *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 278 (1993).

The Thirteenth Amendment protects against only private encroachment on the rights to be free from involuntary servitude or engage in interstate travel.  *Id.*, *see also Alma Soc'y v. Mellon*, 601 F.2d 1225, 1237 (2d Cir. 1979) ("The [Supreme] Court has never held that the [Thirteenth] Amendment itself, unaided by legislation … reaches the 'badges and incidents' of slavery as well as the actual conditions of slavery and involuntary servitude."); *Bishop v. Best Buy, Co.*, 2010 WL 4159566, at *13-14 (S.D.N.Y. Oct. 13, 2010) (dismissing Section 1985(3) claim because plaintiff did not allege involuntary servitude or an interference with his right to travel); *Henderson v. City of N.Y.*, 818 F. Supp. 2d 573, 584 (E.D.N.Y. 2011).  Plaintiffs do not allege that defendants subjected them to involuntary servitude or interfered with their right to travel between the states—nor could they.  For this reason, they have failed to plead a Thirteenth Amendment violation under Section 1985(3).

The 1985 Plaintiffs do no better asserting an alleged violation of the Fourteenth Amendment because that requires state action.  *See N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1358 (2d Cir. 1989) ("When the asserted constitutional deprivation [under Section 1985(3)] is based upon a right guaranteed against government interference—for example, rights secured by the Fourteenth Amendment—plaintiffs must demonstrate some 'state

14

involvement.'"). This lawsuit involves no state action. Plaintiffs thus have failed to allege the first element of their 1985(3) claim, and it should be dismissed.

> 2.  **Plaintiffs' Conclusory Allegations Of A Conspiracy Between Warwick And Lythgoe Fail.**

Plaintiffs independently fail to plead the second element of a 1985(3) claim. That requires "some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003). A complaint containing "only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Gyadu v. Hartford Ins. Co.*, 197 F.3d 590, 591 (2d Cir. 1999); *Baptiste v. N.Y. City Transit Auth.*, 2004 WL 626198, at *6 (S.D.N.Y. Mar. 29, 2004) (same). But the complaint contains no more than such vague, conclusory allegations. The 1985 Plaintiffs do not even allege that Lythgoe and Warwick ever discussed depriving them of their constitutional rights—let alone had a meeting of the minds whereby they entered into an agreement to do so. The conspiracy allegations therefore are insufficient as a matter of law. *See Russell v. Cnty. of Nassau*, 696 F. Supp. 2d 213, 244 (E.D.N.Y. 2010) (dismissing Section 1985(3) claim because complaint "fail[ed] to provide any factual basis to support a meeting of the minds"); *Bishop*, 2010 WL 4159566, at *13-14 (same).

## III.   THE CLAIM FOR RESCISSION (COUNT V) FAILS.

Under California law, a claim for rescission is subject to a four-year limitations period. *See* CAL. CIV. PROC. CODE § 337(3). Thus, other than Golightly, Count V is time-barred.

Count V also fails on the merits. At bottom, plaintiffs seek to have the Contestant Agreements declared void *ab initio*, presumably so that plaintiffs can retract the rights they granted defendants to depict them in the show and thereafter assert some other state law claims, such as right of publicity claims. Plaintiffs assert three common law grounds for alleging the Contestant Agreements are void (that the agreements are illusory, violate a legal duty, and were

fraudulently incepted), and three statutory grounds (that the agreements violate 47 U.S.C. section 509 ("Section 509") (Rigged Contest), 47 C.F.R. section 73.1216 ("Section 73.1216") (False Advertising), and section 1668 of the California Civil Code ("Section 1668") (Unlawful Release), and are therefore void as illegal contracts under section 1667 of the California Civil Code ("Section 1667")).  Because none of these six grounds are legally valid, even if Count V were timely, it should be dismissed.

### A.       There Is No Common Law Basis To Void The Contestant Agreements.

#### 1.       The Contestant Agreements Are Supported By Consideration.

Plaintiffs' arguments that the Contestant Agreements are illusory and violate the legal duty rule (by not requiring defendants to do anything they are not already obligated to do) turn on whether the agreements are supported by consideration.  Because the Court may rely on the contents of these contracts, *see DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010), the Court can satisfy itself that the contracts are supported by consideration.

In the Contestant Agreements, defendants agreed to provide plaintiffs with an opportunity to be considered for the show and to provide them with travel and lodging while participating, *see, e.g.*, Robertson Decl. Ex. 1 at pp.1-3; Ex. 2 at pp. 1-3.  In exchange, plaintiffs granted defendants publicity and intellectual property rights and agreed to a limitation of liability, *see, e.g.*, *id*. at Ex. 1 at pp. 7, 14; Ex. 2 at pp. 7, 14.  Plaintiffs' position—that this is insufficient consideration—would have merit only if defendants had some independent, pre-existing duty to fly plaintiffs to Hollywood at defendants' expense, and provide meals and lodging at defendants' expense, while allowing plaintiffs to participate on the show.  The complaint makes no such allegations, nor could it.  Thus, as a matter of law, defendants' promise to provide plaintiffs with a chance to be considered for the show, airfare, meals, and lodging constitutes sufficient consideration for plaintiffs' publicity and intellectual property rights.  *See, e.g.*, *Sutcliffe v. Wells*

*Fargo Bank, N.A.*, 283 F.R.D. 533, 552-53 (N.D. Cal. 2012) ("[U]nder California law, consideration exists even if the performance due consists almost wholly of a performance that is already required …. It is enough that some small additional performance is bargained for and given[.]").

Similar contestant agreements are upheld and enforced.  *See, e.g.*, *Higgins v. Disney/ABC Int'l Television, Inc.*, 2009 WL 692701, at *13 (Cal. Ct. App. Mar. 18, 2009) (finding contestant agreements for reality show included sufficient consideration, where defendants provided a chance to participate on the show and win prizes, in exchange for plaintiffs' release of rights and claims); *Rosner v. Valleycrest Prod. Ltd.*, 2003 WL 1701888, at *6-7 (Cal. App. Dep't Super. Ct. Jan. 13, 2003) (same); *Gelbman v. Valleycrest Prod. Ltd.*, 732 N.Y.S.2d 528, 531 (N.Y. Sup. Ct. 2001) ("The defendants offer potential contestants … a chance to win large sums of money in return for their appearance on the show.  In addition, the defendants provide round trip air fare to New York, free lodging and a per diem allowance….  Undoubtedly, [the plaintiff] received consideration having an objective value … [and] has sufficiently demonstrated a contract for purposes of this motion.") (cited with approval by *Rosner*, 2003 WL 1701888, at *5).

### 2.    Plaintiffs Were Aware Of Defendants' Decision-Making Discretion.

Plaintiffs also allege that defendants "concealed" the true nature of the Contestant Agreements when plaintiffs signed them and that, as a result, the contracts are void under the common law theory of "fraud in the factum."  Plaintiffs allege that, had they known the "true facts" that the "winners [were] ultimately determined by the []Defendants," they would have never agreed to enter into the agreements.  (TAC ¶ 1255.)

Fraud in the factum turns on the parties' knowledge of the contract terms at the time of signing.  *See Frusetta v. Hauben*, 217 Cal. App. 3d 551, 556 (1990) (fraud in the factum is "such fraud … as results in the signer's being ignorant of the nature of the instrument he is signing").

17

Fraud in the factum typically involves a misrepresentation regarding the legal significance of a contract.  *See, e.g.*, *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 415 (1996) (defendants tricked a legally blind woman into investing in a mutual fund without disclosing fund's arbitration clause).

Here, there was no misrepresentation.  The contracts provide that defendants have discretion not only to disqualify contestants at any time, but to disqualify them for the specific reasons that plaintiffs were disqualified.  (*See, e.g.*, Robertson Decl. Ex. 1 at p. 4, Ex. 2 at p. 4 (defendants' right to remove or disqualify contestants for any reason); Ex. 1 at p. 4, Ex. 2 at p. 4 (defendants' right to disqualify contestants for supplying untruthful, inaccurate, or misleading information); Ex. 1 at pp. 14-15, Ex. 2 at p. 15 (defendants' right to disqualify contestants for entering agreements that might interfere with their participation on *American Idol*); Ex. 1 at p. 5, Ex. 2 at p. 5 (defendants' right to make explanations or announcements (or none at all) to the public regarding disqualifications).)  In fact, each plaintiff affirmatively represented that he was "given ample opportunity to read, and [] have carefully read, this entire Agreement."  (*See, e.g.*, Robertson Decl. Ex. 1 at p. 19; Ex. 2 at p. 21.)  As the court stated in *Rosner* regarding a television quiz show—where the plaintiff also had knowledge of defendants' discretion at the inception of the contracts—if plaintiffs "believed the contract[s] w[ere] unfair, [they] did not have to play the game."  *Rosner v. Valleycrest Prod., Ltd.*, 2004 WL 1166175, at *8 (Cal. Ct. App. May 26, 2004).  For the above reasons, there was no fraud in the factum.

> **B.      There Is No Statutory Basis To Void The Contestant Agreements.**
>
> **1.      *American Idol* Is Not A "Rigged Contest."**

Plaintiffs argue that the Contestant Agreements violate subsection (a)(3) of Section 509, which makes it "unlawful for any person, with intent to deceive the listening or viewing public" to "engage in any artifice or scheme for the purpose of prearranging or predetermining … the

outcome of a purportedly bona fide contest of intellectual knowledge, intellectual skill, or chance."  *See* 47 U.S.C. § 509(a)(3).  Plaintiffs are wrong for three reasons.

First, by its express terms, Section 509 applies only to contests of "intellectual knowledge, intellectual skill, or chance."  *Id.*  But as plaintiffs repeatedly assert, *American Idol* is a "singing contest."  (TAC ¶¶ 1068, 1115-16, 1159, 1272-73.)  Despite their attempts to force *American Idol* within the scope of Section 509,[17] by plaintiffs' own pleadings, *American Idol* is a contest of singing skill—not one of "intellectual knowledge, intellectual skill, or chance."  *Cf. Melody Music, Inc. v. F.C.C.*, 345 F.2d 730, 733 (1965) (Section 509 applies to a quiz show, which is a contest of intellectual skill); *In re Kolob Broad. Co.*, 36 F.C.C.2d 586 (1972) (Section 509 applies to a contest where participants randomly pick prize envelopes out of a box, which is one of chance).  Section 509 thus does not apply.

Second, there was no "intent to deceive the listening or viewing public."  *See* 47 U.S.C. § 509(a).  Plaintiffs allege that because defendants represented that a contestant's advancement is determined "solely by popular audience vote," defendants' retention of discretion to disqualify a contestant reflects an intent to deceive the viewing public.  (TAC ¶¶ 1199-1200.)  But as plaintiffs admit, defendants "bill, market, promote and/or advertise *American Idol* as a contest featuring eligibility rules, participation rules, [and] *disqualification* rules …." (TAC ¶ 1193.)  The viewing public—including plaintiffs—are well aware that a contestant may be disqualified if deemed ineligible.  Indeed, a central theme of plaintiffs' complaint is that many of their

---

[17] Implicitly recognizing that *American Idol* falls outside the scope of Section 509, plaintiffs attempt to plead that song selection is a matter of "intellectual skill."  (TAC ¶¶ 182, 1195.)  Even if that were correct—and the Court need not engage in that debate in connection with this motion—that would be insufficient to transform the show itself into a contest of "intellectual knowledge, intellectual skill, or chance" and thereby fall within Section 509(a)(3).  *See* Kimberlianne Podlas, *Primetime Crimes: Are Reality Television Programs "Illegal Contests" In Violation of Federal Law*, 25 CARDOZO ARTS & ENT. L.J. 141, 160-61, 169 (2007) (explaining that *American Idol* falls outside the scope of  Section 509 as a singing contest, and noting that "though talents, such as dancing or singing, can be enhanced by intelligence or impeded by the lack thereof … neither these talents nor programs that highlight them are of a predominantly intellectual character").  Similarly, the fact that the public votes on the contestants' performances does not transform the show into a game of chance.  (TAC ¶ 1196.)

disqualifications were publically broadcast or announced.  (*See, e.g.*, TAC ¶¶ 1030, 898.)  Therefore, according to their own allegations, there was no deception.

Third, Section 509 does not create or enable a private cause of action.  Rather, Congress authorized only narrow remedies for its violation.  *See* 47 U.S.C. §§ 509(c), 503(b).  In so doing, Congress "exclude[d] by implication" the further remedy of voiding the contract as illegal.  *Gensler & Assocs., Inc. v. Larry Barrett, Inc.*, 7 Cal. 3d 695, 702 (1972) (en banc) (refusing to invalidate a building contract because the contractor failed to comply with statutory requirements); *see also Survivor Prods., LLC vs. Fox Broad. Co.*, 2001 WL 35829270, at *4 (C.D. Cal. June 12, 2001) (striking portions of answer because "the federal statute plaintiffs allegedly violated, 47 U.S.C. § 509, nowhere lists invalidation of a copyright as a penalty").  Accordingly, Section 509 cannot be invoked to invalidate the Contestant Agreements.

### 2.    *American Idol* Was Not Falsely Advertised.

Plaintiffs allege defendants violated Federal Communications Commission regulation Section 73.1216 by failing to disclose "all material terms" of *American Idol* at plaintiffs' auditions.  (TAC ¶ 1225.)  Section 73.1216 provides that "a licensee that broadcasts or advertises information about a contest it conducts shall fully and accurately disclose the material terms of the contest, and shall conduct the contest substantially as announced or advertised.  No contest description shall be false, misleading, or deceptive with respect to any material term."  47 C.F.R. § 73.1216.  Plaintiffs can find no refuge in this regulation.

First, the FCC has exclusive jurisdiction to enforce Section 73.1216.  *See Ibarra v. W.Q.S.U. Radio Broad. Org.*, 2006 U.S. Dist. LEXIS 97642, at *6-7 (M.D. Pa. Mar. 8, 2006) (federal court cannot adjudicate alleged violation of Section 73.1216 because "any failure to comply with the federal communications laws on the part of the defendants must be addressed by the FCC, the governing regulatory agency, and not the courts"); *see also Guitar v. Westinghouse*

20

*Elec. Corp.*, 396 F. Supp. 1042, 1057 (S.D.N.Y. 1975) ("The [Communications] Act did not

create, even by implication, a cause of action cognizable in the district courts, the court's sole

function being the review of final orders of the F.C.C. after the plaintiff has invoked the primary

and exclusive jurisdiction of that commission.").  Accordingly, this Court cannot decide whether

defendants violated Section 73.1216.  *See Styne v. Stevens*, 26 Cal. 4th 42, 58-59 (2001)

(refusing to find contract illegal under Civil Code Section 1667 based on purported Labor Code

violation under which state labor commissioner had sole jurisdiction to find a violation).

Second, even assuming *American Idol* falls within the Section 73.1216 *and* that the Court

can consider the regulation, plaintiffs fail to allege a violation of it.  The regulation governs

disclosure of material terms in *broadcasts* (reflecting that the FCC's jurisdiction is limited to

interstate and international communications).  *See* 47 C.F.R. § 73.1216 n.2 (providing that "[t]he

material terms should be disclosed periodically *by announcements broadcast* on the station

conducting the contest …"); *see also* Amendment of Part 73 of the Commission's Rules Relating

to Licensee-Conducted Contests, Report and Order, 60 F.C.C. 2d 1072, 1073 (1976) (stating that

the material terms for the contest must be included "on the air or in other media").  Under

Section 73.1216, any non-broadcast disclosures are at the licensee's discretion.  *See* 47 C.F.R.

§ 73.1216 n.2 ("In addition to the *required* broadcast announcements, disclosure of the material

terms may be made in a non-broadcast manner.").  Plaintiffs do not claim that any material terms

were not disclosed in broadcasts but rather base their claim on the allegation about the timing of

defendants' *off-air* disclosures.  (TAC ¶¶ 1225-26.)  Therefore, even accepting the allegations as

true, defendants did not violate Section 73.1216.

Third, as with Section 509, the Court should refrain from creating a judicial remedy

because the statute includes remedy provisions.  *See Gensler*, 7 Cal. 3d at 702; 47 U.S.C. § 502.

### 3.      The Releases Do Not Invalidate The Contestant Agreements.

Plaintiffs allege that the Contestant Agreements should be deemed void also because the release provisions potentially shield defendants from liability for future intentional wrongdoing, which is barred under California Civil Code Section 1668.[18]  (TAC ¶ 1229.)  This argument fails.

First, the Court need not analyze the scope of the release because defendants have not invoked it to bar any of the claims that plaintiffs are asserting.  *Cf. Carpenter v. Am. Honda Motor Co., Inc.*, 2004 WL 2596007, at *9 (Cal. Ct. App. Nov. 16, 2004).

Second, even if any portion of the releases were found to violate Section 1668, the parties agreed in the Contestant Agreements that "[i]f any provision hereof shall be invalid or unenforceable due to any law, said provision will be modified to the minimum extent necessary to effect compliance with such law, and in any event such invalidity or unenforceability shall have no effect upon the remaining terms and conditions hereof."  (*See, e.g.*, Robertson Decl. Ex.1 at p. 19; Ex. 2 at p. 19.)  Even in the absence of such provision, the appropriate remedy would be to invalidate or sever the offending portions—not to void the entire contract.  *See* CAL. CIV. CODE § 1599 ("Where a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest."); *see also Higgins*, 2009 WL 692701, at *12-13 (rejecting argument that contract for reality television programming should be declared void for violation of Section 1668, and affirming trial court's decision to sever the offending provisions); *Capri v. L.A. Fitness Int'l, LLC*, 136 Cal. App. 4th 1078, 1084, 1087 (2006) (selectively applying release); *Dieu v. McGraw*, 2011 WL 38031, *16-17 (Cal. Ct. App. Jan. 6, 2011) (same); *Halliday v. Greene*, 244 Cal. App. 2d 482, 488 (1966) (release "ineffective" because it violated Section 1668).

---

[18] Section 1668 states "[a]ll contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."  CAL. CIV. CODE § 1668.

## IV.    THE UNJUST ENRICHMENT CLAIM (COUNT VI) FAILS.

In Count VI, plaintiffs allege that defendants were unjustly enriched by "benefits received as a result of plaintiffs' participation in the *American Idol* Production"—*e.g.*, their talent services, likenesses, and disqualifications from the show.  (*See* TAC ¶¶ 1279-80.)  Despite being brought against all defendants, the claim centers on the alleged unjust enrichment of Ford, Coca-Cola, and AT&T—the corporate advertisers or "sponsors" of the show.  (*See* TAC ¶¶ 1276, 1279, p. 253.)  Even setting aside that the sponsors could not have been *unjustly* enriched for retaining a benefit they paid for, plaintiffs' claim fails for the reasons below.

First, many courts have found that "[t]here is no cause of action in California for unjust enrichment."  *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) (quoting *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003)); *but see Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008).  Instead, unjust enrichment is merely "a general principle, underlying various legal doctrines and remedies."  *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004).  Plaintiffs also label Count VI as a claim for "restitution" and "constructive trust," but these too are not valid causes of action under California law.  *See, e.g.*, *Munoz v. MacMillan*, 195 Cal. App. 4th 648, 661 (2011) ("There is no freestanding cause of action for 'restitution' in California."); *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro LLP*, 150 Cal. App. 4th 384, 398 (2007) (a constructive trust "is an equitable remedy, not a substantive claim for relief"); *Hackbart v. Uppal*, 2013 WL 4041955, at *13-14 (Cal. Ct. App. Aug. 8, 2013) (restitution and constructive trust are remedies, not causes of action).  Accordingly, because Count VI fails to constitute a cause of action, it should be dismissed.  *See Levine v. Blue Shield of Cal.*, 189 Cal. App. 4th 1117, 1138 (2010) (sustaining dismissal without leave to amend because "there is no cause of action in California for unjust enrichment").

Second, even if the Court entertains plaintiffs' unjust enrichment claim, it would still fail. The principles of unjust enrichment are inapplicable where the subject matter of the claim is governed by an express contract.  *See Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1388 (2012) ("A plaintiff may not … pursue or recover [for unjust enrichment] on a quasi-contract claim if the parties have an enforceable agreement regarding a particular subject matter."); *Durell*, 183 Cal. App. 4th at 1370.  As plaintiffs plead, their participation on *American Idol* is the subject of several contracts, including the Contestant Agreements and the Prize Contracts.  (*See, e,g.*, TAC ¶¶ 228-37, 624-51, 341, 352-54.)  Even if the performance of a contract incidentally benefits a non-party, as plaintiffs allege here, TAC ¶ 1275, p. 253, no grounds exist for an unjust enrichment claim.  *See Cal. Med. Assn. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 174 (2008).  And the fact that plaintiffs bring this claim against named third-party beneficiaries to the Contestant Agreements further demonstrates that the claim is already governed by existing, enforceable contracts.  (*See, e.g.*, TAC ¶¶ 651 (Core, Fox, Fremantle, and 19 Entertainment Limited are third-party beneficiaries), 1275, 1277.)  Accordingly, plaintiffs' own pleadings foreclose the applicability of a remedy based on unjust enrichment.

Third, even if the Contestant Agreements (and the Prize Contracts) are invalid—which they are not—plaintiffs' claim still fails because it is subject to a two-year statute of limitations.  *See, e.g.*, *Bioquest Venture Leasing Co.-A, N.V. v. VivoRx Autoimmune, Inc.*, 2009 WL 3719534, at *3 (Cal. Ct. App. Nov. 5, 2009) (noting that unjust enrichment claim has a two-year statute of limitations under section 339(1) of the California Civil Code as "an obligation not founded on instrument of writing"); *Perelman v. Deul*, 2002 WL 1797228, at *3 (Cal. Ct. App. Aug. 6, 2002) (same).  Because plaintiffs were disqualified between three and ten years before they filed this lawsuit, any purported unjust enrichment claim is time-barred.

## V.      THE TITLE VII CLAIM (COUNT VII) FAILS.

To bring a discrimination claim under Title VII, a plaintiff must file a charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the allegedly discriminatory act.  *See* 42 U.S.C. § 2000e–5(e)(1); *Chukwueze v. NYCERS*, 891 F. Supp. 2d 443, 451 (S.D.N.Y. 2012) ("Under Title VII, a plaintiff in New York State must file a charge with the EEOC within 300 days of the allegedly unlawful practice to bring suit.").  All of the plaintiffs were disqualified or voted off between *three and ten years* ago.  Yet plaintiffs did not file charges with the EEOC until January 11, 2013, far outside the 300-day window to bring a Title VII claim.[19]  Accordingly, Count VII is time-barred.

Even apart from the issue of untimeliness, the Title VII claim cannot survive on the merits.  As with plaintiffs' Section 1981 claims, the Title VII claim is barred by the First Amendment.  *See supra* Section I.B.  And by plaintiffs' own admission, Smalley cannot assert a Title VII claim because he has not received a right to sue letter from the EEOC.  (TAC ¶ 1282); *see* 42 U.S.C. § 2000e–5(f)(1) ("right to sue" letter is a prerequisite to file a Title VII claim).

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court dismiss the complaint without leave to amend.

Dated: November 25, 2013                         O'MELVENY & MYERS LLP

By:  /s/ Mark W. Robertson
       Daniel M. Petrocelli
       Robert M. Schwartz
       Mark W. Robertson
       Molly M. Lens
     1999 Avenue of the Stars, Suite 700
     Los Angeles, California  90067
     mrobertson@omm.com
     (212)-326-2000

---

[19] The EEOC received a letter from nine of the plaintiffs on January 11, 2013, but plaintiffs did not file formal charges (which were unverified) until March 18, and did not file verified charges until even later.  (*See* Robertson Decl. Ex. 3.)  For the purpose of this motion, defendants assume that the January 11 letter constitutes a charge, thereby giving plaintiffs the benefit of the earliest date, even though they are not entitled to that for this purpose.