# STANDARD AFTRA ENGAGEMENT CONTRACT

Agreement Between                                                               Dated:    3/25/03

Corey Clark
1138 Chestnut Ave.                           and            AMERICAN IDOL PRODUCTIONS, INC.
Rialto            CA  92376                                 7800 Beverly Blvd., Suite 251
                                                           Los Angeles, CA  90036
(hereinafter called "Performer")                           (hereinafter called "Producer")

Performer shall render artistic services in connection with the rehearsal and broadcast of the program(s) designated below and preparation in connection with the part or parts to be played:

**TITLE OF PROGRAM:** American Idol (Episode #212)

**TYPE OF PROGRAM**   Sustaining ( )    Commercial (X)    Closed Circuit ( )   Pay TV ( )

**SPONSOR (if commercial):** VARIOUS

**NUMBER OF GUARANTEED DAYS OF EMPLOYMENT:**   1
(if Par. 19 of the AFTRA Code is applicable)

**PLACE OF PERFORMANCE\***  CBS Television City, 7800 Beverly Blvd., Los Angeles, CA  90036

**SCHEDULED FINAL PERFORMANCE DAY:**   3/25/03

**AFTRA CLASSIFICATION:**  principal performer

**PART(S) TO BE PLAYED:**  Self

**COMPENSATION:** $822.00

**MAXIMUM REHEARSAL HOURS INCLUDED IN ABOVE COMPENSATION:** SEE AEA LETTER
(if Par. 56(b) of the AFTRA Code is applicable)

Execution of this agreement signifies acceptance by Producer and Performer of all of the above terms and conditions and those on the reverse hereof and attached hereto, if any.

_____                          By: _____
Performer                                                        Producer

SS#/FEDID # ▆▆▆▆▆▆▆                          *Subject to change in accordance with AFTRA Code.

---

**CONTEMPLATED NETWORK BROADCAST ORIGINATION DATE:**

**BILLING:** Performer shall receive billing on the program, in Producer's sole discretion, excepting as required in the AFTRA Code and/or as specifically provided in this paragraph. No inadvertent or unintentional failure to give billing either due to lack of time or otherwise shall be deemed a breach of this agreement.

**RATES OF COMPENSATION FOR REPLAYS:**  Scale

| | | | | |
|---|---|---|---|---|
| 1st: $ AFTRA SCALE | 2nd: $ AFTRA SCALE | 3rd: $ AFTRA SCALE | 4th: $ AFTRA SCALE | 5th: $ AFTRA SCALE |
| 6th: $ AFTRA SCALE | 7th: $ AFTRA SCALE | 8th and all succeeding replays: $ AFTRA SCALE | | |

**RATES OF COMPENSATION FOR FOREIGN USE:** Scale

| Area 1†: $ | Area 2†: $ | Area 3†: $ | Area 4†: $ | Area 5†: $ |
|---|---|---|---|---|

†(As defined in Par. 73(f) of the AFTRA Code)

## STANDARD TERMS AND CONDITIONS

1. Performer shall render Performer's services in connection with this engagement to the best of Performer's ability and subject to Producer's direction and control. Performer will abide by all reasonable rules and regulations of Producer, the broadcaster, the sponsor(s) and their advertising agencies, and Performer shall refrain from any offensive or distasteful remarks or conduct in connection with this engagement. Performer shall, if and as required by this written contract, be available to participate in commercial inserts and leads into and out of each commercial inserts. The Producer, broadcaster(s), and the sponsor(s) and their advertising agencies may record and announce such additional Performer relating to the program, provided that all such material relating to Performer are intended for hire or copies thereof be turned over to Performer within a reasonable length of time.

2. (a) Performer shall indemnify Producer, the sponsors and their advertising agencies, the network (if any), and all stations broadcasting the program against any and all claims, damages, liabilities, costs and expenses (including reasonable attorneys' fees) arising out of the use of any materials, ideas, creations, and properties (herein called "materials") whether or not the same is furnished by Performer in connection with this engagement, and any ad libs spoken or unauthorized acts done by Performer in connection therewith. Producer shall similarly indemnify Performer in respect to "materials" furnished by Producer, and acts done or words spoken by Performer at Producer's request. Each party will give the other prompt notice of any such claims (and shall send a copy of such notice to AFTRA) and shall cooperate with each other on all matters covered by this paragraph.

(b) If this agreement requires, as an express additional provision, that Performer furnish materials (herein called "required materials") in connection with his performance hereunder, Performer shall furnish such required materials to Producer at such time prior to performance thereof as may be reasonably designated by Producer, and such required materials shall, as between Producer and Performer, unless otherwise expressly provided in this agreement under the heading "Additions," be and remain the property of Performer.

3. In full payment for Performer's services and the rights and privileges granted to Performer hereunder, Producer shall pay Performer the compensation hereinbefore specified not later than Thursday after the week during which Performer's services shall have been rendered, subject to the deduction of

such taxes and withholdings as are authorized or required by law. There shall be no obligation on Producer's part to producer broadcast the program or use Performer's services or materials, if any.

4. The program hereunder may be originally broadcast either live or by recording over the facilities arranged for or by Producer. The term "recordings," as used herein, shall mean and include any recording or recordings made whether before or during a broadcast transmission, by electrical transcription, tape recording, wire recording, film or any other similar or dissimilar method of recording sound and/or programs, whether now known or hereafter developed. All recordings, as between Producer and Performer, shall be Producer's sole property but shall be subject to the definitions contained in the AFTRA Code in effect at the time such recording is made, except as AFTRA may otherwise permit in writing. Performer will, if required by Producer, re-enact the performance, in whole or in part, in connection with any recording of all or any portion of the program (which Producer may deem distasteful in order to make corrections necessitated by mechanical, electrical, or adjustments or corrections in performance after the date of performance, provided that such re-recording is done not later than sixty (60) days after the broadcast in the case of a live program or sixty (60) days after the Performer's final performance day in the case of a pre-recorded program, and shall be subject to the availability of Performer, and provided, further, that Producer shall pay for Performer's services in connection with such re-recording such additional compensation as may be required by the said AFTRA Code.

5. If the broadcast of any program hereunder is prevented by governmental regulation or order, or by a strike, or by failure of broadcasting facilities because of war or other calamity such as fire, earthquake, hurricane, or similar acts of God, or because of the breakdown of such broadcasting facilities due to causes beyond Producer's reasonable control (such as the collapse of the transmitter due to structural defects), Producer shall be relieved of any responsibility for the payment of compensation for the program as provided; provided that to such case Producer shall reimburse Performer for all out-of-pocket costs necessarily incurred in connection with such program. In addition Performer shall be paid the full applicable rehearsal rate for all hours rehearsed prior to notice of cancellation. The prior consequences shall accrue if the program time is prompted by a Presidential broadcast and notice of cancellation for such purpose is given Performer promptly upon such notice having been received by Producer. Where the program time is prompted to broadcast an event of public importance (other than a Presidential broadcast) or where                    (Continued)

CDC_000441



## STANDARD TERMS AND CONDITIONS

the program is cancelled or prevented for any reason other than those stated above, or where insufficient advance notice has been given under the preceding sentence, Producer shall pay Performer his full contract price for the program so cancelled or prevented.

6. Producer is prohibited from requiring the Performer to refrain from rendering his services in connection with any other television or radio services for any period other than the actual rehearsal and broadcast period involved in this engagement; provided, however, that this prohibition shall not apply if the artist's compensation for this engagement shall be $1,500 or more.

7. Notwithstanding any provision in this agreement to the contrary, it is specifically understood and agreed by all parties hereto:

(a) That they are bound by all the terms and provisions of the applicable AFTRA CODE OF FAIR PRACTICE FOR TELEVISION BROADCASTING. Should there be an inconsistency between this agreement and the said Code of Fair Practice, the said Code shall prevail; but nothing in this provision shall affect terms, compensation, or conditions provided for in this agreement which are more favorable to members of AFTRA than the terms, compensation or conditions provided for in said Code of Fair Practice.

(b) That the artist is covered by the provisions of Paragraph 102 of said Code entitled "AFTRA Pension and Welfare Funds."

(c) That Performer is or will become a member of AFTRA in good standing, subject to and in accordance with the Union Shop Provision of said Code of Fair Practice.

8. If Producer wishes to obtain re-play or foreign use rights for which fees are required pursuant to Paragraph 73 of the AFTRA Code, such fees as are agreed upon shall be separately set forth in this agreement in specific money figures, clearly stating the rate to be paid for each re-play or foreign use, and not by reference to Code paragraph numbers. If Producer has not obtained foreign use rights in accordance with this Paragraph, Producer shall notify AFTRA in advance if, after the execution of this agreement, Producer seeks to secure such rights from Performer.

9. This agreement, when executed by Performer and Producer, shall constitute the entire understanding between them and shall be construed according to the laws of the State of California applicable to contracts fully performed therein.

## ADDITIONS WHICH HAVE NOT BEEN APPROVED BY AFTRA AND ARE NOT PART OF STANDARD FORM*

10. In connection with the program or the series of which it is a part, Producer, the sponsors and their advertising agencies shall have the right, and may grant to others the right, to disseminate, reproduce, print and publish Performer's name, voice, performance, likeness and/or biographical material concerning Performer for publicity and promotion, and for advertising and purposes of trade (but not for the endorsement of any product or service), and in merchandising and licensing with respect to the Series.

11. (a) Producer shall not be required to make any payment to Performer in addition to Performer's compensation specified above Producer's signature on the face of this agreement (hereinafter called the "basic compensation"), unless the aggregate of the minimum AFTRA rates payable to Performer pursuant to the AFTRA Code which is in effect at the time of the performance of Performer's services hereunder, shall exceed the basic compensation, in which event Producer shall pay Performer, in addition to the basic compensation, the amount of such excess.

(b) Notwithstanding anything to the contrary contained in subparagraph (a) of this paragraph 11, if the basic compensation is in excess of the minimum AFTRA rate payable to Performer for Performer's services hereunder (but not more than $650), Producer shall pay Performer at the applicable AFTRA rehearsal rate for all rehearsal hours in excess of the number of hours specified on the face of this agreement.

12. (a) Performer shall furnish all materials required or appropriate for the performance of services under this agreement. All materials furnished by performer, other than materials in the public domain, shall be the property of Performer. Producer shall have the right to broadcast the program in which the materials may be incorporated and the right to make and use and to authorize the making and use of recordings of such program in accordance with the provisions of paragraph 14 hereof, and Producer shall not be required to make any payment to Performer therefor except as provided in paragraph 14 hereof.

(b) In connection with the production or preparation of any program or program matter which is intended for broadcast hereunder, Performer warrants and represents that Performer has not accepted or agreed to accept and will not accept or agree to accept, directly or indirectly, any money, service or other valuable consideration for the inclusion of matter as part of such program matter from any one other than Producer.

13. Performer will, at Producer's request, participate in the presentation of leads into and out of commercial announcements on the program.

14. Producer's rights with respect to recordings of the program shall include without limitation the following:

(i) to replay such recordings in accordance with the provisions of paragraph 73 of the AFTRA Code, and Producer shall pay Performer (at the time specified in said paragraph 73) for each such replay the applicable sum set forth on the face hereof; or, if Exhibit A of the AFTRA Code applies, the minimum applicable sum required to be paid under the applicable provisions of said Exhibit; subject, however, in either case, to the provisions of paragraph 23 hereof.

(ii) to cause or authorize, in accordance with the provisions of sub division 3 or 4, whichever is applicable, of subparagraph (f) B of paragraph 73 of the AFTRA Code, the broadcast of such recordings in each of the "foreign areas" listed in subdivision 2 of the said subparagraph (f) B, and Producer shall pay Performer for such use the applicable sums set forth on the face hereof; it being understood that if subdivision 4 of such subparagraph (f) B is applicable and if no rates are set forth herein for such foreign use, there shall be no payment to Performer therefor; and it being further understood that the provisions of paragraph 23 shall also apply. In connection therewith, if Producer produces a thematic program and more than 75% of such theme program consists of excerpts, Performer hereby consents to the use of Performer's performance in such thematic program, in accordance with subparagraph 6 of Paragraph 73(d) of the AFTRA code. In consideration of Performer's consent, Producer shall pay Performer the minimum sum required by said subparagraph 6. If the excerpt of Performer's performance is longer than three minutes, Performer hereby agrees that the negotiated rate to be paid Performer for such use will be the minimum program fee of the program in which such excerpt is used.

(iii) to cause or authorize, in accordance with the provisions of subdivision (1) or (2), whichever is applicable, of subparagraph (c) of paragraph 73 of the AFTRA Code, the broadcast of such recordings on local non-interconnected stations, and Producer shall make all payments specified in said subparagraph (c);

(iv) to supplement the "network" (as defined in paragraph 71 of the said AFTRA Code) by broadcasting or authorizing the broadcast, within sixty (60) days after the date of the original broadcast of the program of such recordings in any area where the program was not originally broadcast.

(v) to authorize the United States Department of Defense to make recordings of the program and to broadcast such recordings over television stations owned and operated by it;

(vi) to use such recordings for file, reference, audition, trailer and promotional purposes in accordance with the provisions of paragraph 63 of the AFTRA Code;

(vii) to cause or authorize the exhibition of such recordings by means of direct projection in film festivals or competitions.

(viii) to cause or authorize the exploitation of such recordings by any means or device, whether or not now discovered, in "Supplemental Markets" as that term is or shall hereafter be defined in the AFTRA Code, and Producer shall not be required to make any payment to Artist therefor unless required to do so pursuant to the provisions of said AFTRA Code respecting uses in Supplemental Markets; it being understood that if the basic compensation is in excess of twice the basic minimum appropriate program fee specified in the said AFTRA Code, Producer may apply the amount of such excess to any such payment specified in said AFTRA Code.

Producer shall not be required to make any payment to Performer for the use of such recordings as provided in subdivisions (iv), (v), (vi) and (vii) of this paragraph 14. Any exhibition or other use of a recording may be either in color or in black-and-white, or both, at Producer's sole and absolute discretion.

15. Producer shall have the right to terminate this agreement by giving Performer notice to such effect, in the event Performer shall suffer any mental or physical disability, any alteration in Performer's voice which shall, in Producer's opinion, interfere with the proper performance of any of Performer's obligations hereunder.

16. If any provision hereof as applied to either party or to any circumstance shall be adjudged by a court to be void or unenforceable, the same shall in no way affect any other provision hereof, the application of such provision in any other circumstances or the validity or enforceability hereof.

17. This agreement cannot be changed or terminated orally.

18. If Performer's compensation for this engagement is $1,500 or more, Performer agrees not to render services of any kind or nature for or on behalf of Performer or any third party whatsoever during the actual rehearsal and production period under this agreement. Performer warrants that Performer has not rendered services with regard to any television programs which have not received an initial network television broadcast as of the date of this agreement. Furthermore, Performer agrees that Performer will not render services with regard to any program which is scheduled, at the time Performer considers rendering such services, to receive an initial network television broadcast, the origination of which broadcast occurs within twenty-one (21) days prior to or eight (8) days following, the contemplated origination date of the initial network broadcast of the program hereunder. In the event a program on which Performer hereafter renders services is broadcast on a date other than the scheduled date thereof referred to above, and such changed broadcast date falls within the period of broadcast exclusivity hereunder, Performer shall attempt to give Producer prompt notice of such conflicting broadcast date, but Performer's failure to give such notice shall not constitute a breach of this agreement. If, for any reason, the program hereunder cannot be or is not broadcast on the contemplated network broadcast origination date, such program may be initially broadcast on any other date and no additional compensation shall be payable to Performer in such event. In the event Producer changes the origination date of the initial television network broadcast of the program hereunder, Producer shall attempt to give Performer prompt notice of such changed date, but Producer's failure to give such notice shall not constitute a breach of this agreement.

19. Performer represents and warrants that Performer has the right to enter into this agreement and to grant the rights herein granted. All rights, remedies, licenses, property privileges, obligations and agreements in this agreement shall be cumulative. The breach by Performer of the provisions contained in this agreement will cause Producer irreparable injury and damage. Producer shall be entitled as a matter of right, without further notice, to injunctive and other equitable relief to prevent the violation of any of the provisions of this agreement by Performer and to prevent Performer from performing services for, furnishing material to or granting conflicting rights to others. Neither this provision nor the exercise or non-exercise by Producer of any of its rights under this agreement shall constitute a waiver by Producer of any other rights or remedies which Producer may have under this agreement or at law or in equity, and Producer hereby expressly reserves such rights. Producer's liability for any breach shall be limited to the payment of money only and in no event shall any of Producer's rights with respect to the programs be affected thereby.

20. Producer shall have the right to assign this agreement and/or all or any part of the rights granted by Performer herein and hereunder to any person, firm or corporation without limitatio provided that no such assignment shall relieve Producer of its obligations hereunder except authorized in the AFTRA Code.

21. Subject to the provisions of paragraph 12(a), Producer shall own and Performer hereby grants all rights of every kind and nature in and to all results and proceeds of Performer's services hereunder. Except as prohibited by the AFTRA Code, Producer shall have the right at any time and from time to time to produce the program in color and/or black-and-white and to edit, delete from, rearrange, and/or combine with other programs the program and any recordings thereof. Producer shall have the right to "dub" over Performer's speaking voice and all musical, instrumental and other sounds to be produced by Performer, to such extent as may be required by Producer, whether in English or in any foreign language or languages designated by Producer, and to "double" some other person in Performer's acts, poses and appearances, including, without limitation, where, in the opinion of Producer, the failure to use a "double" might result in physical injury to Performer.

22. Performer will not furnish or authorize any advertising matter or publicity of any form relating to the program, Performer's services in connection therewith, Producer or its operations or personnel or any exhibitors of the program to any person, firm or corporation other than Producer, and their respective agents and employees, without the prior written approval of Producer in each case.

23. To the extent permitted under the AFTRA Code, if compensation payable to Performer hereunder is in excess of AFTRA minimum scale, Producer may apply such excess against any extra payments which would otherwise be due to Performer under the applicable AFTRA Code with respect to the performance by Performer of his obligations or the exercise by Producer of rights granted by Performer to Producer hereunder. Without limiting the foregoing, Producer shall have the right to credit over-scale payments in excess of twice the full AFTRA minimum fee including all extra payments for additional rehearsal and doubling, toward monies due Performer for re-plays, or "foreign area" uses, of any recordings under the applicable AFTRA code.

24. In the event there is any inconsistency, between this Agreement and the mandatory provisions of the AFTRA Code, the code shall prevail; provided, however, that in such event the provision(s) of this Agreement so affected shall be curtailed, limited or otherwise modified only to the extent necessary to permit compliance with the minimum mandatory terms and conditions of the Code.

25. If the production of any program hereunder is prevented or materially interfered with by any of the causes or events specified in paragraph 5 hereof, then the same consequences as specified in paragraph 5 shall ensue.

26. The waiver by Producer of any breach of this agreement by Performer shall not constitute a waiver of any subsequent breach. Any such waiver by Producer must be in writing to be effective.

27. Any notice permitted or required herein shall be given by prepaid regular, certified or registered mail and shall be deemed complete upon depositing it in the United States post office, branch post office, or sub-station, addressed to the parties at their respective addresses hereinabove indicated. Such notice may likewise be wired to Performer or served personally on Performer or his agent or other representative. The date of mailing, wiring or date of such delivery personally, as the case may be, shall be deemed the date of service thereof.

28. SECTION 508—Reference is made to Section 508 of the Federal Communications Act, which became law on September 13th, 1960, making it a criminal offense for any person, in connection with the production or preparation of any program intended for broadcasting, to accept or pay money, service or other valuable consideration for the inclusion of any matter as a part of any such progr without disclosing the same to the employer of the person to whom such payment is made or to person for whom such program is being produced. Performer understands that it is the policy of Producer not to permit any employee of Producer to accept or pay any such consideration and Performer represents and agrees that Performer has not accepted ad will not accept, and has not paid and will not pay any money, service, or other valuable consideration for the inclusion of any "plug," reference, or product identification, or any other matter, in any program produced hereunder.

*For Performer's information, the AFTRA Code provides as follows: "Additions to the standard form must be more favorable to the Performer than, or not inconsistent with, the express provisions of the said standard form contract, and in no event may such additions violate the AFTRA Code."

prod company American Idol Productions, Inc.

CDC_000442

## STANDARD AFTRA ENGAGEMENT CONTRACT

Agreement Between

Dated:    3/26/03

Corey Clark
1138 Chestnut Ave.
Rialto                    CA  92376

(hereinafter called "Performer")

and

AMERICAN IDOL PRODUCTIONS, INC.
7800 Beverly Blvd., Suite 251
Los Angeles, CA  90036

(hereinafter called "Producer")

Performer shall render artistic services in connection with the rehearsal and broadcast of the program(s) designated below and preparation in connection with the part or parts to be played:

**TITLE OF PROGRAM:** American Idol (Episode #212A)

**TYPE OF PROGRAM**    Sustaining ( )    Commercial  (X)    Closed Circuit ( )    Pay TV ( )

**SPONSOR (if commercial):** VARIOUS

**NUMBER OF GUARANTEED DAYS OF EMPLOYMENT:**  1
(if Par. 19 of the AFTRA Code is applicable)

**PLACE OF PERFORMANCE*** CBS Television City, 7800 Beverly Blvd., Los Angeles, CA  90036

**SCHEDULED FINAL PERFORMANCE DAY:**  3/26/03

**AFTRA CLASSIFICATION:**  principal performer

**PART(S) TO BE PLAYED:** Self

**COMPENSATION:** $822.00

**MAXIMUM REHEARSAL HOURS INCLUDED IN ABOVE COMPENSATION:** SEE AEA LETTER
(if Par. 56(b) of the AFTRA Code is applicable)

Execution of this agreement signifies acceptance by Producer and Performer of all of the above terms and conditions and those on the reverse hereof and attached hereto, if any.

Performer

SS#/EEID #

By:

Producer

*Subject to change in accordance with AFTRA Code.

---

**CONTEMPLATED NETWORK BROADCAST ORIGINATION DATE:**

**BILLING:** Performer shall receive billing on the program, in Producer's sole discretion, excepting as required in the AFTRA Code and/or as specifically provided in this paragraph. No inadvertent or unintentional failure to give billing either due to lack of time or otherwise shall be deemed a breach of this agreement.

**RATES OF COMPENSATION FOR REPLAYS:**  Scale

| | | | |
|---|---|---|---|
| 1st: $ AFTRA SCALE | 2nd: $ AFTRA SCALE | 3rd: $ AFTRA SCALE | 4th: $ AFTRA SCALE | 5th: $ AFTRA SCALE |
| 6th: $ AFTRA SCALE | 7th: $ AFTRA SCALE | 8th and all succeeding replays: $ AFTRA SCALE | | |

**RATES OF COMPENSATION FOR FOREIGN USE:**  Scale

| Area 1†: $ | Area 2†: $ | Area 3†: $ | Area 4†: $ | Area 5†: $ |
|---|---|---|---|---|

†(As defined in Par. 73(f) of the AFTRA Code)

### STANDARD TERMS AND CONDITIONS

1. Performer shall render Performer's services in connection with the program to the best of Performer's ability and subject to Producer's direction and control. Performer will abide by all reasonable rules and regulations of Producer, the broadcaster, the sponsor(s) and their advertising agencies, and Performer shall refrain from any offensive or distasteful remarks or conduct in connection with this engagement. Performer shall, if and as required by this written contract, be available to participate in commercial inserts and leadー-ins and out of such commercial inserts. The Producer, broadcaster(s), and their advertising agencies may open and answer mail addressed to Performer relating to the program, provided that all such mail relating to Performer and intended for him or copies thereof shall be turned over to Performer within a reasonable length of time.

2. (a) Performer shall indemnify Producer, the sponsors and their advertising agencies, the network (if any), and all stations broadcasting the program against and all claims, damages, liabilities, costs and expenses (including reasonable attorneys' fees) arising out of the use of any materials, ideas, creations, and properties (herein called "materials") whether or not required of Performer, furnished by Performer in connection with this engagement, and any and all acts spoken or unauthorized acts done by Performer in connection herewith. Producer shall similarly indemnify Performer in respect to "materials" furnished by Producer, and acts done or acts done at request by Performer at Producer's request. Each party will give the other prompt notice of any such claims and/or legal proceedings (and shall send a copy of such notice to AFTRA) and shall cooperate with each other on all matters covered by this paragraph.

(b) If this agreement requires, as an express additional provision, that Performer furnish materials (herein called "required materials") in connection with his performance hereunder, Performer shall submit such required materials to Producer at such time prior to performance thereof as may be reasonably designated by Producer, and such required materials shall, as between Producer and Performer, unless otherwise expressly provided in this agreement under the heading "Additions," be and remain the property of Performer.

3. In full payment for Performer's services and the rights and privileges granted to Performer hereunder, Producer shall pay Performer the compensation hereinbefore specified not later than Thursday after the week during which Performer's services shall have been rendered, subject to the deduction of

such taxes and withholdings as are authorized or required by law. There shall be no obligation on Producer's part to produce/broadcast the program or use Performer's services or materials, if any.

4. The program hereunder may be edgeable broadcast (either live or by recording over the facilities arranged for or by Producer. The term "recordings," as used herein, shall mean and include any recording or recordings made whether before or during a broadcast transmission, by electrical transcription, tape recording, wire recording, film or any other similar or dissimilar method of recording television programs, whether now known or hereafter developed. All recordings, as between Producer and Performer, shall be Producer's sole property but shall be subject to the restrictions contained in the AFTRA Code in effect at the time such recording is made, except as AFTRA may otherwise permit in writing. Performer will, if required by Producer, re-enact the performance, in whole or in part, in connection with any recording of all or any portion of the program (which Producer may deem desirable) in order to make adjustments necessitated by mechanical failures, or adjustments or corrections in performance after the date of performance, provided that such re-recording is done not later than sixty (60) days after the broadcast in the case of a live program or sixty (60) days after the Performer's final performance day in the case of a pre-recorded program, and shall be subject to the availability of Performer, and provided, further, that Producer shall pay for Performer's services in connection with such re-recording such additional compensation as may be required by the said AFTRA Code.

5. If the broadcast of any program hereunder is prevented by governmental regulation or order, or by a strike, or by failure of broadcasting facilities because of war or other calamity such as fire, earthquake, hurricane, or similar acts of God, or because of the breakdown of such broadcasting facilities due to causes beyond Producer's reasonable control (such as the collapse of the transmitter due to structural defects), Producer shall be relieved of any responsibility for the payment of compensation for the program so prevented; provided that in such case Producer shall reimburse Performer for all out-of-pocket costs necessarily incurred in connection with such program. In addition Performer shall be paid the full applicable rehearsal rate for all hours rehearsed prior to notice of cancellation. The same consequences shall ensue if the program time is preempted by a Presidential broadcast and such broadcast is cancelled or cancellation for such purpose has been made. Where the program is preempted for having been received by Producer. Where the program time is preempted to be broadcast on event of public importance (other than a Presidential broadcast) or where

(Continued)

CDC_000444



## STANDARD TERMS AND CONDITIONS

the program is cancelled or prevented for any reason other than those stated above, or where insufficient advance notice has been given under the preceding sentence, Producer shall pay Performer his full contract price for the program so cancelled or prevented.

6. Producer is prohibited from requiring the Performer to refrain from rendering his services in connection with any other television or radio services for any period other than the actual rehearsal and broadcast period involved in this engagement; provided, however, that this prohibition shall not apply if the artist's compensation for this engagement shall be $1,500 or more.

7. Notwithstanding any provision in this agreement to the contrary, it is specifically understood and agreed by all parties hereto:

(a) That they are bound by all the terms and provisions of the applicable AFTRA CODE OF FAIR PRACTICE FOR TELEVISION BROADCASTING. Should there be an inconsistency between this agreement and the said Code of Fair Practice, the said Code shall prevail; but nothing in this provision shall affect terms, compensation, or conditions provided for in this agreement which are more favorable to members of AFTRA than the terms, compensation or conditions provided for in said Code of Fair Practice.

(b) That the artist is covered by the provisions of Paragraph 102 of said Code entitled "AFTRA Pension and Welfare Funds."

(c) That Performer is or will become a member of AFTRA in good standing, subject to and in accordance with the Union Shop Provision of said Code of Fair Practice.

8. If Producer wishes to obtain re-play or foreign use rights for which fees are required pursuant to Paragraph 73 of the AFTRA Code, such fees as are agreed upon shall be separately set forth in this agreement in specific money figures, clearly stating the rate to be paid for each re-play or foreign use, and not by reference to Code paragraph numbers. If Producer has not obtained foreign use rights in accordance with this Paragraph, Producer shall notify AFTRA in advance if, after the execution of this agreement, Producer seeks to secure such rights from Performer.

9. This agreement, when executed by Performer and Producer, shall constitute the entire understanding between them and shall be construed according to the laws of the State of California applicable to contracts fully performed therein.

## ADDITIONS WHICH HAVE NOT BEEN APPROVED BY AFTRA AND ARE NOT PART OF STANDARD FORM*

10. In connection with the program or the series of which it is a part, Producer, the sponsors and their advertising agencies shall have the right, and may grant to others the right, to disseminate, reproduce, print and publish Performer's name, voice, performance, likeness and/or biographical material concerning Performer for publicity and promotion, and for advertising and purposes of trade (but not for the endorsement of any product or service), and in merchandising and licensing with respect to the Series.

11. (a) Producer shall not be required to make any payment to Performer in addition to Performer's compensation specified above Producer's signature on the face of this agreement (hereinafter called the "basic compensation"), unless the aggregate of the minimum AFTRA rates payable to Performer pursuant to the AFTRA Code which is in effect at the time of the performance of Performer's services hereunder, shall exceed the basic compensation, in which event Producer shall pay Performer, in addition to the basic compensation, the amount of such excess.

(b) Notwithstanding anything to the contrary contained in subparagraph (a) of this paragraph 11, if the basic compensation is in excess of the minimum AFTRA rate payable to Performer for Performer's services hereunder (but not more than $850), Producer shall pay Performer at the applicable AFTRA rehearsal rate for all rehearsal hours in excess of the number of hours specified on the face of this agreement.

12. (a) Performer shall furnish all materials required or appropriate for the performance of services under this agreement. All materials furnished by performer, other than materials in the public domain, shall be the property of Performer. Producer shall have the right to broadcast the program in which the materials may be incorporated and the right to make and use and to authorize the making and use of recordings of such program in accordance with the provisions of paragraph 14 hereof, and Producer shall not be required to make any payment to Performer therefor except as provided in paragraph 14 hereof.

(b) In connection with the production or preparation of any program or program matter which is intended for broadcast hereunder, Performer warrants and represents that Performer has not accepted or agreed to accept and will not accept or agree to accept, directly or indirectly, any money, service or other valuable consideration for the inclusion of matter as part of such program matter from any one other than Producer.

13. Performer will, at Producer's request, participate in the presentation of leads into and out of commercial announcements on the program.

14. Producer's rights with respect to recordings of the program shall include without limitation the following:

(i) to replay such recordings in accordance with the provisions of paragraph 73 of the AFTRA Code, and Producer shall pay Performer (at the time specified in said paragraph 73) for each such replay the applicable sum set forth on the face hereof; or, if Exhibit A of the AFTRA Code applies, the minimum applicable sum required to be paid under the applicable provisions of said Exhibit; subject, however, in either case, to the provisions of paragraph 23 hereof.

(ii) to cause or authorize, in accordance with the provisions of sub division 3 or 4, whichever is applicable, of subparagraph (f) B of paragraph 73 of the AFTRA Code, the broadcast of such recordings in each of the "foreign areas" listed in subdivision 2 of the said subparagraph (f) B, and Producer shall pay Performer for such use the applicable sums set forth on the face hereof; it being understood that if subdivision 4 of such subparagraph (f) B is applicable and if no rates are set forth herein for such foreign use, there shall be no payment to Performer therefor; and it being further understood that the provisions of paragraph 23 shall also apply. In connection therewith, if Producer produces a thematic program and more than 75% of such theme program consists of excerpts, Performer hereby consents to the use of Performer's performance in such thematic program, in accordance with subparagraph 8 of Paragraph 73(d) of the AFTRA code. In consideration of Performer's consent, Producer shall pay Performer the minimum sum required by said subparagraph 8. If the excerpt of Performer's performance is longer than three minutes, Performer hereby agrees that the negotiated rate to be paid Performer for such use will be the minimum program fee of the program in which such excerpt is used.

(iii) to cause or authorize, in accordance with the provisions of subdivision (1) or (2), whichever is applicable, of subparagraph (c) of paragraph 73 of the AFTRA Code, the broadcast of such recordings on local non-interconnected stations, and Producer shall make all payments specified in said subparagraph (c);

(iv) to supplement the "network" (as defined in paragraph 71 of the said AFTRA Code) by broadcasting or authorizing the broadcast, within sixty (60) days after the date of the original broadcast of the program of such recordings in any area where the program was not originally broadcast.

(v) to authorize the United States Department of Defense to make recordings of the program and to broadcast such recordings over television stations owned and operated by it;

(vi) to use such recordings for file, reference, audition, trailer and promotional purposes in accordance with the provisions of paragraph 68 of the AFTRA Code;

(vii) to cause or authorize the exhibition of such recordings by means of direct projection in film festivals or competitions.

(viii) to cause or authorize the exploitation of such recordings by any means or device, whether or not now discovered, in "Supplemental Markets" as that term is or shall hereafter be defined in the AFTRA Code, and Producer shall not be required to make any payment to Artist therefor unless required to do so pursuant to the provisions of said AFTRA Code respecting uses in Supplemental Markets; it being understood that if the basic compensation is in excess of twice the basic minimum appropriate program fee specified in the said AFTRA Code, Producer may apply the amount of such excess to any such payment specified in said AFTRA Code.

Producer shall not be required to make any payment to Performer for the use of such recordings as provided in subdivisions (iv), (v), (vi) and (vii) of this paragraph 14. Any exhibition or other use of a recording may be either in color or in black-and-white, or both, at Producer's sole and absolute discretion.

15. Producer shall have the right to terminate this agreement by giving Performer notice to such effect, in the event Performer shall suffer any mental or physical disability, any alteration in Performer's voice which shall, in Producer's opinion, interfere with the proper performance of any of Performer's obligations hereunder.

16. If any provision hereof as applied to either party or to any circumstance shall be adjudged by a court to be void or unenforceable, the same shall in no way affect any other provision hereof, the application of such provision in any other circumstances or the validity or enforceability hereof.

17. This agreement cannot be changed or terminated orally.

18. If Performer's compensation for this engagement is $1,500 or more, Performer agrees not to render services of any kind or nature for or on behalf of Performer or any third party whatsoever during the actual rehearsal and production period under this agreement. Performer warrants that Performer has not rendered services with regard to any television programs which have not received an initial network television broadcast as of the date of this agreement. Furthermore, Performer agrees that Performer will not render services with regard to any program which is scheduled, at the time Performer considers rendering such services, to receive an initial network television broadcast, the origination of which broadcast occurs within twenty-one (21) days prior to or eight (8) days following, the contemplated origination date of the initial network broadcast of the program hereunder. In the event a program on which Performer hereafter renders services is broadcast on a date other than the scheduled date thereof referred to above, and such changed broadcast date falls within the period of broadcast exclusively hereunder, Performer shall attempt to give Producer prompt notice of such conflicting broadcast date, but Performer's failure to give such notice shall not constitute a breach of this agreement. If, for any reason, the program hereunder cannot be or is not broadcast on the contemplated network broadcast origination date, such program may be initially broadcast on any other date and no additional compensation shall be payable to Performer in such event. In the event Producer changes the origination date of the initial television network broadcast of the program hereunder, Producer shall attempt to give Performer prompt notice of such changed date, but Producer's failure to give such notice shall not constitute a breach of this agreement.

19. Performer represents and warrants that Performer has the right to enter into this agreement and to grant the rights herein granted. All rights, remedies, licenses, property privileges, obligations and agreements in this agreement shall be cumulative. The breach by Performer of the provisions contained in this agreement will cause Producer irreparable injury and damage. Producer shall be entitled as a matter of right, without further notice, to injunctive and other equitable relief to prevent the violation of any of the provisions of this agreement by Performer and to prevent Performer from performing services for, furnishing material to or granting conflicting rights to others. Neither this provision nor the exercise of non-exercise by Producer of any of its rights under this agreement shall constitute a waiver by Producer of any other rights or remedies which Producer may have under this agreement or at law or in equity, and Producer hereby expressly reserves such rights. Producer's liability for any breach shall be limited to the payment of money only and in no event shall any of Producer's rights with respect to the programs be affected thereby.

20. Producer shall have the right to assign this agreement and/or all or any part of the rights granted by Performer herein and hereunder to any person, firm or corporation without limitation provided that no such assignment shall relieve Producer of its obligations hereunder except authorized in the AFTRA Code.

21. Subject to the provisions of paragraph 12(a), Producer shall own and Performer hereby grants all rights of every kind and nature in and to all results and proceeds of Performer's services hereunder. Except as prohibited by the AFTRA Code, Producer shall have the right at any time and from time to time to produce the program in color and/or black-and-white and to edit, delete from, rearrange, and/or combine with other programs the program and any recordings thereof. Producer shall have the right to "dub" over Performer's speaking voice and all musical, instrumental and other sounds to be produced by Performer, to such extent as may be required by Producer, whether in English or in any foreign language or languages designated by Producer, and to "double" some other person in Performer's acts, poses and appearances, including, without limitation, where, in the opinion of Producer, the failure to use a "double" might result in physical injury to Performer.

22. Performer will not furnish or authorize any advertising matter or publicity of any form relating to the program, Performer's services in connection therewith, Producer or its operations or personnel or any exhibitors of the program to any person, firm or corporation other than Producer, and their respective agents and employees, without the prior written approval of Producer in each case.

23. To the extent permitted under the AFTRA Code, if compensation payable to Performer hereunder is in excess of AFTRA minimum scale, Producer may apply such excess against any extra payments which would otherwise be due to Performer under the applicable AFTRA Code with respect to the performance by Performer of his obligations or the exercise by Producer of rights granted by Performer to Producer hereunder. Without limiting the foregoing, Producer shall have the right to credit over-scale payments in excess of twice the full AFTRA minimum fee including all extra payments for additional rehearsal and doubling, toward monies due Performer for re-plays, or "foreign area" uses, of any recordings under the applicable AFTRA code.

24. In the event there is any inconsistency, between this Agreement and the mandatory provisions of the AFTRA Code, the code shall prevail; provided, however, that in such event the provision(s) of this Agreement so affected shall be curtailed, limited or otherwise modified only to the extent necessary to permit compliance with the minimum mandatory terms and conditions of the Code.

25. If the production of any program hereunder is prevented or materially interfered with by any of the causes or events specified in paragraph 5 hereof, then the same consequences as specified in paragraph 5 shall ensue.

26. The waiver by Producer of any breach of this agreement by Performer shall not constitute a waiver of any subsequent breach. Any such waiver by Producer must be in writing to be effective.

27. Any notice permitted or required herein shall be given by prepaid regular, certified or registered mail and shall be deemed complete upon depositing it in the United States post office, branch post office, or sub-station, addressed to the parties at their respective addresses hereinabove indicated. Such notice may likewise be wired to Performer or served personally on Performer or his agent or other representative. The date of mailing, wiring or date of such delivery personally, as the case may be, shall be deemed the date of service thereof.

28. SECTION 508—Reference is made to Section 508 of the Federal Communications Act, which became law on September 13th, 1960, making it a criminal offense for any person, in connection with the production or preparation of any program intended for broadcasting, to accept or pay money service or other valuable consideration for the inclusion of any matter as a part of any such progra without disclosing the same to the employer of the person to whom such payment is made or to t person for whom such program is being produced. Performer understands that it is the policy of t. Producer not to permit any employee of Producer to accept or pay any such consideration and Performer represents and agrees that Performer has not accepted and will not accept, and has not paid and will not pay any money, service, or other valuable consideration for the inclusion of any "plug," reference, or product identification, or any other matter, in any program produced hereunder.

*For Performer's information, the AFTRA Code provides as follows: "Additions to the standard form must be more favorable to the Performer than, or not inconsistent with, the express provisions of the said standard form contract, and in no event may such additions violate the AFTRA Code."

prod company American Idol Productions, Inc.

CDC_000445

CDC_000446

CDC_000447

# ACTOR'S WEEKLY TIME REPORT

**WORK STATUS SYMBOLS KEY**

| | |
|---|---|
| SW | START WORK |
| W | WORK |
| H | HOLD |
| R | REHEARSE |
| WF | WORK FINISHED |
| T | TRAVEL |

FPS SERVICES, INC.   500 South Sepulveda Boulevard, Los Angeles, CA 90049   (310) 440-9600

ARTISTS NAME _Coley Clark_
CORP. NAME _____
PICTURE NAME _American Idol_

SOC. SEC. # _____
FED ID# _____
ROLE OF _Principal_

CHECK ONE

SAG ✓
AFTRA ✓
W/E _3/15/03_
EPISODE # _210/210A_

| DAY | DATE | WORK STATUS | TRAVEL LV MTL | TRAVEL ARR LOC | MK/UP HAIR | ON SET ST. TIME | FIRST MEAL FROM | FIRST MEAL TO | SECOND MEAL FROM | SECOND MEAL TO | DISMISSED SET | DISMISSED ARR MTL | Total Hours | Travel Time Hours | Time Over 8/10 hrs. T1@ 1½ | OT@ 1½ | OT@ 2X | REMARKS NDB, STUNT, ADJ, ETC. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SUN | | | | | | | | | | | | | | | | | | |
| MON | | | | | | | | | | | | | | | | | | |
| TUE | 3/11 | | | | | 10 | 1 | 2 | | | 7 | | 8 | | | | | |
| WED | 3/12 | | | | | 10 | 1 | 2 | | | 6 | | 7 | | | | | |
| THU | | | | | | | | | | | | | | | | | | |
| FRI | | | | | | | | | | | | | | | | | | |
| SAT | | | | | | | | | | | | | | | | | | |

MARITAL STATUS _____    NO. EXEMPT. _____

ACCUM WEEKLY HOURS
LESS 44/48/24/32
LESS DAILY OT/TT
WEEKLY OT HOURS

BASIC HOURLY RATE: _____
CONTRACT TYPE: _____
DAY PLAYER RATE: _____
3 DAY PLAYER RATE: _____
WEEKLY PLAYER RATE: _____

Authorization for payment _____

MOW _____ NO. OF HRS. _____
THEATRICAL _____
SERIES  ½ HR. _____  1 HR. _____
OTHER (SPECIFY) _____

ACTOR _____ SINGER _____ PILOT _____
STUNT _____ LOOPER _____ DANCER _____
SPECIALTY ACT _____ OFF CAM ANN _____

| ACCT CODE | HRS | | RATE | TOTALS |
|---|---|---|---|---|
| 2000 10707 | | DAILY | | 1470.00 |
| 2003 10507 | | WEEKLY | | 429.00 |
| | | DAILY OT @ 1½ | | |
| | | DAILY OT @ 2X | | |
| | | WEEKLY OT | | |
| | | LOC ALLOW | | |
| | | STUNT ADJ | | |
| | | NIGHT PREM | | |
| | | AGENTS FEE | | |

| ACCT CODE | | TOTALS |
|---|---|---|
| | MEAL PENALTY | |
| | FORCE CALL | |
| | MISC. DED | |
| | REIMB. EXP. | |
| | MISC | |
| | OTHER SPECIFY | |
| 2000 10507 | SAG ADV | < 500.00 > |
| TOTAL DUE | | 1399.00 |
| NON PENSION | | |



CDC_000448

CDC_000449

# ACTOR'S WEEKLY TIME REPORT

FPS SERVICES, INC.   500 South Sepulveda Boulevard, Los Angeles, CA 90049   (310) 440-9600

**WORK STATUS SYMBOLS KEY**

| SW | START WORK |
| W | WORK |
| H | HOLD |
| R | REHEARSE |
| WF | WORK FINISHED |
| T | TRAVEL |

ARTISTS NAME  _Corey Clark_

CORP. NAME _____

PICTURE NAME _American Idol_

SOC. SEC. # _____

FED ID# _____

ROLE OF _Principal_

**CHECK ONE**

SAG _____

AFTRA ✓

W/E _5/22/03_

EPISODE # _24/24A_

| DAY | DATE | WORK STATUS | TRAVEL | | MK/UP HAIR | ON SET ST. TIME | FIRST MEAL | | SECOND MEAL | | DISMISSED | | Total Hours | Travel Time Hours | Time Over 8/10 hrs. | | | REMARKS NDB, STUNT, ADJ. ETC. |
| | | | LV MTL | ARR LOC | | | FROM | TO | FROM | TO | SET | ARR MTL | | | TI@ 1½ | OT@ 1½ | OT@ 2X | |
| SUN | | | | | | | | | | | | | | | | | | |
| MON | | | | | | | | | | | | | | | | | | |
| TUE | 7/18 | | | | | 9 | 12:30 | 3:0 | | | 7:00 | | 9 | | | | | |
| WED | 7/19 | | | | | 9:30 | 12 | 1 | | | 6:a: | | 7.25 | | | | | |
| THU | | | | | | | | | | | | | | | | | | |
| FRI | | | | | | | | | | | | | | | | | | |
| SAT | | | | | | | | | | | | | | | | | | |

| MARITAL STATUS | NO. EXEMPT. | ACCUM WEEKLY HOURS |
| | | LESS 44/48/24/32 |
| | | LESS DAILY OT/TT |
| | | WEEKLY OT HOURS |

BASIC HOURLY RATE: _____

CONTRACT TYPE:

DAY PLAYER RATE: _____

3 DAY PLAYER RATE: _____

WEEKLY PLAYER RATE: _____

_Authorization for payment_

MOW _____ NO. OF HRS. _____

THEATRICAL _____

SERIES ½ HR. _____ 1 HR. _____

OTHER (SPECIFY) _____

ACTOR _____ SINGER _____ PILOT _____

STUNT _____ LOOPER _____ DANCER _____

SPECIALTY _____ OFF CAM ANN _____

| ACCT CODE | HRS | | RATE | TOTALS |
| 7000 103 07 | | DAILY | | 1470 00 |
| 7004 103 07 | | WEEKLY | | 429 00 |
| 7008 103 07 | | DAILY OT @ 1½ | | 174 00 |
| | | DAILY OT @ 2X | | |
| | | WEEKLY OT | | |
| | | LOC ALLOW | | |
| | | STUNT ADJ | | |
| | | NIGHT PREM | | |
| | | AGENT FE | | |

| ACCT CODE | | TOTALS |
| | MEAL PENALTY | |
| | FORCE CALL | |
| | MISC. DED | |
| | REIMB. EXP. | |
| | MISC | |
| | OTHER SPECIFY | |
| TOTAL DUE | | 2073 00 |
| NON PENSION | | |



CDC_000450

CDC_000451

# ACTOR'S WEEKLY TIME REPORT

WORK STATUS SYMBOLS KEY

| | |
|---|---|
| SW | START WORK |
| W | WORK |
| H | HOLD |
| R | REHEARSE |
| WF | WORK FINISHED |
| T | TRAVEL |

FPS SERVICES, INC.   500 South Sepulveda Boulevard, Los Angeles, CA 90049   (310) 440-9600

ARTISTS NAME _Coleen Clark_

CORP. NAME _____

PICTURE NAME _American Idol_

SOC. SEC. # ███████████

FED ID# _____

ROLE OF _PRINCIPAL_

CHECK ONE

SAG _____

AFTRA ✓

W/E _3/29/03_

EPISODE # _212/212A_

| DAY | DATE | WORK STATUS | TRAVEL LV MTL | TRAVEL ARR LOC | MK/UP HAIR | ON SET ST. TIME | FIRST MEAL FROM | FIRST MEAL TO | SECOND MEAL FROM | SECOND MEAL TO | DISMISSED SET | DISMISSED ARR MTL | Total Hours | Travel Time Hours | TT@ 1½ | OT@ 1½ | OT@ 2X | REMARKS NDB, STUNT, ADJ, ETC. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SUN | | | | | | | | | | | | | | | | | | |
| MON | | | | | | | | | | | | | | | | | | |
| TUE | 3/25 | | | | | 7 | 12³⁰ | 1³⁰ | | | 6 ᵂ | | 8 | | | | | |
| WED | 3/26 | | | | | 8 | 12³⁰ | 1³⁰ | | | 6 ³⁰ | | 9.5 | | | | | |
| THU | | | | | | | | | | | | | | | | | | |
| FRI | | | | | | | | | | | | | | | | | | |
| SAT | | | | | | | | | | | | | | | | | | |

MARITAL STATUS

NO. EXEMPT.

ACCUM WEEKLY HOURS

LESS 44/48/24/32

LESS DAILY OT/TT

WEEKLY OT HOURS

BASIC HOURLY RATE: _____

CONTRACT TYPE:

DAY PLAYER RATE: _____

3 DAY PLAYER RATE: _____

WEEKLY PLAYER RATE: _____

MOW _____ NO. OF HRS. _____

THEATRICAL _____

SERIES ½ HR. _____ 1 HR. _____

OTHER (SPECIFY) _____

ACTOR _____ SINGER _____ PILOT _____

STUNT _____ LOOPER _____ DANCER _____

SPECIALTY _____ OFF CAM ANN _____

Authorization for payment

| ACCT CODE | HRS | | RATE | TOTALS |
|---|---|---|---|---|
| 2000 103 01 | | DAILY | | 1470 ⁰⁰ |
| 2009 103 01 | | WEEKLY | | 174 ⁰⁰ |
| | | DAILY OT @ 1½ | | |
| | | DAILY OT @ 2X | | |
| | | WEEKLY OT | | |
| | | LOC ALLOW | | |
| | | STUNT ADJ | | |
| | | NIGHT PREM | | |
| | | AGENT | | |

| ACCT CODE | | TOTALS |
|---|---|---|
| | MEAL PENALTY | |
| | FORCE CALL | |
| | MISC. DED | |
| | REIMB. EXP. | |
| | MISC | |
| | OTHER SPECIFY | |
| TOTAL DUE | | 1644 ⁰⁰ |
| NON PENSION | | |



CDC_000452

CDC_000453

# ACTOR'S WEEKLY TIME REPORT

FPS SERVICES, INC.   500 South Sepulveda Boulevard, Los Angeles, CA 90049   (310) 440-9600

**WORK STATUS SYMBOLS KEY**

| | |
|---|---|
| SW | START WORK |
| W | WORK |
| H | HOLD |
| R | REHEARSE |
| WF | WORK FINISHED |
| T | TRAVEL |

ARTISTS NAME _Corey Clark_         SOC. SEC. # _____

CORP. NAME _____         FED ID# _____

PICTURE NAME _American Idol_       ROLE OF _Self / principal_

CHECK ONE

SAG _____
AFTRA _✓_
W/E _4/5/03_
EPISODE # _213_

| DAY | DATE | WORK STATUS | TRAVEL | | MKUP HAIR | ON SET ST. TIME | FIRST MEAL | | SECOND MEAL | | DISMISSED | | Total Hours | Travel Time Hours | Time Over 8/10 hrs. | | | REMARKS NDB, STUNT, ADJ, ETC. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | LV MTL | ARR LOC | | | FROM | TO | FROM | TO | SET | ARR MTL | | | TT@ 1½ | OT@ 1½ | OT@ 2X | |
| SUN | | | | | | | | | | | | | | | | | | |
| MON | | | | | | | | | | | | | | | | | | |
| TUE | | | | | Appeared in Episode 213 | | | | | | | | | | | | | |
| WED | | | | | | | | | | | | | | | | | | |
| THU | | | | | | | | | | | | | | | | | | |
| FRI | | | | | | | | | | | | | | | | | | |
| SAT | | | | | | | | | | | | | | | | | | |

BASIC HOURLY RATE: _____

CONTRACT TYPE:

DAY PLAYER RATE: _____

3 DAY PLAYER RATE: _____

WEEKLY PLAYER RATE: _____

MOW _____ NO. OF HRS.
THEATRICAL _____
SERIES  ½ HR. _____ 1 HR. _____
OTHER (SPECIFY) _____

ACTOR _____ SINGER _____ PILOT _____
STUNT _____ LOOPER _____ DANCER _____
SPECIALTY ACT _____ OFF CAM ANN _____

MARITAL STATUS _____     NO. EXEMPT. _____

ACCUM WEEKLY HOURS
LESS 44/48/24/32
LESS DAILY OT/TT
WEEKLY OT HOURS

Authorization for payment

| ACCT CODE | HRS | | RATE | TOTALS |
|---|---|---|---|---|
| 2000 103 07 | | DAILY | | 822 00 |
| | | WEEKLY | | |
| | | DAILY OT @ 1½ | | |
| | | DAILY OT @ 2X | | |
| | | WEEKLY OT | | |
| | | LOC ALLOW | | |
| | | STUNT ADJ | | |
| | | NIGHT PREM | | |
| | | AGENTS FEE | | |

| ACCT CODE | | TOTALS |
|---|---|---|
| | MEAL PENALTY | |
| | FORCE CALL | |
| | MISC. DED | |
| | REIMB. EXP. | |
| | MISC | |
| | OTHER SPECIFY | |
| TOTAL DUE | | 822 00 |
| NON PENSION | | |



CDC_000454

**F S I  Fps Payroll Services, Inc.**
Phone: (310) 440-9600  500 S SEPULVEDA BLVD STE 400
LOS ANGELES, CALIFORNIA 90049

AMERICAN IDOL SEASON 2
AMERICAN IDOL PRODUCTION,

| PERIOD ENDING 4/05/2003 | EMPLOYEE NAME COREY CLARK | | | SOC-SEC-# | CORP-ID-# | STATUS S - 4 | CHECK DATE 4/09/2003 | CHECK# 47564 |
|---|---|---|---|---|---|---|---|---|

**ARNINGS** · | | | | UNION CODE: 99995 **DEDUCTIONS** | | | INVOICE: C468051(FSI) |

| DESCRIPTION | HOURS | RATE | AMOUNT | | DESCRIPTION | CURRENT DED. | | YEAR-TO-DATE |
|---|---|---|---|---|---|---|---|---|
| PRINCIPAL | | | 822.00 | | GROSS PAY | | 822.00 | 6,438.00 |
| | | | | | OASDI | | 50.96 | 399.16 |
| | | | | | MEDICARE | | 11.92 | 93.36 |
| | | | | | FWT | | 75.82 | 1,187.05 |
| | | | | | SWT | | 28.86 | 408.38 |
| | | | | | SDI | | 4.11 | 32.20 |
| | | | | | MISC | | 0.00 | 500.00 |

ADDRESS: 1138 N. CHESTNUT AVENUE
RIALTO          CA 92376-0000

NET PAY          650.33          3,817.85

REMARKS: APPEARED 213

Please verify address for year end tax document processing.
Email corrections to W2@media-services.com or FAX 310-254-1700.

**EMPLOYEE COPY--NON NEGOTIABLE**

---

DO NOT CASH THIS CHECK UNLESS YOU CAN SEE THE TRUE "VERIFY FIRST-SAFE" WATERMARKED INTO THE PAPER

**F S I  Fps Payroll Services, Inc.**
500 S SEPULVEDA BLVD STE 400
LOS ANGELES, CALIFORNIA 90049
(310) 440-9600

CITY NATIONAL BANK          47564
400 NORTH ROXBURY DRIVE
BEVERLY HILLS, CA  90210
16-1606/1220

DATE    4/09/2003

AMOUNT    $ *******650.33**

PAY*******SIX HUNDRED FIFTY AND 33/100********************************

TO THE
ORDER OF

**NOT VALID AFTER 180 DAYS**
ATTN: CHECK CASHING SERVICES: CALL (310) 440-9613
TO VERIFY THAT THIS CHECK IS NEGOTIABLE.
BANKS AND CREDIT UNIONS NEED NOT CALL.

COREY CLARK
1138 N. CHESTNUT AVENUE
RIALTO          CA 92376-0000

F S I  Fps Payroll Services, Inc.

Robert Oluman

HOLD UP TO LIGHT TO SEE SAFE AND VERIFY FIRST

⑈0047564⑈ ⑆122016066⑆        101954080⑈

TO AFTRA
4·10·03

CDC_000455



CDC_000456

CDC_000457

# ACTOR'S WEE_LY TIME REPORT

FPS SERVICES, INC.    500 South Sepulveda Boulevard, Los Angeles, CA 90049    (310) 440-9600

| WORK STATUS SYMBOLS KEY | |
|---|---|
| SW | START WORK |
| W | WORK |
| H | HOLD |
| R | REHEARSE |
| WF | WORK FINISHED |
| T | TRAVEL |

ARTISTS NAME _Crazy Cemen_    SOC. SEC. # _____

CORP. NAME _____    FED ID# _____

PICTURE NAME _American Inc_    ROLE OF _Self_

CHE _INE_

SAG _____
AFTRA _____
W/E _9/5/03_
EPISODE # _213A_

| DAY | DATE | WORK STATUS | TRAVEL | | MKUP HAIR | ON SET ST. TIME | FIRST MEAL | | SECOND MEAL | | DISMISSED | | Total Hours | Travel Time Hours | Time Over 8/10 hrs. | | | REMARKS NDB, STUNT, ADJ., ETC. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | LV MTL | ARR LOC | | | FROM | TO | FROM | TO | SET | ARR MTL | | | OT@ 1½ | OT@ 1½ | OT@ 2X | |
| SUN | | | | | | | | | | | | | | | | | | |
| MON | | | | | | | | | | | | | | | | | | |
| TUE | | | | | | | | | | | | | | | | | | |
| WED | | | | | | American In Cassel | 213A | | | | | | | | | | | |
| THU | | | | | | | | | | | | | | | | | | |
| FRI | | | | | | | | | | | | | | | | | | |
| SAT | | | | | | | | | | | | | | | | | | |

BASIC HOURLY RATE: _____

CONTRACT TYPE: _____

DAY PLAYER RATE: _____
3 DAY PLAYER RATE: _____
WEEKLY PLAYER RATE: _____

MOW _____ NO. OF HRS. _____
THEATRICAL _____
SERIES ½ HR. _____ 1 HR. _____
OTHER (SPECIFY) _____

ACTOR ___ SINGER ___ PILOT ___
STUNT ___ LOOPER ___ DANCER ___
SPECIALTY ACT ___ OFF CAM ANN ___

MARITAL STATUS _____    NO. EXEMPT. _____

ACCUM WEEKLY HOURS
LESS 44/48/24/32
LESS DAILY OT/TT
WEEKLY OT HOURS

Authorization for payment

| ACCT CODE | HRS | | RATE | TOTALS |
|---|---|---|---|---|
| _200 163 07_ | | DAILY | | _822_ |
| | | WEEKLY | | |
| | | DAILY OT @ 1½ | | |
| | | DAILY OT @ 2X | | |
| | | WEEKLY OT | | |
| | | LOC ALLOW | | |
| | | STUNT ADJ | | |
| | | NIGHT PREM | | |
| | | AGENTS FEE | | |

| ACCT CODE | | TOTALS |
|---|---|---|
| | MEAL PENALTY | |
| | FORCE CALL | |
| | MISC. DED | |
| | REIMB. EXP. | |
| | MISC | |
| | OTHER SPECIFY | |
| TOTAL DUE | | _822_ |
| NON PENSION | | |



CDC_000458

CDC_000459

# ACTOR'S WEEKLY TIME REPORT

FPS SERVICES, INC.   500 South Sepulveda Boulevard, Los Angeles, CA 90049   (310) 440-9600

**WORK STATUS SYMBOLS KEY**

| | |
|---|---|
| SW | START WORK |
| W | WORK |
| H | HOLD |
| R | REHEARSE |
| WF | WORK FINISHED |
| T | TRAVEL |

ARTISTS NAME _Corey Clark_    SOC. SEC. # _____

CORP. NAME _____    FED ID# _____

PICTURE NAME _American Idol_    ROLE OF _Self_

CHECK ONE
SAG _____
AFTRA ✓
W/E _4/12/03_
EPISODE # _214A_

| DAY | DATE | WORK STATUS | TRAVEL LV MTL | TRAVEL ARR LOC | MKUP HAIR | ON SET ST. TIME | FIRST MEAL FROM | FIRST MEAL TO | SECOND MEAL FROM | SECOND MEAL TO | DISMISSED SET | DISMISSED ARR MTL | Total Hours | Travel Time Hours | T/8 1½ | OT@ 1½ | OT@ 2X | REMARKS NDB, STUNT, ADJ, ETC. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SUN | | | | | | | | | | | | | | | | | | |
| MON | | | | | | | | | | | | | | | | | | |
| TUE | | | | | | _American Idol Episode 214A_ | | | | | | | | | | | | |
| WED | | | | | | | | | | | | | | | | | | |
| THU | | | | | | | | | | | | | | | | | | |
| FRI | | | | | | | | | | | | | | | | | | |
| SAT | | | | | | | | | | | | | | | | | | |

BASIC HOURLY RATE: _____

CONTRACT TYPE: _____

DAY PLAYER RATE: _____
3 DAY PLAYER RATE: _____
WEEKLY PLAYER RATE: _____

MOW _____ NO. OF HRS. _____
THEATRICAL _____
SERIES ½ HR. _____ 1 HR. _____
OTHER (SPECIFY) _____

ACTOR _____ SINGER _____ PILOT _____
STUNT _____ LOOPER _____ DANCER _____
SPECIALTY ACT _____ OFF CAM ANN _____

MARITAL STATUS _____    NO. EXEMPT. _____

ACCUM WEEKLY HOURS
LESS 44/48/24/32
LESS DAILY OT/TT
WEEKLY OT HOURS

Authorization for payment

| ACCT CODE | HRS | | | RATE | TOTALS |
|---|---|---|---|---|---|
| _Tal 165-7_ | | DAILY | | | _822_ |
| | | WEEKLY | | | |
| | | DAILY OT @ 1½ | | | |
| | | DAILY OT @ 2X | | | |
| | | WEEKLY OT | | | |
| | | LOC ALLOW | | | |
| | | STUNT ADJ | | | |
| | | NIGHT PREM | | | |
| | | AGENTS FEE | | | |

| ACCT CODE | | TOTALS |
|---|---|---|
| | MEAL PENALTY | |
| | FORCE CALL | |
| | MISC. DED | |
| | REIMB. EXP. | |
| | MISC | |
| | OTHER SPECIFY | |
| TOTAL DUE | | _822_ |
| NON PENSION | | |



CDC_000460

CDC_000461

# ACTOR'S WEE_LY TIME REPORT

FPS SERVICES, INC.   500 South Sepulveda Boulevard, Los Angeles, CA 90049   (310) 440-9600

**WORK STATUS SYMBOLS KEY**

| | |
|---|---|
| SW | START WORK |
| W | WORK |
| H | HOLD |
| R | REHEARSE |
| WF | WORK FINISHED |
| T | TRAVEL |

CHE_ _NE
SAG _____
AFTRA ✓
W/E _4/26/03_
EPISODE # _215/3_

ARTISTS NAME _Corey Climek_        SOC. SEC. # _____
CORP. NAME _____        FED ID# _____
PICTURE NAME _American Idol_        ROLE OF _Self_

| DAY | DATE | WORK STATUS | TRAVEL | | MKUP HAIR | ON SET ST. TIME | FIRST MEAL | | SECOND MEAL | | DISMISSED | | Total Hours | Travel Time Hours | Time Over 8/10 hrs. | | | REMARKS NDB, STUNT, ADJ, ETC. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | LV MTL | ARR LOC | | | FROM | TO | FROM | TO | SET | ARR MTL | | | TT@ 1½ | OT@ 1½ | OT@ 2X | |
| SUN | | | | | | | | | | | | | | | | | | |
| MON | | | | | | | | | | | | | | | | | | |
| TUE | | | | | | _Calio Re-Use Payment_ | | | | | | | | | | | | |
| WED | | | | | | | | | | | | | | | | | | |
| THU | | | | | | | | | | | | | | | | | | |
| FRI | | | | | | | | | | | | | | | | | | |
| SAT | | | | | | | | | | | | | | | | | | |

MARITAL STATUS _____    NO. EXEMPT. _____

ACCUM WEEKLY HOURS
LESS 44/48/24/32
LESS DAILY OT/TT
WEEKLY OT HOURS

BASIC HOURLY RATE: _____

CONTRACT TYPE:

DAY PLAYER RATE: _____
3 DAY PLAYER RATE: _____
WEEKLY PLAYER RATE: _____

MOW _____ NO. OF HRS. _____
THEATRICAL _____
SERIES ½ HR. _____ 1 HR. _____
OTHER (SPECIFY) _____

ACTOR ___ SINGER ___ PILOT ___
STUNT ___ LOOPER ___ DANCER ___
SPECIALTY ACT ___ OFF CAM ANN ___

Authorization for payment _WM_

| ACCT CODE | HRS | | RATE | TOTALS |
|---|---|---|---|---|
| _2060 143 07_ | | DAILY | | _822.00_ |
| | | WEEKLY | | |
| | | DAILY OT @ 1½ | | |
| | | DAILY OT @ 2X | | |
| | | WEEKLY OT | | |
| | | LOC ALLOW | | |
| | | STUNT ADJ | | |
| | | NIGHT PREM | | |
| | | AGENTS FEE | | |

| ACCT CODE | | TOTALS |
|---|---|---|
| | MEAL PENALTY | |
| | FORCE CALL | |
| | MISC. DED | |
| | REIMB. EXP. | |
| | MISC | |
| | OTHER SPECIFY | |
| TOTAL DUE | | _822.00_ |
| NON PENSION | | |





# American Federation of Television and Radio Artists
### affiliated with the AFL-CIO
## Cast Clearance Report

## American Federation of Television and Radio Artists - Los Angeles

– Cast List –

## *JOB PENDING BASED ON EMPLOYER SIGNATORY STATUS*
### American Idol : Search for a Superstar

ID : 54,987          Episode :          Start Date : 03/24/2003

| AFTRA Rep. : | AFTRA Contact : | AFTRA Phone : | AFTRA Fax : |
|---|---|---|---|
| Billie Murphy | Rich Barsumian | 323-634-8100 | 323-634-8246 |
| **Employer of Record :** | **Producer :**<br>AMERICAN IDOL<br>PRODUCTIONS INC<br><br>Anne Bartnett<br>310-255-4700 | **Casting Director :** | **Job Primary Contact :**<br>Chris Wagner<br><br><br>323-575-8050 |

| Status | Name Requested | SSN | Local | Performance Classification | APP | ATH |
|---|---|---|---|---|---|---|
| TH | Aiken,Clay | ■■■■ | Taft Hartley | TVP-Day Performer On-Camera | X | |
| OK | Anthony,Keith | ■■■■ | Los Angeles | TVP-Stand In | | |
| OK | Barrett,Mark | ■■■■ | Los Angeles | TVP-Stand In | | |
| OK | Bartlett,Brett E. | ■■■■ | Los Angeles | TVP-Stand In | | |
| OK | Blum,Larry S. | ■■■■ | Los Angeles | TVP-Stand In | | |
| OK | Brandi,Mindy | ■■■■ | Los Angeles | TVP-Stand In | | |
| OK | Byrd,Debra | ■■■■ | Los Angeles | TVP-Day Performer On-Camera | | |
| TH | Caldwell,Kimberly | ■■■■ | Taft Hartley | TVP-Day Performer On-Camera | X | |
| TH | Clark,Corey | ■■■■ | Taft Hartley | TVP-Day Performer On-Camera | X | |
| TH | Cobbins,Lashunda | ■■■■ | Taft Hartley | TVP-Day Performer On-Camera | X | |
| OK | Cole,Marijane | ■■■■ | Los Angeles | TVP-Stand In | | |
| OK | Craig,Jerry | ■■■■ | Los Angeles | TVP-Stand In | | |
| OK | Dennas,David | ■■■■ | Los Angeles | TVP-Stand In | | |
| TH | Demarco,Julia | ■■■■ | Taft Hartley | TVP-Day Performer On-Camera | X | |
| OK | Gadson,Karen | ■■■■ | Los Angeles | TVP-Stand In | | |
| OK | Gentry,Renee | ■■■■ | Los Angeles | TVP-Stand In | | |
| TH | Gracin,Joshua | ■■■■ | Taft Hartley | TVP-Day Performer On-Camera | X | |
| TH | Grigsby,Charles | ■■■■ | Taft Hartley | TVP-Day Performer On-Camera | X | |
| OK | Hall,Keena | ■■■■ | Los Angeles | TVP-Stand In | | |

CDC_000463



CDC_000464

CDC_000465

# F S I *Fps Payroll Services, Inc.*
**Phone: (310) 440-9600**   500 S SEPULVEDA BLVD STE 400
LOS ANGELES, CALIFORNIA 90049

**CLIENT COPY—NON NEGOTIABLE**
AMERICAN IDOL SEASON 2
AMERICAN IDOL PRODUCTION,

| PERIOD ENDING | EMPLOYEE NAME | SOC-SEC-# | CORP-ID-# | STATUS | CHECK DATE | CHECK # |
|---|---|---|---|---|---|---|
| 3/29/2003 | COREY CLARK | | | S - 4 | 4/03/2003 | 45749 |

## EARNINGS                UNION CODE: 99995   ## DEDUCTIONS          INVOICE: C468045(FSI)

| DESCRIPTION | HOURS | RATE | AMOUNT | DESCRIPTION | CURRENT DED. | YEAR-TO-DATE |
|---|---|---|---|---|---|---|
| PRINCIPAL | | | 1,644.00 | GROSS PAY | 1,644.00 | 9,616.00 |
| | | | | OASDI | 101.93 | 349.20 |
| | | | | MEDICARE | 23.86 | 81.44 |
| | | | | FWT | 302.01 | 1,111.23 |
| | | | | SWT | 105.30 | 379.52 |
| | | | | SDI | 8.22 | 28.09 |
| | | | | MISC | 0.00 | 500.00 |

ADDRESS: 1138 N. CHESTNUT AVENUE
RIALTO                CA 92376-0000

NET PAY        1,102.70        3,167.52

REMARKS:  212/212A

Please verify address for year end tax document processing. Email corrections to W2@media-services.com or FAX 310-254-1700.

---

# F S I *Fps Payroll Services, Inc.*
**Phone: (310) 440-9600**   500 S SEPULVEDA BLVD STE 400
LOS ANGELES, CALIFORNIA 90049

**CLIENT COPY—NON NEGOTIABLE**
AMERICAN IDOL SEASON 2
AMERICAN IDOL PRODUCTION,

| PERIOD ENDING | EMPLOYEE NAME | SOC-SEC-# | CORP-ID-# | STATUS | CHECK DATE | CHECK # |
|---|---|---|---|---|---|---|
| 4/05/2003 | COREY CLARK | | | S - 4 | 4/09/2003 | 47564 |

## EARNINGS                UNION CODE: 99995   ## DEDUCTIONS          INVOICE: C468051(FSI)

| DESCRIPTION | HOURS | RATE | AMOUNT | DESCRIPTION | CURRENT DED. | YEAR-TO-DATE |
|---|---|---|---|---|---|---|
| PRINCIPAL | | | 822.00 | GROSS PAY | 822.00 | 6,438.00 |
| | | | | OASDI | 50.96 | 399.16 |
| | | | | MEDICARE | 11.92 | 93.36 |
| | | | | FWT | 75.82 | 1,187.05 |
| | | | | SWT | 28.86 | 408.38 |
| | | | | SDI | 4.11 | 32.20 |
| | | | | MISC | 0.00 | 500.00 |

ADDRESS: 1138 N. CHESTNUT AVENUE
RIALTO                CA 92376-0000

NET PAY        650.33        3,817.85

REMARKS:  APPEARED 213

Please verify address for year end tax document processing. Email corrections to W2@media-services.com or FAX 310-254-1700.



CDC_000466





CDC_000468

CDC_000469

**F S I** *Fps Payroll Services, Inc.*
Phone: (310) 440-9600     500 S SEPULVEDA BLVD STE 400
                          LOS ANGELES, CALIFORNIA 90049

**CLIENT COPY—NON NEGOTIABLE**
AMERICAN IDOL SEASON 2
     AMERICAN IDOL PRODUCTION,

| PERIOD ENDING | EMPLOYEE NAME | SOC-SEC-# | CORP-ID-# | STATUS | CHECK DATE | CHECK # |
|---|---|---|---|---|---|---|
| 4/05/2003 | COREY CLARK | ▓▓▓▓ | | S - 4 | 4/23/2003 | 51958 |

**EARNINGS**     UNION CODE: 99995     **DEDUCTIONS**     INVOICE: C468059(FSI)

| DESCRIPTION | HOURS | RATE | AMOUNT |
|---|---|---|---|
| PRINCIPAL | | | 822.00 |

| DESCRIPTION | CURRENT DED. | YEAR-TO-DATE |
|---|---|---|
| GROSS PAY | 822.00 | 8,082.00 |
| OASDI | 50.96 | 501.08 |
| MEDICARE | 11.92 | 117.20 |
| FWT | 75.82 | 1,338.69 |
| SWT | 28.86 | 466.10 |
| VPDI | 4.11 | 40.42 |
| MISC | 0.00 | 500.00 |

ADDRESS: 1138 N. CHESTNUT AVENUE
         RIALTO          CA 92376-0000

NET PAY     650.33     5,118.51

REMARKS: 213A

---

**F S I** *Fps Payroll Services, Inc.*
Phone: (310) 440-9600     500 S SEPULVEDA BLVD STE 400
                          LOS ANGELES, CALIFORNIA 90049

**CLIENT COPY—NON NEGOTIABLE**
AMERICAN IDOL SEASON 2
     AMERICAN IDOL PRODUCTION,

| PERIOD ENDING | EMPLOYEE NAME | SOC-SEC-# | CORP-ID-# | STATUS | CHECK DATE | CHECK # |
|---|---|---|---|---|---|---|
| 4/12/2003 | COREY CLARK | ▓▓▓▓ | | S - 4 | 4/23/2003 | 51959 |

**EARNINGS**     UNION CODE: 99995     **DEDUCTIONS**     INVOICE: C468059(FSI)

| DESCRIPTION | HOURS | RATE | AMOUNT |
|---|---|---|---|
| PRINCIPAL | | | 822.00 |

| DESCRIPTION | CURRENT DED. | YEAR-TO-DATE |
|---|---|---|
| GROSS PAY | 822.00 | 8,082.00 |
| OASDI | 50.96 | 501.08 |
| MEDICARE | 11.92 | 117.20 |
| FWT | 75.82 | 1,338.69 |
| SWT | 28.86 | 466.10 |
| VPDI | 4.11 | 40.42 |
| MISC | 0.00 | 500.00 |

ADDRESS: 1138 N. CHESTNUT AVENUE
         RIALTO          CA 92376-0000

NET PAY     650.33     5,118.51

REMARKS: 214A

Please verify address for year end tax document processing. Email corrections to W2@media-services.com or FAX 310-254-1700.



CDC_000470

CDC_000471

# F S I *Fps Payroll Services, Inc.*
**Phone: (310) 440-9600**    500 S SEPULVEDA BLVD STE 400
LOS ANGELES, CALIFORNIA 90049

CLIENT COPY—NON NEGOTIABLE
AMERICAN IDOL SEASON 2
AMERICAN IDOL PRODUCTION,

| PERIOD ENDING | EMPLOYEE NAME | SOC-SEC-# | CORP-ID-# | STATUS | CHECK DATE | CHECK # |
|---|---|---|---|---|---|---|
| 4/26/2003 | COREY CLARK | ████████ | | S - 4 | 5/02/2003 | 56138 |

UNION CODE: 99995    INVOICE: C468064(FSI)

## EARNINGS

| DESCRIPTION | HOURS | RATE | AMOUNT |
|---|---|---|---|
| PRINCIPAL | | | 822.00 |

ADDRESS: 1138 N. CHESTNUT AVENUE
RIALTO    CA 92376-0000

## DEDUCTIONS

| DESCRIPTION | CURRENT DED. | YEAR-TO-DATE |
|---|---|---|
| GROSS PAY | 822.00 | 6,904.00 |
| OASDI | 50.96 | 552.04 |
| MEDICARE | 11.92 | 129.12 |
| FWT | 75.82 | 1,414.51 |
| SWT | 25.86 | 494.96 |
| VVDI | 4.11 | 44.53 |
| MISC | 0.00 | 500.00 |
| NET PAY | 650.33 | 5,768.84 |

REMARKS: 2158 CLIP

Please verify address for year end tax document processing. Email corrections to V2@media-services.com or FAX 310-254-1700.



*American Idol Productions*
EMPLOYMENT CONTRACT

------------------------

# END

CDC_000472

Robin Joyce

LAW OFFICES
PRYOR CASHMAN SHERMAN & FLYNN LLP
410 Park Avenue
New York, N.Y. 10022-4441

Telephone:     (212) 421-4100
Fax:           (212) 326-0806
               (212) 326-0890
Direct Dial:   (212) 326-0100          Email:    hsiegel@pryorcashman.com

## FACSIMILE COVER LETTER

USER:   023                    DATE:           4/1/03
                               CLIENT/MATTER:

NAME:            Mr. Jon Clark
FIRM:
CITY, STATE:     Nashville, TN
FACSIMILE NO.:   (615) 259-7302
FROM:            Howard Siegel, Esq.
TOTAL PAGES:     2

CONFIDENTIAL

If you do not receive all the pages, please contact us at (212) 421-4100   Ext. 167

[ ]  The original of the transmitted documents will be sent by :

[X]  This will be the only form of delivery of the transmitted document.

MESSAGE

Dear Jon, As discussed.

Best regards,

The information in this facsimile message (fax) is sent by an attorney or his/her agent, and is intended to be confidential and for the use of only the individual or entity named above. The information may be protected by attorney/client privilege, work product immunity or other legal rules. If the reader of this message is not the intended recipient, you are notified that retention, discussion, distribution or copying of this fax is strictly prohibited. If you receive this fax in error, please notify us immediately by telephone and return it to the address above. Thank you

CDC_000474

# PRYOR CASHMAN SHERMAN & FLYNN LLP

410 PARK AVENUE, NEW YORK, NEW YORK 10022-4441

| | | | |
|---|---|---|---|
| GIDEON CASHMAN | PHILIP R. HOFFMAN | BRAD D. ROSE | COUNSEL: |
| PAUL J. SHERMAN | RONALD B. KREMNITZER | PERRY M. AMSELLEM | JONATHAN A. BERNSTEIN |
| DAVID L. AUERBACH | RICHARD L. KAY | RICHARD S. FRAZER | IRA J. GOLDSTEIN |
| ALAN H. SIEGEL | ERIC B. WOLDENBERG | STEVEN J. PIERCE | F. ROBERT STEIN |
| STEPHEN F. HUFF | LAWRENCE REMMEL | KENNETH A. SCHULMAN | W. WILDER KNIGHT, II |
| JOSEPH Z. EPSTEIN | RICHARD M. BETHEIL | BRETT J. MEYER | STEVEN M. RABINOWITZ |
| SANFORD M. GOLDMAN | ERIC M. HELLIGE | LISA M. BUCKLEY | SAMSON R. BECHHOFER |
| HOWARD SIEGEL | TOM J. FERBER | MARK W. SAKS | S. Y. KIM |
| JAMES A. JANOWITZ | JAMIE M. BRICKELL | EDWARD M. FOX | EDWARD A. MORGAN |
| ARNOLD J. SCHAAB | BLAKE HORNICK | MURRAY D. SCHWARTZ | KAREN M. ROBSON |
| STEPHEN B. RODNER | JOSEPH L. GRIER | JAMES S. O'BRIEN, JR. | RICHARD LEVY, JR. |
| GELIO D. DACKO | WAYNE B. HEICKLEN | ILENE FARKAS | IRVING I. KAGAN |
| DONALD S. ZAKARIN | CHRISTOPHER J. GUES | NICOLE A. VISAGGI | PHYLLIS M. KAUFMAN |
| STEPHEN M. GOODMAN | WILLIAM M. LEVINE | JEFFREY C. JOHNSON | RALPH G. DE PALMA, III |
| RONALD H. SHECHTMAN | JOHN J. CROWE | THOMAS J. MALMUD | JAY SHAPIRO |
| ANDREW H. BART | | | |

TELEPHONE: 212-421-4100
FAX: 212-326-0806
EMAIL: FIRM@PRYORCASHMAN.COM
WWW.PRYORCASHMAN.COM

WRITER'S DIRECT DIAL:

**(212) 326-0100**

WRITER'S EMAIL:

hsiegel@pryorcashman.com

April 1, 2003

<u>VIA FEDERAL EXPRESS</u>

Ms. Jan Clark
123 Creekwood Drive
Mt. Juliet, Tennessee 37122

Re:  <u>Corey - 19-Related Contracts</u>

Dear Jan:

It was good speaking with you earlier today.

As agreed, I have copied and enclose herewith Corey's agreements with the various 19-related companies. Corey also has a summary memorandum of the basic points. A copy of these papers have been sent at your request to Robin Mitchell Joyce at Bass, Berry & Sims. I previously faxed Robin a copy of the form of "Contestant's Agreement" for the television show which I can only assume is identical to or substantially similar to the contract signed by Corey.

Please do not hesitate to call if you have any questions or concerns at any time.

Kind regards.

Cordially,

Howard Siegel

Enclosures
cc(w/enc.):  Robin Mitchell Joyce, Esq. (via Federal Express)

315596

CDC_000475



CDC_000476



CDC_000477

From: 19 Recordings Limited
33 Ransome's Dock
35-37 Parkgate Road
London
SW11 4NP

To:  *Corey Clark*

17 March 2003

Dear  *Corey*

**Your Recording Services**

As an inducement for you to enter into a recording agreement with us today ("the Agreement") and in consideration of you doing so, we agree to pay you a further advance of $5,000, recoupable from royalties payable to you under the Agreement, if the first American Idol branded Compilation Album released by us after the date hereof includes a Track or Tracks made by you during the First Contract Period and achieves Net Sales of 500,000 or more.

Yours sincerely

.................................
for and on behalf of
19 Recordings Limited

CDC_000478