# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

JAERED N. ANDREWS, et al.,

                  Plaintiffs,

vs.

FREMANTLEMEDIA N.A., INC., et al.,

                  Defendants.

Case No. 13-cv-5174-NRB

The Honorable Naomi Reice Buchwald

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT

Daniel M. Petrocelli
Robert M. Schwartz
Molly M. Lens
1999 Avenue of the Stars, Suite 700
Los Angeles, California  90067
(310) 553 6700

Mark W. Robertson
Times Square Tower
7 Times Square
New York, NY  10036
(212) 326 2000

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................1

LEGAL DISCUSSION ...........................................................................................3

I.      THE SECTION 1981 CLAIMS (COUNTS I THROUGH V) FAIL ..................................3

    A.      Counts I Through V Are Time-Barred.............................................................3

    B.      Counts I Through V Are Barred By The First Amendment ...................................6

    C.      Plaintiffs' Allegations Fail To State A Section 1981 Claim.................................9

    D.      Plaintiffs Lack Standing To Seek Injunctive Relief In Count IV .........................12

II.     THE SECTION 1985(3) CLAIM (COUNT VI) FAILS...............................................12

    A.      Count VI Is Time-Barred ...........................................................................12

    B.      Plaintiffs' Allegations Are Insufficient To Plead A Section 1985(3) Claim .........13

        1.      Plaintiffs Fail To Allege Injury Of A Protected Constitutional Right................................................................................................. 13

        2.      Plaintiffs' Allegations Of A Warwick/Lythgoe Conspiracy Fail ........... 14

III.    THE TITLE VII CLAIM (COUNT VII) FAILS .......................................................14

IV.     THE CLAIM FOR RESCISSION (COUNT VIII) FAILS.............................................15

    A.      There Is No Common Law Basis To Void The Contestant Agreements.................15

        1.      The Contestant Agreements Are Supported By Consideration .............. 15

        2.      Plaintiffs Were Aware Of Defendants' Decision-Making Discretion .............................................................................. 17

    B.      There Is No Statutory Basis To Void The Contestant Agreements ......................18

        1.      American Idol Is Not A "Rigged Contest." .................................... 18

        2.      American Idol Was Not Falsely Advertised .................................... 20

        3.      The Releases Do Not Invalidate The Contestant Agreements................ 21

V.      THE CALIFORNIA LABOR CODE CLAIM (COUNT IX) FAILS .............................22

VI.     THE CONSTRUCTIVE FRAUD CLAIM (COUNT X) FAILS ....................................23

VII.    THE UNJUST ENRICHMENT CLAIM (COUNT XI) FAILS ....................................24

CONCLUSION....................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

C ASES

*Acosta v. City of N.Y.*,
  2012 WL 1506954 (S.D.N.Y. Apr. 26, 2012) .......................................................................11

*Alma Soc'y v. Mellon*,
  601 F.2d 1225 (2d Cir. 1979) ...............................................................................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..............................................................................................................11

*Baptiste v. N.Y. City Transit Auth.*,
  2004 WL 626198 (S.D.N.Y. Mar. 29, 2004) .........................................................................14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..............................................................................................................11

*Best v. Berard*,
  776 F. Supp. 2d 752 (N.D. Ill. 2011) ......................................................................................6

*Bhanusali v. Orange Reg'l Med. Ctr.*,
  2013 WL 4828657 (S.D.N.Y. Aug. 2, 2013) .........................................................................10

*Bioquest Venture Leasing Co.-A, N.V. v. VivoRx Autoimmune, Inc.*,
  2009 WL 3719534 (Cal. Ct. App. Nov. 5, 2009) ...................................................................25

*Bishop v. Best Buy, Co.*,
  2010 WL 4159566 (S.D.N.Y. Oct. 13, 2010) ..................................................................13, 14

*Bray v. Alexandria Women's Health Clinic*,
  506 U.S. 263 (1993) ..............................................................................................................13

*Brown v. City of Oneonta*,
  221 F.3d 329 (2d Cir. 1999) ..................................................................................................13

*Burstyn v. Wilson*,
  343 U.S. 495 (1952) ................................................................................................................8

*Capri v. L.A. Fitness Int'l, LLC*,
  136 Cal. App. 4th 1078 (2006) ..............................................................................................22

*Carpenter v. Am. Honda Motor Co., Inc.*,
  2004 WL 2596007 (Cal. Ct. App. Nov. 16, 2004) .................................................................21

*Chukwueze v. NYCERS*,
  891 F. Supp. 2d 443 (S.D.N.Y. 2012) ...................................................................................14

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Circuit City Stores, Inc. v. Adams*,
   532 U.S. 105 (2001)............................................................................................4

*City of L.A. v. Lyons*,
   461 U.S. 95 (1983)............................................................................................12

*Claybrooks v. Am. Broad. Cos., Inc.*,
   898 F. Supp. 2d 986 (M.D. Tenn. 2012)....................................................6, 7, 9

*Clement v. United Homes, LLC*,
   914 F. Supp. 2d 362 (E.D.N.Y. 2012) ...............................................................6

*Colores v. Bd. of Trustees*,
   105 Cal. App. 4th 1293 (2003) .........................................................................22

*Corona v. Target Corp.*,
   2010 WL 3221866 (N.D. Cal. Aug. 13, 2010) .................................................22

*Dickerson v. State Farm Fire & Cas. Co.*,
   1996 WL 445076 (S.D.N.Y. Aug. 1, 1996)........................................................3

*Dieu v. McGraw*,
   2011 WL 38031 (Cal. Ct. App. Jan. 6, 2011) ..................................................22

*DiFolco v. MSNBC Cable L.L.C.*,
   622 F.3d 104 (2d Cir. 2010)..............................................................................16

*Dove v. Fordham Univ.*,
   56 F. Supp. 2d 330 (S.D.N.Y. 1999).................................................................10

*Durell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010) ...................................................................24, 25

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ............................................................................12

*Frusetta v. Hauben*,
   217 Cal. App. 3d 551 (1990) ............................................................................17

*Gelbman v. Valleycrest Prod. Ltd.*,
   732 N.Y.S.2d 528 (N.Y. Sup. Ct. 2001) ..........................................................16

*Gen. Bldg. Contr's Ass'n v. Pa.*,
   458 U.S. 375 (1982)..........................................................................................11

*Gensler & Assocs., Inc. v. Larry Barrett, Inc.*,
   7 Cal. 3d 695 (1972) ...................................................................................19, 21

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*Graham v. Long Island R.R.*,
    230 F.3d 34 (2d Cir. 2003)...................................................................10

*Grimes v. Fremont Gen. Corp.*,
    785 F. Supp. 2d 269 (S.D.N.Y. 2011)..................................................9

*Guitar v. Westinghouse Elec. Corp.*,
    396 F. Supp. 1042 (S.D.N.Y. 1975).....................................................20

*Gulino v. N.Y. State Educ. Dep't*,
    460 F.3d 361 (2d Cir. 2006).....................................................................5

*Gyadu v. Hartford Ins. Co.*,
    197 F.3d 590 (2d Cir. 1999)...................................................................14

*Halliday v. Greene*,
    244 Cal. App. 2d 482 (1966) ................................................................22

*Hason v. Office of Prof'l Med. Conduct*,
    314 F. Supp. 2d 241 (S.D.N.Y. 2004)..................................................12

*Henderson v. City of N.Y.*,
    818 F. Supp. 2d 573 (E.D.N.Y. 2011) .................................................13

*Higgins v. Disney/ABC Int'l Television, Inc.*,
    2009 WL 692701 (Cal. Ct. App. Mar. 18, 2009)...........................16, 22

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
    515 U.S. 557 (1995)......................................................................6, 7, 9

*Ibarra v. W.Q.S.U. Radio Broad. Org.*,
    2006 U.S. Dist. LEXIS 97642 (M.D. Pa. Mar. 8, 2006)......................20

*In re Kolob Broad. Co.*,
    36 F.C.C.2d 586 (1972) ........................................................................18

*Jones v. R.R. Donnelley & Sons, Co.*,
    541 U.S. 369 (2004)......................................................................3, 4, 5

*Keitt v. N.Y. City*,
    882 F. Supp. 2d 412 (S.D.N.Y. 2011)..................................................12

*Klein v. Chevron U.S.A., Inc.*,
    202 Cal. App. 4th 1342 (2012) .............................................................25

*Lee v. Escrow Consultants, Inc.*,
    210 Cal.App.3d 915 (1989) ..................................................................23

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Levine v. Blue Shield of Cal.*,
 189 Cal. App. 4th 1117 (2010) ....................................................24

*Mahmud v. Kaufmann*,
 496 F. Supp. 2d 266 (S.D.N.Y. 2007)..........................................3, 5

*McBride v. Boughton*,
 123 Cal. App. 4th 379 (2004) ......................................................24

*Melchior v. New Line Prods., Inc.*,
 106 Cal. App. 4th 779 (2003) ......................................................24

*Melody Music, Inc. v. F.C.C.*,
 345 F.2d 730 (1965)....................................................................18

*N.Y. State Nat'l Org. for Women v. Terry*,
 886 F.2d 1339 (2d Cir. 1989)......................................................13

*Perelman v. Deul*,
 2002 WL 1797228 (Cal. Ct. App. Aug. 6, 2002)..........................25

*Peterson Dev. Co. v. Torrey Pines Bank*,
 233 Cal. App. 3d 103 (1991) .......................................................23

*Peterson v. Cellco P'ship*,
 164 Cal. App. 4th 1583 (2008) ....................................................24

*Pitman v. City of Oakland*,
 197 Cal. App. 3d 1037 (1988) .....................................................22

*Rosenthal v. Great W. Fin. Sec. Corp.*,
 14 Cal. App. 4th 394 (1996) ........................................................17

*Rosner v. Valleycrest Prod., Ltd.*,
 2004 WL 1166175 (Cal. Ct. App. May 26, 2004) ..........................18

*Rosner v. Valleycrest Prod. Ltd.*,
 2003 WL 1701888 (Cal. App. Dep't Super. Ct. Jan. 13, 2003)........16, 18

*Russell v. Cnty. of Nassau*,
 696 F. Supp. 2d 213 (E.D.N.Y. 2010) ..........................................14

*Schad v. Mt. Ephraim*,
 452 U.S. 61 (1981)........................................................................6

*Stoner v. Young Concert Artists, Inc.*,
 2012 WL 4471602 (S.D.N.Y Sept. 26, 2012).................................11

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Styne v. Stevens*,
   26 Cal. 4th 42 (2001) ................................................................................20

*Survivor Prods., LLC vs. Fox Broad. Co.*,
   2001 WL 35829270 (C.D. Cal. June 12, 2001) .....................................19

*Sutcliffe v. Wells Fargo Bank, N.A.*,
   283 F.R.D. 533 (N.D. Cal. 2012) .............................................................16

*Tadros v. Coleman*,
   898 F.2d 10 (2d Cir. 1990) .........................................................................4

*Town of Babylon v. Fed. Hous. Fin. Agency*,
   699 F.3d 221 (2d Cir. 2012) .......................................................................3

*Tyler v. Children's Home Society*,
   29 Cal. App. 4th 511 (1994) ...............................................................23, 24

*U.S. v. Edge Broadcasting Co.*,
   509 U.S. 418 (1993) .....................................................................................8

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ..............................................................................12

*Washington v. Davis*,
   426 U.S. 229 (1976) ...................................................................................10

*Webb v. Goord*,
   340 F.3d 105 (2d Cir. 2003) .....................................................................14

*Winters v. N.Y.*,
   333 U.S. 507 (1948) .....................................................................................8

**STATUTES**

42 U.S.C. § 1981 ...................................................................................... passim

42 U.S.C. § 1981(a) .........................................................................................5

42 U.S.C. § 1981(b) .........................................................................................4

42 U.S.C. § 1985(3) .......................................................................2, 12, 13, 14

42 U.S.C. § 2000e–5(e)(1) .............................................................................14

42 U.S.C. § 2000e–5(f)(1) .............................................................................15

47 U.S.C. § 502 ..............................................................................................21

# TABLE OF AUTHORITIES
## (continued)

Page(s)

47 U.S.C. § 503(b) ................................................................................................19

47 U.S.C. § 509 ..............................................................................15, 18, 19, 21

47 U.S.C. § 509(a) ...............................................................................................19

47 U.S.C. § 509(a)(3) .........................................................................................18

47 U.S.C. § 509(c) ...............................................................................................19

42 U.S.C.A. § 2000e-4 ..........................................................................................2

CAL. CIV. CODE § 339(1) ...................................................................................25

CAL. CIV. CODE § 1599 .......................................................................................22

CAL. CIV. CODE § 1667 ...............................................................................15, 20

CAL. CIV. CODE § 1668 .......................................................................15, 21, 22

CAL. CODE CIV. P. § 337(3) ...............................................................................15

CAL. CODE CIV. P. § 338(d) ...............................................................................23

CAL. LABOR CODE § 338(a) ...............................................................................22

CAL. LABOR CODE § 340(a) ...............................................................................22

CAL. LABOR CODE § 432.7 ...........................................................................3, 22

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6) .........................................................................................9

Kimberlianne Podlas, *Primetime Crimes: Are Reality Television Programs "Illegal Contests" In Violation of Federal Law*, 25 CARDOZO ARTS & ENT. L.J. 141, 160-61, 169 (2007) ........................................................................................................19

Report and Order, 60 F.C.C. 2d 1072, 1073 (1976) ......................................21

## REGULATIONS

47 C.F.R. § 73.1216 ......................................................................15, 20, 21

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. I .................................................................................. passim

U.S. Const. amend. XIII ...........................................................................2, 12, 13

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

U.S. Const. amend. XIV ...............................................................................................2, 12, 13, 14

## PRELIMINARY STATEMENT

Plaintiffs in this lawsuit are former *American Idol* contestants who were eliminated from the show, either by public vote or through disqualification, as long as *ten years* ago.  Long after the statutes of limitation expired for all but one plaintiff, they now ask the Court to revisit their eliminations.  Their core claim is that the producers of *American Idol* have discriminated against African American male contestants, treating them less favorably than others and depriving them of the same opportunity to remain on the show that others received.

Beyond the staleness of their claims, plaintiffs' assertions cannot be reconciled with reality.  By their own allegations, from the show's inception, approximately one-third of the "Golden Ticket" winners (who advance beyond the open auditions and travel to Hollywood), have been African American.  Plaintiffs also allege that approximately one-third of *American Idol*'s semi-finalists have been African American.[1]  During the show's twelve seasons, *four* of the winners have been African American.  African Americans thus have participated in key stages of the contest at more than double their proportion of the country's population.

Since 2002, *American Idol* has offered its contestants—regardless of race, gender, sexual orientation, or any other protected category—an opportunity to become the country's next music star.  The show is more than a talent contest, however.  As plaintiffs' complaint acknowledges, the show dramatizes the lives of the contestants, telling their back stories, personal struggles, and ambitions.  As an expressive work, *American Idol* is entitled to the First Amendment's full protection.  Thus, as explained below, the First Amendment bars plaintiffs' claims.

Defendants noted the many legal defects with each of plaintiffs' claims in a September 26, 2013 letter to the Court, as the initial step in moving to dismiss this lawsuit.  On October 3, the Court gave plaintiffs 30 days to file an amended complaint compliant with Rule 8.  On

---

[1] Prior to the semi-final stage, eligible contestants advance based on votes by expert judges.  Semi-finalist contestants advance based on votes by the audience.

November 12, plaintiffs filed a 253-page "Abbreviated Class-Action Complaint" ("AC") that defendants moved to dismiss on November 25.  On November 27, plaintiffs sought leave to amend again.  The Court granted the request on January 27, 2014, ordering plaintiffs to file a Third Amended Complaint ("TAC") and stating that this would be plaintiffs' final amendment.  Plaintiffs filed their 322-page pleading on February 19, 2014.  Despite the addition of 69 pages, each of plaintiffs' claims—without exception—still fails as a matter of law.

Counts I through V, brought under section 1981 of the Civil Rights Act, are all time-barred, except for Chris Golightly's claim under Counts I, II and III.  These counts are also barred by the First Amendment because plaintiffs seek to force a change in the content of the show, contrary to established law.  Moreover, despite the complaint's extreme length, it contains no facts to support racial animus or link any animus to plaintiffs' disqualifications (much less their elimination by public vote), as required to state a claim under section 1981.

Count VI, brought under section 1985(3) of the Civil Rights Act, is time-barred.  It also lacks the requisite allegations that defendants either violated plaintiffs' Thirteenth Amendment right to be free from involuntary servitude or to travel freely between the states, or that plaintiffs' claims arise from state action under the Fourteenth Amendment.  Nor, as required under section 1985(3), have plaintiffs alleged a conspiracy to harm their constitutional rights.

The remaining Counts fare no better.  Count VII, brought under Title VII of the Civil Rights Act, is barred by both the statute of limitations and the First Amendment.  Count VIII, for rescission, seeks to invalidate the contestant agreements in which defendants agreed to provide plaintiffs an opportunity to be considered for the show, as well as travel and lodging costs, in exchange for plaintiffs' intellectual property and publicity rights and a limitation on defendants' liability.  Apart from being time-barred (except for Golightly), similar contestant agreements have been upheld and enforced elsewhere, and the same result should occur here.  Count IX,

brought under Section 432.7 of the California Labor Code, is time-barred.  Count X, a claim for constructive fraud, is time-barred and independently fails because plaintiffs do not and cannot allege the requisite fiduciary or confidential relationship with defendants.  Count XI, a claim for unjust enrichment, is also time-barred.  Further, the principles of unjust enrichment are inapplicable where, as here, the subject matter of the claim is governed by an express contract.

**LEGAL DISCUSSION**[2]

## I.      THE SECTION 1981 CLAIMS (COUNTS I THROUGH V) FAIL.

Counts I through V assert claims under 42 U.S.C. section 1981 ("Section 1981"). Counts I, II, III and IV allege that defendants discriminated against plaintiffs in the making and enforcement of certain contracts.  Count V alleges that defendants deprived plaintiffs of the "full and equal benefit" of a law or proceeding.  All five Counts fail.[3]

### A.      Counts I Through V Are Time-Barred.

The statute of limitations for a Section 1981 claim depends on whether the claim arises under the original statute or the 1991 amendments.  *Jones v. R.R. Donnelley & Sons, Co.*, 541 U.S. 369, 382 (2004).  A claim arising under the original statute is subject to the forum state's statute of limitations.  A claim arising under the 1991 amendments is subject to the four-year federal "catch all" period.  *Id.*

In Count I, Jaered Andrews, Jacob John Smalley, Donnie Williams, Terrell Brittenum, Derrell Brittenum, Thomas Daniels, and Akron Watson allege interference in the formation of "19 Entertainment Prize Contracts."  (*See, e.g.*, TAC ¶¶ 1174, 1184.)  For these seven plaintiffs, Count I arises under the pre-1991 provisions of Section 1981.  *See, e.g.*, *Mahmud v. Kaufmann*,

---

[2] Although defendants disagree with the complaint's allegations, plaintiffs *factual* allegations are assumed to be true for the purpose of this motion.  *See Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012).

[3] Beyond these arguments, Jacob John Smalley and Ju'not Joyner were eliminated based on the public vote, *see* TAC ¶¶ 571-573, 790, and thus cannot allege a Section 1981 claim, as defendants did not take any adverse action against them.  *See Dickerson v. State Farm Fire & Cas. Co.*, 1996 WL 445076, at *3 (S.D.N.Y. Aug. 1, 1996) (a Section 1981 claim must involve adverse treatment).

3

496 F. Supp. 2d 266, 272 (S.D.N.Y. 2007) (Section 1981 claim involving right to enter contracts arises under "the original statute" enacted in 1964).  Accordingly, New York's three-year statute of limitations for personal injury claims applies.  *See Tadros v. Coleman*, 898 F.2d 10, 12 (2d Cir. 1990) (New York's three-year statute of limitations for personal injury actions applies to Section 1981 claims).  Here, the claims are time-barred because these plaintiffs all admit they were disqualified from or voted off the show between January 31, 2003 and January 2007, more than three years before they sued on July 24, 2013.   (*See* TAC ¶¶ 435 (Andrews disqualified on Jan. 31, 2003), 572 (Smalley voted off on Feb. 13, 2003), 580 (Williams disqualified on Feb. 25, 2004), 631 (T. Brittenum and D. Brittenum disqualified on Jan. 22, 2006), 739-41 (Watson disqualified on Nov. 9, 2006), 716-21 (Daniels disqualified in January 2007).)

The remaining plaintiffs, Corey Clark, Ju'not Joyner, and Chris Golightly (the plaintiffs who signed the 19 Entertainment Prize Contracts, TAC ¶¶ 1171-73), claim interference with the "benefits and privileges" of these contracts.  (TAC ¶ 1181-82.)  Their claim arises under Section 1981(b) of the 1991 amendments and is thus subject to the federal four-year statute of limitations.  *See Jones*, 541 U.S. at 383.  Because Clark and Joyner were disqualified ten and four years, respectively, before filing suit, their claims are time-barred.  (*See* TAC ¶ 531 (Clark disqualified on March 31, 2003), 790 (Joyner voted off in March 2009).)  Golightly, who was disqualified over three years ago, on February 16, 2010, (TAC ¶ 826), is the only plaintiff whose Count I claim is not time-barred.  His claim under Count I independently fails, however, for the reasons described below, as do his claims under Counts II and III.[4]

In Count II, plaintiffs allege interference with the "benefits and privileges" of implied-in-fact "Advertised Prize Contracts."  (*E.g.,* TAC ¶¶ 1208-1211.)  In Count III, plaintiffs allege

---

[4] Moreover, even if Golightly had any viable claims, they would be subject to mandatory arbitration and should be dismissed.  (*See* Robertson Decl. Ex. 1 at 20); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001).  By filing this motion, defendants are not waiving their right to compel arbitration, but rather expressly reserve this right.

interference with the "benefits and privileges" of "Contestant Agreements." (*E.g.*, TAC ¶¶ 1221-1222.) These contract claims are also subject to the federal four-year limitations period. *See Jones*, 541 U.S. at 383. For all plaintiffs other than Golightly, Counts II and III are time-barred.

In Count IV, plaintiffs (other than Clark) allege that, as "employee applicant[s]," defendants interfered in the formation of their employment contracts, *see, e.g.*, TAC ¶¶ 1229, 1236, which, as noted above, is subject to New York's three-year statute of limitations.[5] *See Mahmud*, 496 F. Supp. at 272. Because the nine "employee applicant" plaintiffs were disqualified or voted off more than three years ago, *see supra*, at 4, their claims are time-barred. The remaining plaintiff, Clark, does not bring his claim as a purported employee applicant but instead alleges that his disqualification interfered with the "terms, conditions and benefits" of his employment contract as a Top 10 contestant. (TAC ¶¶ 1227-1228, 1236.) Clark's claim is subject to the federal four-year limitations period. *See Jones*, 541 U.S. at 383. Clark was disqualified more than ten years before he sued. (TAC ¶ 531.) His claim is thus time-barred.

In Count V, plaintiffs Andrews, Clark, T. Brittenum and D. Brittenum allege that defendants interfered in "pending criminal proceedings" during plaintiffs' participation on *American Idol*, thereby depriving them of equal benefit of the law. (TAC ¶¶ 1271-75.) This claim arises under the pre-1991 provisions. *See* 42 U.S.C. § 1981(a) (all persons shall have the same right to the "full and equal benefit of all laws and proceedings for the security of persons and property") (not amended since 1964). Thus, Count V is governed by New York's three-year period. Because these plaintiffs participated on *American Idol* and were disqualified as contestants more than three years before they filed suit, *see supra* at 4, Count V is time-barred.

---

[5] While defendants disagree that plaintiffs were employees or employee applicants, this motion assumes that they were employees or employee applicants of defendant American Idol Productions ("AIP"). (*See* TAC ¶ 309). Plaintiffs have not alleged, and cannot allege, any employment relationship as to the other "Employer-Defendants." (*See* TAC p. 3, ¶¶ 29-128.) Accordingly, with respect to all employer defendants other than AIP, Counts IV and VII must be dismissed for this independent reason. *See, e.g., Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006) ("[T]he existence of an employer-employee relationship is a primary element of Title VII claims.").

Knowing that their Section 1981 claims are untimely, plaintiffs allege that they did not "discover" defendants' alleged racial discrimination until the disqualification of a contestant known as "JXJ" (who is not a plaintiff) on March 14, 2012.  (TAC ¶ 869-870, ¶¶ 1194-99, 1267, 1270, 1452.)  The so-called discovery rule, however, cannot revive plaintiffs' claims.  As an initial matter, plaintiffs fail to plead any facts explaining how JXJ's disqualification revealed defendants' alleged discriminatory practices going back ten years, much less plead that JXJ's disqualification was racially motivated.  (TAC ¶¶ 838-899.)  But even under the discovery rule, the limitations period "begins to run when [the plaintiff] learns of the discriminatory conduct, e.g. the unlawful termination, not when the plaintiff has reason to know of a possibly discriminatory motive for that conduct."  *Clement v. United Homes, LLC,* 914 F. Supp. 2d 362, 372 (E.D.N.Y. 2012).  Thus, even if the rule applied, it would not change the outcome here.

### B.    Counts I Through V Are Barred By The First Amendment.

The anti-discrimination laws are a crucial part of American jurisprudence.  But plaintiffs cannot invoke them to limit defendants' First Amendment rights.  *See Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 580 (1995) (discrimination laws yield to the First Amendment where they seek to alter expressive speech).  The First Amendment protects not just newsgathering and political speech, but most forms of entertainment.  *Schad v. Mt. Ephraim*, 452 U.S. 61, 65 (1981).  Television programs, including unscripted "reality" television programming like *American Idol*, are entitled to the First Amendment's full protection.  *See id.*; *Best v. Berard*, 776 F. Supp. 2d 752, 758 (N.D. Ill. 2011) (reality show *Female Forces* protected as expressive speech under First Amendment); *Claybrooks v. Am. Broad. Cos., Inc.*, 898 F. Supp. 2d 986, 993 (M.D. Tenn. 2012) (reality shows *The Bachelor* and *The Bachelorette* protected as expressive speech under First Amendment).  In the case of reality programming, where the participants are—by the nature of the show—central features of the content, the First Amendment protection

extends to decisions regarding who will participate.  *See Claybrooks*, 898 F. Supp. 2d at 993, 999 ("[C]asting and the resulting work of entertainment are inseparable and must *both* be protected to ensure that the producers' freedom of speech is not abridged.") (emphasis in original).[6]

Plaintiffs' complaints about their disqualifications from the program go to the heart of fundamentally expressive decisions that are protected by the First Amendment.  *See Hurley*, 515 U.S. at 574 (parade organizer's discretion to decide *who to include* in the parade was "enough to invoke its rights as a private speaker to shape its expression").  Plaintiffs themselves claim that *American Idol* is more than a singing contest:  It is a narrative about the contestants and their personal stories.  (*See, e.g.*, TAC ¶¶ 735 (Watson was excited to tell "his background story" on *American Idol*), 839, 847 (describing *American Idol*'s focus on contestant JXJ's personal backstory), 796 (alleging that some contestants' "'background stories' were structured with greater care").)  In fact, plaintiffs go further and allege that *American Idol* is a scripted "dramatic fiction," with the contestants being "actors" "cast" by defendants.  (*See* TAC ¶ 796 (Joyner stating "We're all actors."); *see also* AC, ¶ 1132 (characterizing the show as "dramatic fiction"), 1128 (the show "is a scripted dramatic work in which the Contestants are cast by [defendants] … to play a role in the Production."), 1157 (arrests and public disqualifications "were scripted into the *American Idol* television program by [defendants], who played out the drama as it unfolded and who thereafter promoted the scandals as a core part of the program's 'behind-the-scenes' narrative"), 1255 (the show has "scripted 'casting'").)[7]

This is no minor aspect of plaintiffs' claim.  Rather, the overarching theme of the complaint is that defendants used the show *to tell a story* of "white redemption" posed against a story "condemn[ing] Black *American Idol* Contestants[.]"  (TAC ¶ 1051.)  While defendants

---

[6] Unless otherwise noted, all emphases are added.
[7] As the Court stated during the October 3, 2013 pre-motion conference, plaintiffs' allegations in the prior pleadings are admissions on which the Court can rely in ruling on this motion.

deny these accusations, plaintiffs' own words demonstrate that they are attacking constitutionally protected speech.  Plaintiffs claim defendants:

- made "conscious, deliberate choices which invariably sought to condemn Black *American Idol* Contestants while at the same time making decisions to advertise the criminal record history of a very select number of White *American Idol* Contestants in order to 'teach' audiences about the virtue of redemption," TAC ¶ 1051;

- marketed "the criminal arrest history of White *American Idol* Contestants … to audiences as a positive character attribute, perfectly suitable for the 'family-friendly' show." TAC ¶ 1049;

- "humanized" the criminal arrest records of the white contestants and "re-contextualized [them] into a story of redemption and positivity," TAC ¶ 1058;

- "portrayed [plaintiffs] as 'untrustworthy' and 'dangerous criminals' who had to be cast into exile," TAC ¶ 1048;

- "portrayed plaintiffs as stereotypical 'black criminals,'" TAC ¶ 1055;

- engaged in "racial propaganda" with "commercial speech intending to indoctrinate target audiences with 'lessons' about the 'criminality' of young, Black males," TAC ¶ 1286(a), *see also* TAC ¶¶ 1059-1076 (alleging related political motivations);[8]

- sought to "propagate stereotypes that depict Black *American Idol* contestants as untrustworthy," TAC ¶ 475.

In fact, plaintiffs go so far as to seek injunctive relief to prevent defendants from making certain decisions about how to portray contestants, which contestants to disqualify, and how to

---

[8] Although defendants did not engage in any such conduct, "propaganda" is a classic form of First Amendment-protected activity.  *See Winters v. N.Y.*, 333 U.S. 507, 510 (1948) ("The line between the informing and the entertaining is too elusive for the protection of that basic right [to a free press].  Everyone is familiar with instances of propaganda through fiction.  What is one man's amusement, teaches another's doctrine.").  And plaintiffs' labeling of *American Idol* as "commercial" speech (thus entitled to a lesser level of First Amendment protection) does not make it so.  *See U.S. v. Edge Broadcasting Co.*, 509 U.S. 418, 426 (1993).  *American Idol* is an expressive work entitled to full protection.  *Cf. Burstyn v. Wilson*, 343 U.S. 495, 501-02 (1952) (the commercial production, distribution, and exhibition of an expressive work does not devoid it of First Amendment protection).

depict any disqualifications.  (TAC p. 318-19.)  Plaintiffs thus seek to use Section 1981 to regulate defendants' creative choices and replace defendants' expressive "message" with their own.  This "violates the fundamental rule of protection under the First Amendment[:] that a speaker has autonomy to choose the content of his own message."  *Hurley*, 515 U.S. at 578.[9]

A district court in Tennessee rejected a similar attempt by would-be contestants on another television show, *The Bachelor*, to invoke Section 1981 to challenge the producers' decisions as to the race of the persons appearing on the show.  In *Claybrooks*, 898 F. Supp. 2d at 993, the court granted a Rule 12(b)(6) motion on the Section 1981 claim on First Amendment grounds, recognizing that invoking Section 1981 to undo decisions about the race of the contestants would change the message of the program and the stories it told.  *Id.* at 999 (finding that by plaintiffs' own allegations, their claim would alter defendants' message in order to "showcase [plaintiffs'] own more progressive message," in violation of the First Amendment); *see also id.* at 1000 ("[W]hatever messages *The Bachelor* and *The Bachelorette* communicate or are intended to communicate—whether explicitly, implicitly, intentionally, or otherwise—the First Amendment protects the right of the producers of these Shows to craft and control those messages, based on whatever considerations the producers wish to take into account.").

Because plaintiffs are impermissibly "attempt[ing] to regulate the content" of *American Idol* in violation of the First Amendment, the Court must dismiss their Section 1981 claims.  *Claybrooks*, 898 F. Supp. 2d at 999; *see also Hurley*, 515 U.S. at 578.

### C.    Plaintiffs' Allegations Fail To State A Section 1981 Claim.

To state a Section 1981 claim, a plaintiff must "specifically plead[]" not only "events of the intentional and purposeful discrimination" and "the racial animus" behind defendants' actions, but also a causal link between the two.  *See Grimes v. Fremont Gen. Corp.*, 785 F. Supp.

---

[9] Whether defendants are presenting a particular message is irrelevant.  *See id.* at 574 (even though the parade in *Hurley* did not produce a "particularized message," the organizer's discretion to decide who to include was "enough to invoke its rights as a private speaker to shape its expression").

2d 269, 295-96 (S.D.N.Y. 2011) (citing *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 338 (S.D.N.Y. 1999)).  Despite its length, the complaint does not contain such allegations.  Plaintiffs make no more than conclusory assertions of discrimination, *see, e.g.*, TAC ¶¶ 452, 1120, 1131, 1190-91, and fail to allege any *facts* that constitute racial animus or link defendants' alleged animus to plaintiffs' disqualifications or eliminations.

To overcome that defect, plaintiffs juxtapose their disqualifications against the treatment of other contestants.  (*See* TAC ¶¶ 900-1013, 1044-51.)  But plaintiffs fail to identify legally valid comparators.  To constitute a valid comparator, the individual allegedly treated differently must be so similarly situated to plaintiff, except as to race, to give rise to an inference of racial discrimination.  *Bhanusali v. Orange Reg'l Med. Ctr.*, 2013 WL 4828657, at *5 (S.D.N.Y. Aug. 2, 2013) (dismissing Section 1981 claim because plaintiff failed to "plausibly allege that [the] comparators were similarly situated in all material respects," and therefore "failed to allege facts sufficient to plausibly support an inference of discriminatory intent").  Though plaintiffs identify nine white contestants whose criminal records came to light during their participation on the show,[10] the complaint has no allegations that any of those white contestants were in all material respects similarly situated to *any* plaintiff.  (*See* TAC ¶¶ 900-1013.)  For six plaintiffs, no white contestant is identified for the season in which he participated:  Seasons Two (Andrews, Clark, and Smalley), Three (Williams), and Six (Daniels and Watson).  (*Id.*)[11]

The most plaintiffs allege is a time-barred disparate *impact* claim—that African Americans were disadvantaged by a race-neutral *American Idol* policy—not intentional disparate *treatment*, which requires intentional and less favorable treatment.  *See Washington v. Davis*, 426 U.S. 229, 239-40 (1976); *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2003).  Disparate

---

[10] Plaintiffs do not allege that Joanna Pacitti had a criminal record.  (See TAC ¶¶ 955-961.)

[11] Moreover, Amanda Overmyer, TAC ¶¶ 946-954, and Amy Brumfield, TAC ¶¶ 1002-1013, are not valid comparators as they are *female* contestants.  Plaintiffs claim discrimination against *men*.

impact is insufficient to state a Section 1981 claim. *Gen. Bldg. Contr's Ass'n v. Pa.,* 458 U.S. 375, 391 (1982) (Section 1981 "can be violated only by intentional discrimination"); *Acosta v. City of N.Y.*, 2012 WL 1506954, at *5 (S.D.N.Y. Apr. 26, 2012) (dismissing claim that "fail[ed] to advance a plausible claim for disparate treatment" under Section 1981).

Plaintiffs' pleading deficiencies are even more glaring as to the three sponsor defendants —who are named as defendants in Counts I, II and III.  (*E.g.,* TAC ¶ 1218.)  The sponsor defendants (*American Idol*'s advertisers), have no involvement in producing the show.  It is therefore not surprising that, in a 322-page complaint, plaintiffs fail to allege anything beyond conclusory statements about the sponsors' purported involvement in the alleged discriminatory disqualifications of some plaintiffs.  (*See* TAC ¶¶ 153-154, 175-176, 196-197.)  Such conclusory allegations are insufficient, and the sponsors should be dismissed.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Dismissal is also appropriate because, other than one plaintiff,[12] the complaint details legitimate, non-discriminatory reasons for the disqualifications.  *See Stoner v. Young Concert Artists, Inc.,* 2012 WL 4471602, at *5 (S.D.N.Y Sept. 26, 2012) (dismissing discrimination claim because "plaintiff's pleadings … virtually establish defendant's non-discriminatory reasons for declining to advance him" in the competition.")  For example, Andrews, Clark, Williams, T. Brittenum, and D. Brittenum admit to having pending criminal charges during their participation on the show, casting doubt as to whether they could continuously be available to participate further.  (*See* TAC ¶ 1292.)  Daniels spoke with the media during the competition, AC ¶ 549, a ground for disqualification.  (*See* Doc. No. 45-27 at 1-2.)  The complaint also admits that Golightly and Clark failed to disclose mandatory information in violation of the rules.  (*See* TAC ¶¶ 816 (Golightly previously member of band, DREAM5), 827 (implicitly admitting that

---

[12] The TAC does not explain the legitimate reason for Watson's disqualification.

Golightly did not disclose DREAM5 contract), 477 (Clark arrested), 508-512 & AC ¶¶ 342-43 (implicitly admitting that Clark answered "no" when asked if he had ever been arrested); *cf.* Doc. No. 45-26 at 40.)  And Smalley and Joyner were voted off the show by the public, not disqualified by defendants.  (TAC ¶¶ 571-72, 790.)

### D.    Plaintiffs Lack Standing To Seek Injunctive Relief In Count IV.

Count IV requests primarily injunctive relief to limit defendants' actions towards future contestants.  (*See* TAC pp. 318-19.)  As *former* contestants, however, plaintiffs have not shown (nor could they) a risk of repeated harm.  Thus, plaintiffs lack standing to seek injunctive relief. *See City of L.A. v. Lyons*, 461 U.S. 95, 101-02 (1983) (to possess standing to pursue injunctive relief, plaintiffs must plead and prove a "real and immediate threat of repeated injury"); *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2559-60 (2011) (holding that ex-employees lack standing to seek injunctive or declaratory relief); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 988 (9th Cir. 2011) ("[O]nly current employees have standing to seek injunctive relief.").

## II.    THE SECTION 1985(3) CLAIM (COUNT VI) FAILS.

In Count IV, plaintiffs Andrews, the Brittenums, Clark, Smalley, Watson, and Williams (the "1985 Plaintiffs") raise a Section 1985(3) conspiracy claim against the two individual defendants, Nigel Lythgoe and Ken Warwick.  (*See* TAC ¶¶ 1276-1303.)  Lythgoe and Warwick worked as executive producers for defendants 19 Entertainment and American Idol Productions, respectively.  The 1985 Plaintiffs claim that Lythgoe and Warwick conspired to deprive them of a purported Thirteenth Amendment right to be free from "badges and incidents of slavery" and their Fourteenth Amendment due process rights.  (TAC ¶¶ 1294, 1296.)  The claim fails.

### A.    Count VI Is Time-Barred.

Section 1985(3) claims filed in New York are subject to a three-year limitations period. *Hason v. Office of Prof'l Med. Conduct*, 314 F. Supp. 2d 241, 249-50 (S.D.N.Y. 2004); *Keitt v.*

*N.Y. City*, 882 F. Supp. 2d 412, 441 (S.D.N.Y. 2011).  The 1985 Plaintiffs were disqualified or

voted off seven to ten years before they filed suit.  *See supra* at 4.  Count IV is thus time-barred.

**B.      Plaintiffs' Allegations Are Insufficient To Plead A Section 1985(3) Claim.**

To plead a Section 1985(3) claim, a plaintiff must plead, *inter alia*, deprivation of a

protected right and a conspiracy to deprive one of such right.  *See Brown v. City of Oneonta*, 221

F.3d 329, 341 (2d Cir. 1999).  Plaintiffs fail to allege either.

**1.      Plaintiffs Fail To Allege Injury Of A Protected Constitutional Right.**

To assert a conspiracy claim under Section 1985(3), a plaintiff must allege a conspiracy

aimed at interfering with rights that are protected against *private* encroachment.  *See, e.g.*, *Bray*

*v. Alexandria Women's Health Clinic*, 506 U.S. 263, 278 (1993).

The Thirteenth Amendment protects against only private encroachment on the rights to

be free from involuntary servitude or engage in interstate travel.  *Id.*, *see also Alma Soc'y v.*

*Mellon*, 601 F.2d 1225, 1237 (2d Cir. 1979) ("The [Supreme] Court has never held that the

[Thirteenth] Amendment itself, unaided by legislation … reaches the 'badges and incidents' of

slavery as well as the actual conditions of slavery and involuntary servitude."); *Bishop v. Best*

*Buy, Co.*, 2010 WL 4159566, at *13-14 (S.D.N.Y. Oct. 13, 2010) (dismissing Section 1985(3)

claim because plaintiff did not allege involuntary servitude or an interference with his right to

travel); *Henderson v. City of N.Y.*, 818 F. Supp. 2d 573, 584 (E.D.N.Y. 2011).  Plaintiffs do not

allege that defendants subjected them to involuntary servitude or interfered with their right to

travel between the states—nor could they.  For this reason, they have failed to plead a Thirteenth

Amendment violation under Section 1985(3).

The 1985 Plaintiffs do no better asserting an alleged violation of the Fourteenth

Amendment because that requires state action.  *See N.Y. State Nat'l Org. for Women v. Terry*,

886 F.2d 1339, 1358 (2d Cir. 1989) ("When the asserted constitutional deprivation [under

Section 1985(3)] is based upon a right guaranteed against government interference—for example, rights secured by the Fourteenth Amendment—plaintiffs must demonstrate some 'state involvement.'").  This lawsuit involves no state action.  Plaintiffs thus have failed to allege the first element of their 1985(3) claim, and it should be dismissed.

**2.      Plaintiffs' Allegations Of A Warwick/Lythgoe Conspiracy Fail.**

Plaintiffs independently fail to plead the second element of a 1985(3) claim.  That requires "some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end."  *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003).  A complaint containing "only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Gyadu v. Hartford Ins. Co.*, 197 F.3d 590, 591 (2d Cir. 1999); *Baptiste v. N.Y. City Transit Auth.*, 2004 WL 626198, at *6 (S.D.N.Y. Mar. 29, 2004) (same).  But the complaint contains no more than such vague, conclusory allegations.  The conspiracy allegations therefore are insufficient as a matter of law.  *See Russell v. Cnty. of Nassau*, 696 F. Supp. 2d 213, 244 (E.D.N.Y. 2010) (dismissing Section 1985(3) claim because complaint "fail[ed] to provide any factual basis to support a meeting of the minds"); *Bishop*, 2010 WL 4159566, at *13-14 (same).

**III.    THE TITLE VII CLAIM (COUNT VII) FAILS.**

To bring a discrimination claim under Title VII, a plaintiff must file a charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the allegedly discriminatory act.  *See* 42 U.S.C. § 2000e–5(e)(1); *Chukwueze v. NYCERS*, 891 F. Supp. 2d 443, 451 (S.D.N.Y. 2012).  All of the plaintiffs were disqualified or voted off between *three and ten years* ago.  Yet plaintiffs did not file charges with the EEOC until January 11, 2013, far outside the 300-day window to bring a Title VII claim.[13]  Accordingly, Count VII is time-barred.

---

[13] The EEOC received a letter from nine of the plaintiffs on January 11, 2013, but plaintiffs did not file formal charges (which were unverified) until March 18, and did not file verified charges until even later.  (*See* Robertson

Apart from the issue of untimeliness, the Title VII claim cannot survive on the merits.  As with plaintiffs' Section 1981 claims, the Title VII claim is barred by the First Amendment.  *See supra* Section I.B.  And by plaintiffs' own admission, Smalley cannot assert a Title VII claim because he has not received a right to sue letter from the EEOC.  (TAC ¶ 1306); *see* 42 U.S.C. § 2000e–5(f)(1) ("right to sue" letter is a prerequisite to file a Title VII claim).

## IV.  THE CLAIM FOR RESCISSION (COUNT VIII) FAILS.

Under California law, a claim for rescission is subject to a four-year limitations period. *See* CAL. CIV. PROC. CODE § 337(3).  Thus, other than Golightly, Count VIII is time-barred. Count VIII also fails on the merits.  Plaintiffs seek to have the Contestant Agreements declared void *ab initio*, presumably so that plaintiffs can retract the rights they granted to depict them in the show and assert some other state law claims, such as right of publicity claims.  Plaintiffs assert three common law grounds for alleging the Contestant Agreements are void (that the agreements are illusory, violate a legal duty, and were fraudulently incepted), and three statutory grounds (that the agreements violate 47 U.S.C. section 509 ("Section 509") (Rigged Contest), 47 C.F.R. section 73.1216 ("Section 73.1216") (False Advertising), and section 1668 of the California Civil Code ("Section 1668") (Unlawful Release), and are therefore void as illegal contracts under section 1667 of the California Civil Code ("Section 1667")).  Because none of these six grounds is legally valid, even if Count VIII were timely, it should be dismissed.

### A.  There Is No Common Law Basis To Void The Contestant Agreements.

#### 1.  The Contestant Agreements Are Supported By Consideration.

Plaintiffs' arguments that the Contestant Agreements are illusory and violate the legal duty rule (by not requiring defendants to do anything they are not already obligated to do) turn on whether the agreements are supported by consideration.  Because the Court may rely on the

---

Decl. Ex. 2.)  For the purpose of this motion, defendants assume that the January 11 letter constitutes a charge, thereby giving plaintiffs the benefit of the earliest date, even though they are not entitled to that for this purpose.

contents of these contracts, *see DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010), the Court can satisfy itself that the contracts are supported by consideration.[14]

In the Contestant Agreements, defendants agreed to provide plaintiffs with an opportunity to be considered for the show and to provide them with travel and lodging while participating. (*See, e.g.*, Doc. No. 45-26 at 37-39.)  In exchange, plaintiffs granted defendants publicity and intellectual property rights and agreed to a limitation of liability.  (*See, e.g.*, Doc. No. 45-26 at 43, 50.)  Plaintiffs' position—that this is insufficient consideration—would have merit only if defendants had some independent, pre-existing duty to fly plaintiffs to Hollywood at defendants' expense, and provide meals and lodging at defendants' expense, while allowing plaintiffs to participate on the show.  The complaint makes no such allegations, nor could it.  Thus, as a matter of law, defendants' promise to provide plaintiffs with a chance to be considered for the show, airfare, meals, and lodging constitutes sufficient consideration for plaintiffs' publicity and intellectual property rights.  *See, e.g.*, *Sutcliffe v. Wells Fargo Bank, N.A.*, 283 F.R.D. 533, 552-53 (N.D. Cal. 2012) ("[U]nder California law, consideration exists even if the performance due consists almost wholly of a performance that is already required … It is enough that some small additional performance is bargained for and given[.]").

Similar contestant agreements are upheld and enforced.  *E.g.*, *Higgins v. Disney/ABC Int'l Television, Inc.*, 2009 WL 692701, at *13 (Cal. Ct. App. Mar. 18, 2009) (finding contestant agreements for reality show included sufficient consideration, where defendants provided a chance to participate on the show and win prizes, in exchange for plaintiffs' release of rights and

---

[14] Plaintiffs have alleged that "the American Idol CONTESTANT AGREEMENT utilized by ENTERPRISE-DEFENDANTS in Season Three, Season Five, Season Six, and Season Seven are identical or substantially identical to the language employed in American Idol CONTESTANT AGREEMENT for Season Two, Season Eight and Season Nine."  (AC ¶ 1234.)  Plaintiffs attached copies of the Contestant Agreements from Season Two (Corey Clark's) (Doc. No. 45-2) and Season Eight (Ju'not Joyner's) (Doc. No. 45-27), to the TAC.  Accordingly, for simplicity and to reduce the burden on the Court, defendants have not attached the entirety of all of the additional six Contestant Agreements at issue.  To the extent that the Court desires to review the entirety of these Contestant Agreements, or review the Contestant Agreement for each of the ten plaintiffs, defendants will supplement their filing to include such additional information.

claims); *Rosner v. Valleycrest Prod. Ltd.*, 2003 WL 1701888, at *6-7 (Cal. App. Dep't Super. Ct.

Jan. 13, 2003) (same); *Gelbman v. Valleycrest Prod. Ltd.*, 732 N.Y.S.2d 528, 531 (N.Y. Sup. Ct.

2001) ("The defendants offer potential contestants … a chance to win large sums of money in

return for their appearance on the show…, round trip air fare to New York, free lodging and a

per diem allowance … Undoubtedly, [the plaintiff] received consideration having an objective

value … [and] has sufficiently demonstrated a contract for purposes of this motion.").

### 2. Plaintiffs Were Aware Of Defendants' Decision-Making Discretion.

Plaintiffs also allege that defendants "concealed" the true nature of the Contestant

Agreements when plaintiffs signed them and that, as a result, the contracts are void under the

common law theory of "fraud in the factum."  Plaintiffs allege that, had they known the "true

facts" they would have never agreed to enter into the agreements.  (TAC ¶ 1394.)

Fraud in the factum turns on the parties' knowledge of the contract terms at the time of

signing.  *See Frusetta v. Hauben*, 217 Cal. App. 3d 551, 556 (1990) (fraud in the factum is "such

fraud … as results in the signer's being ignorant of the nature of the instrument he is signing").

Fraud in the factum typically involves a misrepresentation regarding the legal significance of a

contract.  *See, e.g.*, *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 415 (1996)

(defendants tricked blind person to signing contract without disclosing arbitration clause).

Here, there was no misrepresentation.  The contracts provide that defendants have

discretion not only to disqualify contestants at any time, but to disqualify them for the specific

reasons that plaintiffs were disqualified.  (*See, e.g.*, Doc. No. 45-26 at 40 (defendants' right to

remove or disqualify contestants for any reason); Doc. No. 45-26 at 40 (defendants' right to

disqualify contestants for supplying untruthful, inaccurate, or misleading information); Doc. No.

45-26 at 50-51 (defendants' right to disqualify contestants for entering agreements that might

interfere with their participation on *American Idol*); Doc. No. 45-26 at 41 (defendants' right to

make explanations or announcements (or none at all) to the public regarding disqualifications).)

In fact, each plaintiff affirmatively represented that he was "given ample opportunity to read, and

[] have carefully read, this entire Agreement." (*See, e.g.*, Doc. No. 45-26 at 55.)  As the court

stated in *Rosner* regarding a television quiz show—where the plaintiff also had knowledge of

defendants' discretion at the inception of the contracts—if plaintiffs "believed the contract[s]

w[ere] unfair, [they] did not have to play the game."  *Rosner v. Valleycrest Prod., Ltd.*, 2004 WL

1166175, at *8 (Cal. Ct. App. May 26, 2004).  For the above reasons, there was no fraud in the

factum.

### B.      There Is No Statutory Basis To Void The Contestant Agreements.

#### 1.      *American Idol* Is Not A "Rigged Contest."

Plaintiffs argue that the Contestant Agreements violate subsection (a)(3) of Section 509,

which makes it "unlawful for any person, with intent to deceive the listening or viewing public"

to "engage in any artifice or scheme for the purpose of prearranging or predetermining … the

outcome of a purportedly bona fide contest of intellectual knowledge, intellectual skill, or

chance."  *See* 47 U.S.C. § 509(a)(3).  Plaintiffs are wrong for three reasons.

First, by its express terms, Section 509 applies only to contests of "intellectual

knowledge, intellectual skill, or chance."  *Id.*  But as plaintiffs repeatedly assert, *American Idol* is

a "singing contest."  (TAC ¶¶ 1207, 1438-39, 1293, 1464-65.)  Despite their attempts to force

*American Idol* within the scope of Section 509,by plaintiffs' own pleadings, *American Idol* is a

contest of singing skill—not one of "intellectual knowledge, intellectual skill, or chance."  *Cf.*

*Melody Music, Inc. v. F.C.C.*, 345 F.2d 730, 733 (1965) (Section 509 applies to a quiz show,

which is a contest of intellectual skill); *In re Kolob Broad. Co.*, 36 F.C.C.2d 586 (1972) (Section

509 applies to a contest where participants randomly pick prize envelopes out of a box, which is

18

one of chance).  Section 509 thus does not apply.[15]

Second, there was no "intent to deceive the listening or viewing public."  *See* 47 U.S.C. § 509(a).  Plaintiffs allege that because defendants represented that a contestant's advancement is determined "solely by popular audience vote," defendants' retention of discretion to disqualify a contestant reflects an intent to deceive the viewing public.  (TAC ¶¶ 1339-40.)  But as plaintiffs admit, defendants "bill, market, promote and/or advertise *American Idol* as a contest featuring eligibility rules, participation rules, [and] *disqualification* rules …." (TAC ¶ 1333.)  The viewing public—including plaintiffs—are well aware that a contestant may be disqualified if deemed ineligible.  Indeed, a central theme of plaintiffs' complaint is that many of their disqualifications were publically broadcast or announced.  (*See, e.g.*, TAC ¶¶ 1240, 1014.)  Therefore, according to their own allegations, there was no deception.

Third, Section 509 does not create or enable a private cause of action.  Rather, Congress authorized only narrow remedies for its violation.  *See* 47 U.S.C. §§ 509(c), 503(b).  In so doing, Congress "exclude[d] by implication" the further remedy of voiding the contract as illegal. *Gensler & Assocs., Inc. v. Larry Barrett, Inc.*, 7 Cal. 3d 695, 702 (1972) (en banc) (refusing to invalidate a building contract because the contractor failed to comply with statutory requirements); *see also Survivor Prods., LLC vs. Fox Broad. Co.*, 2001 WL 35829270, at *4 (C.D. Cal. June 12, 2001) (striking portions of answer because "the federal statute plaintiffs allegedly violated, 47 U.S.C. § 509, nowhere lists invalidation of a copyright as a penalty"). Accordingly, Section 509 cannot be invoked to invalidate the Contestant Agreements.

---

[15] Implicitly recognizing that *American Idol* falls outside the scope of Section 509, plaintiffs attempt to plead that song selection is a matter of "intellectual skill."  (TAC ¶¶ 1335.)  Even if that were correct—and the Court need not engage in that debate in connection with this motion—that would be insufficient to transform the show itself into a contest of "intellectual knowledge, intellectual skill, or chance" and thereby fall within Section 509(a)(3).  *See* Kimberlianne Podlas, *Primetime Crimes: Are Reality Television Programs "Illegal Contests" In Violation of Federal Law*, 25 CARDOZO ARTS & ENT. L.J. 141, 160-61, 169 (2007) (explaining that *American Idol* falls outside the scope of Section 509 as a singing contest, and noting that "though talents, such as dancing or singing, can be enhanced by intelligence or impeded by the lack thereof … neither these talents nor programs that highlight them are of a predominantly intellectual character").  Similarly, the fact that the public votes on the contestants' performances does not transform the show into a game of chance.  (TAC ¶ 1336.)

### 2.     *American Idol* **Was Not Falsely Advertised.**

Plaintiffs allege defendants violated Federal Communications Commission regulation Section 73.1216 by failing to disclose "all material terms" of *American Idol* at plaintiffs' auditions.  (TAC ¶ 1365.)  Section 73.1216 provides that "a licensee that broadcasts or advertises information about a contest it conducts shall fully and accurately disclose the material terms of the contest, and shall conduct the contest substantially as announced or advertised.  No contest description shall be false, misleading, or deceptive with respect to any material term." 47 C.F.R. § 73.1216.  Plaintiffs can find no refuge in this regulation.

First, the FCC has exclusive jurisdiction to enforce Section 73.1216.  *See Ibarra v. W.Q.S.U. Radio Broad. Org.*, 2006 U.S. Dist. LEXIS 97642, at *6-7 (M.D. Pa. Mar. 8, 2006) (federal court cannot adjudicate alleged violation of Section 73.1216 because "any failure to comply with the federal communications laws on the part of the defendants must be addressed by the FCC, the governing regulatory agency, and not the courts"); *see also Guitar v. Westinghouse Elec. Corp.*, 396 F. Supp. 1042, 1057 (S.D.N.Y. 1975) ("The [Communications] Act did not create, even by implication, a cause of action cognizable in the district courts, the court's sole function being the review of final orders of the F.C.C. after the plaintiff has invoked the primary and exclusive jurisdiction of that commission.").  Accordingly, this Court cannot decide whether defendants violated Section 73.1216.  *See Styne v. Stevens*, 26 Cal. 4th 42, 58-59 (2001) (refusing to find contract illegal under Civil Code Section 1667 based on purported Labor Code violation under which state labor commissioner had sole jurisdiction to find a violation).

Second, even assuming *American Idol* falls within the Section 73.1216 *and* that the Court can consider the regulation, plaintiffs fail to allege a violation of it.  The regulation governs disclosure of material terms in *broadcasts* (reflecting that the FCC's jurisdiction is limited to interstate and international communications).  *See* 47 C.F.R. § 73.1216 n.2 (providing that "[t]he

material terms should be disclosed periodically *by announcements broadcast* on the station conducting the contest …"); *see also* Amendment of Part 73 of the Commission's Rules Relating to Licensee-Conducted Contests, Report and Order, 60 F.C.C. 2d 1072, 1073 (1976) (stating that the material terms for the contest must be included "on the air or in other media").  Under Section 73.1216, any non-broadcast disclosures are at the licensee's discretion.  *See* 47 C.F.R. § 73.1216 n.2 ("In addition to the *required* broadcast announcements, disclosure of the material terms may be made in a non-broadcast manner.").  Plaintiffs do not claim that any material terms were not disclosed in broadcasts but rather base their claim on allegations about the timing of defendants' *off-air* disclosures.  (TAC ¶¶ 1365-66.)  Therefore, even accepting the allegations as true, defendants did not violate Section 73.1216.

Third, as with Section 509, the Court should refrain from creating a judicial remedy because the statute includes remedy provisions.  *See Gensler*, 7 Cal. 3d at 702; 47 U.S.C. § 502.

### 3.    The Releases Do Not Invalidate The Contestant Agreements.

Plaintiffs allege that the Contestant Agreements should be deemed void also because the release provisions potentially shield defendants from liability for future intentional wrongdoing, which is barred under California Civil Code Section 1668.[16]  (TAC ¶ 1369.)  This argument fails.

First, the Court need not analyze the scope of the release because defendants have not invoked it to bar any of the claims that plaintiffs are asserting.  *Cf. Carpenter v. Am. Honda Motor Co., Inc.*, 2004 WL 2596007, at *9 (Cal. Ct. App. Nov. 16, 2004).

Second, even if any portion of the releases were found to violate Section 1668, the parties agreed in the Contestant Agreements that "[i]f any provision hereof shall be invalid or unenforceable due to any law, said provision will be modified to the minimum extent necessary to effect compliance with such law, and in any event such invalidity or unenforceability shall

---

[16] Section 1668 states "[a]ll contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."  CAL. CIV. CODE § 1668.

have no effect upon the remaining terms and conditions hereof." (*See, e.g.*, Doc. No. 45-26 p. 55.) Even in the absence of such provision, the appropriate remedy would be to invalidate or sever the offending portions—not to void the entire contract. *See* CAL. CIV. CODE § 1599 ("Where a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest."); *see also Higgins*, 2009 WL 692701, at *12-13 (rejecting argument that contract for reality television programming should be declared void for violation of Section 1668, and affirming trial court's decision to sever the offending provisions); *Capri v. L.A. Fitness Int'l, LLC*, 136 Cal. App. 4th 1078, 1084, 1087 (2006) (selectively applying release); *Dieu v. McGraw*, 2011 WL 38031, *16-17 (Cal. Ct. App. Jan. 6, 2011) (same); *Halliday v. Greene*, 244 Cal. App. 2d 482, 488 (1966) (release "ineffective" because it violated Section 1668).

## V.    THE CALIFORNIA LABOR CODE CLAIM (COUNT IX) FAILS.

In California, the maximum statute of limitations for a claim based on a statutory right is three years.[17]  For employment actions, this right accrues at the time of the adverse action, e.g., a wrongful termination. *See Colores v. Bd. of Trustees*, 105 Cal. App. 4th 1293, 1320 (2003); *Corona v. Target Corp.*, 2010 WL 3221866, at *1-2 (N.D. Cal. Aug. 13, 2010) (measuring statute of limitations for section 432.7 claim from the actual date of the termination).  All plaintiffs admit that they were voted off or otherwise disqualified more than three years before they sued.[18]  *See supra* at 4.  Thus, Count IX is time-barred.[19]

---

[17] Defendants are aware of no conclusive authority as to whether a claim under Cal. Labor Code section 432.7 is subject to the one or three-year statute of limitations.  *See* Cal. Labor Code §§ 340(a) (one year for "an action upon a statute for a penalty or forfeiture") & 338(a) (three years for an action "other than a penalty or forfeiture").  For the purpose of this Motion, defendants assume, without conceding, that the three-year statute of limitations applies.

[18] Defendants assume, solely for this motion, that this claim relates back to the filing of the original complaint.

[19] In addition to being time-barred, Plaintiff Smalley fails to state a claim under California Labor Code section 432.7.  Smalley was arrested on November 30, 2002, TAC ¶ 558, and submitted his background information in December 2002.  (TAC ¶¶ 563-64.)  He pled no contest on January 2, 2003, resulting in a conviction.  (TAC ¶ 566.) Section 432.7 does not provide a right where arrest charges were still pending at the time of application, if that arrest later resulted in a conviction.  *Pitman v. City of Oakland*, 197 Cal. App. 3d 1037, 1044 (1988).

**VI.    THE CONSTRUCTIVE FRAUD CLAIM (COUNT X) FAILS.**

In Count X, plaintiffs allege that, by misrepresenting "the true nature of the [*American Idol*] Contest" (*see* TAC ¶¶ 1453), the producer defendants breached a purported duty owed to plaintiffs to manage all aspects of plaintiffs' musical careers, including accounting and legal representation, and to act in plaintiffs' best interests in the performance of this duty.  (*see* TAC ¶¶ 1434-1438, 1453-1455.)  To begin, Count X is time-barred.  A claim for constructive fraud is subject to a three-year statute of limitations, which begins to run from the date the plaintiff knew or should have known of the facts constituting the fraud or mistake.  *See* CAL. CIV. PROC. CODE § 338(d) (three-year statute of limitations for "an action ... on the ground of fraud"); *Peterson Dev. Co. v. Torrey Pines Bank*, 233 Cal. App. 3d 103, 120 (1991) (applying three-year limitations period to constructive fraud claim).  Each Plaintiff knew or should have known of defendants' alleged misconduct at the time each was voted off or disqualified more than three years ago.  *See supra*, at 4; *Peterson Dev.*, 233 Cal. App. 3d at 120 (claim held untimely where plaintiff was placed on notice of the facts he alleged were concealed from him more than three years before filing suit).  Plaintiffs' allegations regarding JXJ's disqualification on March 14, 2012 (*see* TAC ¶¶ 1452, 1460), are insufficient to toll the limitations period because plaintiffs fail to explain *how* the disqualification of JXJ led each of them to "discover" that they had been defrauded.  *Cf. Lee v. Escrow Consultants, Inc.*, 210 Cal. App. 3d 915, 920 (1989) ("plaintiff must *plead and prove the facts* showing … [h]ow and when he did actually discover the fraud or mistake.") (emphasis in original.)

In addition to being untimely, the claim fails on the merits because plaintiffs cannot establish the requisite fiduciary or confidential relationship between themselves and defendants. *Tyler v. Children's Home Society*, 29 Cal. App. 4th 511, 548 (1994) (to state a claim for constructive fraud, a plaintiff must specifically allege "a breach of duty by one in a confidential

or fiduciary relationship to another which induces justifiable reliance by the latter to his prejudice.") (emphasis omitted).  At no time did defendants ever undertake to act for the benefit of plaintiffs or purport to act with plaintiffs' interests in mind.  *Id*. at 548-549 (explaining that a fiduciary "act[s] primarily for the benefit of another in matters connected with his undertaking[,]" while "[a] confidential relation exists … when one has gained the confidence of the other and purports to act or advise with the other's interest in mind.").  To the contrary, as explained above, the contracts on which plaintiffs rely state that defendants could disqualify contestants, in their sole discretion, for any reason, *see supra*, at 17, and the Contestant Agreement provides that "the interests of the *Program* shall override those of any contestant." (TAC ¶ 286.)  Plaintiffs conclusory allegations of a fiduciary or confidential relationship are contradicted by plaintiffs' own admissions and the claim thus fails.  (S*ee* TAC ¶¶ 1434-1437.)

## VII.   THE UNJUST ENRICHMENT CLAIM (COUNT XI) FAILS.

In Count XI, plaintiffs allege that defendants were unjustly enriched by "benefits received as a result of plaintiffs' participation in the *American Idol* Production"—*e.g.*, their talent services, likenesses, and disqualifications.  (*See* TAC ¶¶ 1471-72.)  Plaintiffs' claim fails.

First, many courts have found that "[t]here is no cause of action in California for unjust enrichment."  *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) (quoting *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003)); *but see Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008).  Instead, unjust enrichment is merely "a general principle, underlying various legal doctrines and remedies."  *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004).  Because Count VI fails to constitute a cause of action, it should be dismissed.  *See Levine v. Blue Shield of Cal.*, 189 Cal. App. 4th 1117, 1138 (2010) (sustaining dismissal because "there is no cause of action in California for unjust enrichment").

Second, even if the Court entertains plaintiffs' unjust enrichment claim, it would still fail. The principles of unjust enrichment are inapplicable where the subject matter of the claim is governed by an express contract. *See Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1388 (2012) ("A plaintiff may not … pursue or recover [for unjust enrichment] on a quasi-contract claim if the parties have an enforceable agreement regarding a particular subject matter."); *Durell*, 183 Cal. App. 4th at 1370. As plaintiffs plead, their participation on *American Idol* is the subject of several contracts. (*See, e.g.*, TAC ¶¶ 269-74, 284-305, 391, 517-19.) Plaintiffs' own pleadings thus foreclose a remedy based on unjust enrichment.

Third, even if the Contestant Agreements (and the Prize Contracts) are invalid—which they are not—plaintiffs' claim still fails because it is subject to a two-year statute of limitations. *See, e.g.*, *Bioquest Venture Leasing Co.-A, N.V. v. VivoRx Autoimmune, Inc.*, 2009 WL 3719534, at *3 (Cal. Ct. App. Nov. 5, 2009) (noting that unjust enrichment claim has a two-year statute of limitations under section 339(1) of the California Civil Code as "an obligation not founded on instrument of writing"); *Perelman v. Deul*, 2002 WL 1797228, at *3 (Cal. Ct. App. Aug. 6, 2002) (same). Because plaintiffs were disqualified between three and ten years before they filed this lawsuit, any purported unjust enrichment claim is time-barred.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court dismiss the complaint without leave to amend.

Dated: March 10, 2014

O'MELVENY & MYERS LLP

By: _____
    Daniel M. Petrocelli
    Robert M. Schwartz
    Mark W. Robertson
    Molly M. Lens
1999 Avenue of the Stars, Suite 700
Los Angeles, California  90067
dpetrocelli@omm.com
(212)-326-2000