UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAERED N. ANDREWS,
COREY D. CLARK,
 JACOB JOHN SMALLEY,
DONNIE WILLIAMS,
TERRELL BRITTENUM,
DERRELL BRITTENUM,
THOMAS DANIELS,
AKRON WATSON,
JU'NOT JOYNER,
CHRIS GOLIGHTLY

        Plaintiffs,

   vs.

FREMANTLEMEDIA N.A., INC.,
AMERICAN IDOL PRODUCTIONS, INC.,
19 ENTERTAINMENT LTD.
CORE MEDIA GROUP, INC.
21St CENTURY FOX, INC.
FOX BROADCASTING COMPANY, INC.
NIGEL LYTHGOE, KEN WARWICK
FORD MOTOR COMPANY, INC.,
COCA-COLA COMPANY, INC.,
AT&T

        Defendants.

 Case No. 13-CV-5174 (NRB)

HON. JUDGE BUCHWALD

ORAL ARGUMENT REQUESTED

ECF CASE

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFFS' MOTION TO DEFER THE AFFIRMATIVE DEFENSE OF
STATUTE OF LIMITATIONS AND TO SCHEDULE A HEARING
PURSUANT TO RULE 12(i)**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...........................................................................................................iii

LEGAL STANDARD....................................................................................................................1

PLAINTIFFS' RECONSTRUCTION ACT CLAIMS UNDER § 42 U.S.C. 1981 AND § 1985(3)
[COUNTS I-VI] ARE TIMELY FILED .........................................................................................2

   A. BORROWING OF LOCAL TIME LIMITATIONS FRUSTRATES THE PURPOSE OF THE ACT;
      VIOLATES THE DOCTRINE OF SEPARATION OF POWERS AND IS INCONSISTENT
      WITH PUBLIC POLICY.........................................................................................................2

      (1)  *The Legislative Purpose of the Reconstruction Acts is to Eradicate Racial Stereotypes*
            *and Promote Society's Objective to Rank Citizens Based on Individual Merit and*
            *Hard Work*.........................................................................................................................2

      (2)  *Application of a Local Time Limitation is Inconsistent with Legislative*
            *Purpose of the Reconstruction Acts*...............................................................................3

      (3)  *As a Matter of Constitutional Law, the Borrowing of Local Time Limitations*
            *Subsequent to the Civil Rights Act of 1991 Impinges the Doctrine of Separation*
            *of Powers.*........................................................................................................................5

      (4)  *Application of a Time-Bar in this Case Does Not Serve the Underlying*
            *Policy of the Statute of Limitations* ..............................................................................8

   B. CAUSES OF ACTION UNDER THE RECONSTRUCTION ACT DID NOT ACCRUE UNTIL SOME
      DATE AFTER MARCH 14, 2012 ..........................................................................................8

      (1)  *Under The "Standard" Rule Of Accrual, Plaintiffs' Reconstruction Act*
            *Claims Were Timely Filed No More Than 15 Months After The Causes Of*
            *Action Became Justiciable*................................................................................................8

      (2)  *Under The Federal Common Law Rule of Accrual for the Reconstruction Acts,*
            *Plaintiffs' Claims Were Timely Filed No More Than 16 Months After They*
            *Should Have Known That Their Constitutional Rights Had Been Violated* ...............14

      (3)  *Under The Second Circuit's "Diligence-Discovery Rule Of Accrual," Plaintiffs'*
            *Reconstruction Act Claims Were Timely Filed No More Than 16 Months*
            *After Evidence Of Causation Leading To Plaintiffs' Injury-In-Fact Was Discovered* ...............14

      (4)  *Defendants' Reliance on* <u>Clement vs. United Homes</u> *Is Misplaced Because the*
            *Cited Rule is Derived From The Congressional Language of Title VII and*
            *Therefore Has No Application to Counts I-VI.*..............................................................16

   C. COMMON LAW TOLLING DOCTRINES EQUITABLY FORECLOSE APPLICATION
      OF ANY LIMITATIONS PERIOD ........................................................................................18

*(1)    The Doctrine of "Equitable Tolling" Stops The Running Of The Clock From The Date Of Each Plaintiffs' Disqualification Through At Least March 15, 2012 or April 29, 2012* ........................................................................................................................................... *18*

*(2)    The Doctrine of "Continuing Violations" Stops The Running Of The Clock Until Some Date After March 14, 2012* ........................................................................................ *21*

**TITLE VII [COUNT VII] IS TIMELY** ………………………………………   **Error!**

**Bookmark not defined.**

## TABLE OF AUTHORITIES

**Cases**

Adkins v. Morgan Stanley,
  2013 U.S. Dist. LEXIS 104369, 2 (S.D.N.Y. July 25, 2013) ............................... 23

Alabama v. United States,
  630 F. Supp. 2d 1320, 1327 (S.D. Ala. 2008) ............................................ 11

American Well Works Co. v. Layne & Bowler Co.,
  241 US 257, 260, 60 L Ed 987, 36 S Ct 585 (1916) ..................................... 11

Barrett v. United States, 689 F.2d 324, 327 (2d Cir. 1982) ................................... 15

Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.,
  522 U.S. 192, 201, 118 S. Ct. 542, 139 L. Ed. 2d 553 (1997) ............................ 9

Cabell v. Markham,
  148 F.2d 737, 739 (2d Cir. 1945) ........................................................ 3

Carver v. City of New York,
  621 F.3d 221, 226 (2d Cir. 2010) ....................................................... 13

Cerbone v. Int'l Ladies Garment Workers' Union,
  768 F.2d 45, 48 (2d Cir.1985) .......................................................... 19

Christianson v. Colt Industries Operating Corp.,
  486 US 800, 808, 100 L Ed 2d 811, 108 S Ct 2166 (1988) ............................... 11

Clark v. Iowa City,
  87 U.S. 583, 20 Wall. 583, 589, 22 L. Ed. 427 (1875) ................................... 9

Cohen v. Stephen Wise Free Synagogue,
  1998 U.S. Dist. LEXIS 18081, 3 (S.D.N.Y. Nov. 13, 1998) ............................... 24

Connecticut Light & Power Co. v. Secretary of U.S. Dept. of Labor,
  85 F.3d 89, 96 (2d Cir.1996) ........................................................... 21

Corcoran v. New York Power Auth.,
  202 F.3d 530, 544 (2d Cir.1999) ........................................................ 15

Cruz v. Sullivan,
  802 F.Supp. 1015, 1016-17 (S.D.N.Y.1992) .............................................. 1

## TABLE OF AUTHORITIES

Del. State College v. Ricks,
449 U.S. 250, 259 (U.S. 1980). ....................................................................... 17

Dewsnup v. Timm,
  502 U.S. 410, 427 (1992) ............................................................................... 4

Dique v. N.J. State Police,
  603 F.3d 181, 188 (3d Cir.2010) ................................................................. 16

Gabelli v. SEC,
  133 S. Ct. 1216, 1220 (2013).......................................................................... 9

Grutter vs. Bolinger,
  539 U.S. 306, 332 (2003) ................................................................................ 3

Harris v. City of New York,
  186 F.3d 243, 249 (2d Cir.1999) .................................................................. 22

Heckler v. Community Health Services,
  467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984) ........................ 20

Hirabayashi v. United States,
  320 U.S. 81, 100 (1943)................................................................................... 3

Hunter v. American General Life and Acc. Ins. Co.,
  375 F.Supp.2d 442, 450 (2005) .................................................................... 16

Johnson v. Holder,
  377 F. App'x 31, 32 (D.C.Cir. 2010) ............................................................. 16

Johnson v. Railway Express Agency, Inc.,
  421 U.S. 454, 462 (U.S. 1975 ........................................................................ 17

Jones v. Alfred H. Mayer Co.,
  392 U.S. 409, 443 (1968) ................................................................................. 3

Kaiser v. Cahn,
  510 F.2d 282, 285 (2d Cir.1974) .................................................................... 9

Keating v. Carey,
  706 F.2d 377, 382 (2d Cir.1983) .................................................................. 20

Keene Corp. v. United States,
  508 U.S. 200, 208 (1993) ................................................................................. 5

## <u>TABLE OF AUTHORITIES</u>

Kregler v. City of New York,
  608 F.Supp.2d 465, 475 (2009) ...................................................................... 1

Kronisch v. United States, 150 F.3d 112, 121 (2d Cir. N.Y. 1998) ...................... 15

Kulkarni v. City University of New York,  2001 WL 1415200, at * 3 (S.D.N.Y.
  Nov.13, 2001) ............................................................................................ 22

Lujan v. Defenders of Wildlife, 504 U.S.555, 560-61 (1992) .................................. 12

Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,
  7 F.3d 1085, 1087 (2d Cir.1993) ................................................................. 11

New York. v. Hendrickson Bros., Inc.,
  840 F.2d 1065, 1083 (2d Cir. 1988) ............................................................. 20

Ofori-Tenkorang v. American Intern. Group, Inc.,
  460 F.3d 296, 300 (2d Cir. 2006) ................................................................. 17

Palmieri v. Town of Babylon,
  2006 WL 1155162, at *13 (E.D.N.Y. Jan. 6, 2006) .................................... 12

Polanco v. U.S. Drug Enforcement Admin.,
  158 F.3d 647, 654 (2d Cir. 1998) ................................................................. 11

Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2nd Cir.1998) ................ 22

Railroad Telegraphers v. Railway Express Agency, Inc.,
  321 U.S. 342, 348 -349, 64 S. Ct. 582, 88 L. Ed. 788 (1944) .............................. 8

Rawlings v. Ray,
  312 U.S. 96, 98, 61 S. Ct. 473, 85 L. Ed. 605 (1941) ...................................... 10

Reeb v. Economic Opportunity Atlanta, Inc.,
  516 F.2d 924, 931 (5th Cir. Ga. 1975) ........................................................ 23

Reiter v. Cooper,
  507 U.S. 258, 267, 113 S. Ct. 1213, 122 L. Ed. 2d 604 (1993) ........................ 11

Rivera-Gomez v. de Castro,
  900 F.2d 1, 2 (1st Cir.1990) ......................................................................... 1

## TABLE OF AUTHORITIES

Rotella v. Wood,
    528 U.S. 549, 555, 120 S. Ct. 1075, 145 L. Ed. 2d 1047 (2000) ........................ 8

SEC v. Joiner,
    320 U.S. 344, 350-51 (1943) ...................................................................... 3

Singleton v. City of New York,
    632 F.2d 185, 191 (2d Cir.1980), cert. denied,
    450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981) ......................... 15

Smith v. American  President Lines, Ltd.,
    571 F.2d 102, 109 (2d Cir. 1978) ............................................................ 19

Smith v. City of Enid By and Through Enid City Com'n,
    149 F.3d 1151, 1154 (10th Cir. 1998) ..................................................... 14

Somoza v. New York City Dep't of Educ.,
    475 F. Supp. 2d 373, 386-387 (S.D.N.Y. 2007),
    reversed on other grounds, Somoza v. N.Y. City Dep't of Educ.,
    538 F.3d 106 (2d Cir. 2008) ..................................................................... 10

State of New York v. Hendrickson Bros. Inc.,
    840 F.2d 1065, 1083 (2d Cir.1988) ......................................................... 19

Stone v. INS, 514 U.S. 386, 397 (1995) ......................................................... 5

Thompson v. Metro. Life Ins. Co.,
    149 F. Supp. 2d 38, 48 (S.D.N.Y. 2001) ................................................. 15

Unicon Mgmt. Corp. v. Koppers Co.,
    38 F.R.D. 474, 476-77 (S.D.N.Y.1965),
    aff'd, 366 F.2d 199 (2d Cir.1966) ............................................................. 1

United States v. Boisdoré's Heirs,
    49 U.S. (8 How.) 113, 122 (1850) ............................................................. 3

Van Zant v. KLM Royal Dutch Airlines,
    80 F.3d 708, 713 (2d Cir.1996) ............................................................... 21

Wilson v. Garcia,
    471 U.S. 261, 266-267 (1985) ................................................................... 3

## <u>TABLE OF AUTHORITIES</u>

<u>Zipes v. Trans World Airlines</u>,
    455 U.S. 385, 393-95, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982)...................... 18


**Statutes**

42 U. S. C. § 2000e-5 (e). ...................................................................................... 25

NYCPLR §§ 203(f) .................................................................................................. 31


**Other Authorities**

Cass R. Sunstein, *The Anticaste Principle*,
    92 MICH. L. REV. 2410, 2435 (1994) ......................................................... 8

**LEGAL STANDARD**

**FED. R. CIV. P. 12(i)**

Rule 12(i) of the Federal Rules of Civil Procedure provides:

(i) HEARING BEFORE TRIAL. If a party so moves, any defense listed in Rule 12(b)(1)–(7)—whether made in a pleading or by motion—and a motion under Rule 12(c) must be heard and decided before trial unless the court orders a deferral until trial

Rule 12(i) authorizes the Court to conduct a preliminary hearing to consider and decide before trial a motion raising any defense listed in Rule 12(b)(1)-(7). See Fed.R.Civ.P. 12(i). As appropriate, the Court may use that procedure to determine jurisdictional as well as other threshold issues. See Kregler v. City of New York, 608 F.Supp.2d 465, 475 (2009) (Marrero, J.); citing Rivera-Gomez v. de Castro, 900 F.2d 1, 2 (1st Cir.1990) (noting that Rule 12(i) "can be an excellent device for conserving time, expense, and scarce judicial resources by targeting early resolution of threshold issues"); Cruz v. Sullivan, 802 F.Supp. 1015, 1016-17 (S.D.N.Y.1992). The Court may order such a hearing on motion or sua sponte. Kregler, 608 F.Supp.2d at 475 Rivera-Gomez, 900 F.2d at 2. As regards matters involving factual issues that bear on the subject of the hearing the Court may consider affidavits, depositions or documents, testimony presented orally. See Unicon Mgmt. Corp. v. Koppers Co., 38 F.R.D. 474, 476-77 (S.D.N.Y.1965), aff'd, 366 F.2d 199 (2d Cir.1966).

Plaintiffs aver that Rule 12(i) is the ideal procedural construct to adjudicate Defendants' affirmative defense, which raises mixed questions of law and fact and which presents threshold issues that can be resolved summarily.

1

**POINT I**

**PLAINTIFFS' RECONSTRUCTION ACT CLAIMS UNDER
§ 42 U.S.C. 1981 and § 1985(3) [Counts I-VI] ARE TIMELY FILED**

The affirmative defense of statute of limitations poses no bar to the Plaintiffs' claims sounding under 42 U.S.C. § 1981 and 42 U.S.C. § 1985(3) [Counts I-VI] (the "Reconstruction Act claims").

Plaintiffs' claims are timely because: (A) the Borrowing of the Local Time Limitation Frustrates the Purpose of The Reconstruction Acts; Violates the Doctrine of Separation of Powers and is Inconsistent with Public Policy; (B) Causes of Action Did Not Accrue Until Some Date After March 14, 2012; and (C) Tolling Doctrines Equitably Foreclose Application Of Statutory Time Bar

**A.   BORROWING OF LOCAL TIME LIMITATIONS FRUSTRATES THE PURPOSE OF THE ACT; VIOLATES THE DOCTRINE OF SEPARATION OF POWERS AND IS INCONSISTENT WITH PUBLIC POLICY**

**(1)   The Legislative Purpose of the Reconstruction Acts is to Eradicate Racial Stereotypes and Promote Society's Objective to Rank Citizens Based on Individual Merit and Hard Work**

The "Civil War Amendments were based on a wholesale rejection of the supposed naturalness of racial hierarchy" and instigated "an attack on racial caste." See Cass R. Sunstein, *The Anticaste Principle*, 92 MICH. L. REV. 2410, 2435 (1994). Congress was moved by testimony concerning the means by which private individuals continued to deprive the recently freed slaves of their freedom after the Civil War. See Barry Sullivan, *Historical Reconstruction, Reconstruction History, and the Proper Scope of Section 1981*, 98 YALE LJ. 541, 549, 552, 554, 556 (1989)

2

"Classifications of citizens solely on the basis of race 'are by their very nature odious to a free people whose institutions are founded upon the doctrine of equality." Hirabayashi v. United States, 320 U.S. 81, 100 (1943). "In order to cultivate a set of leaders with legitimacy in the eyes of the citizenry, it is necessary that the path to leadership be visibly open to talented and qualified individuals of every race and ethnicity."  Grutter vs. Bolinger, 539 U.S. 306, 332 (2003). The aim of [§ 1981] is to remove the impediment of discrimination from a minority citizen's ability to participate fully and equally in the marketplace." Jones v. Alfred H. Mayer Co., 392 U.S. 409, 443 (1968)

**(2)   Application of a Local Time Limitation is Inconsistent with Legislative Purpose of the Reconstruction Acts**

When Congress has not established a time limitation for a federal cause of action, the settled practice before 1991 was to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." Wilson v. Garcia, 471 U.S. 261, 266-267 (1985).  "In expounding a statute, we must … look to the provisions of the whole law, and to its object and policy." United States v. Boisdoré's Heirs, 49 U.S. (8 How.) 113, 122 (1850) (Chief Justice Taney); SEC v. Joiner, 320 U.S. 344, 350-51 (1943) (Justice Jackson) ("courts will construe the details of an act in conformity with its dominating general purpose, will read text in the light of context and will interpret the text so far as the meaning of the words fairly permits so as to carry out in particular cases the generally expressed legislative policy."); Cabell v. Markham, 148 F.2d 737, 739 (2d Cir. 1945) (Hand, C.J.); statutes always have some

purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." Dewsnup v. Timm, 502 U.S. 410, 427 (1992) (Justice Scalia, dissenting) ("[i]f possible, we should avoid construing the statute in a way that produces such absurd results").

First, it does NOT serve the purpose or public policy underlying the Reconstruction Acts of 1867 to permit wrongdoers whose illegitimate actions were motivated by racial *animus* or stereotyping to escape liability by concealing their true motivation from their victims at the time of injury. Application of a limitations period in this case would subvert the underlying purpose of the Reconstruction Acts by endorsing the wrongful acts of those who are clever enough – or well-financed enough - to conceal any outward manifestations of racial motive in the commissioning of an injurious act against members of a protected class.   Wrongful actors in society who harbor proscribed motivations of racial animus at the time a tortious act is committed should not be permitted to "game the system" through the art of masterful concealment.   See Cohen v. Stephen Wise Free Synagogue, 1998 U.S. Dist. LEXIS 18081, *8 (S.D.N.Y. Nov. 13, 1998), in which Judge Leisure offered the following sound logic:

> [A discriminatory] "act" must be reasonably perceptible as "discriminatory" for it to commence the applicable limitations period. Neither the law, nor logic, dictates that the statute of limitations begins to run at the moment a plaintiff is informed of an adverse employment decision, when no evidence, direct or indirect, would at that time suggest to the plaintiff that the decision was based on an illicit motive. Such a rule would create a perverse incentive——clever, discriminating employers would simply conceal any manifestations of their motivations in discharging employees.

Second, the facial inclusion of the word "evidence" in the language of 42 U.S.C. § 1981 indicates that a plaintiff suing under section 1981 has a statutory right to present evidence of discriminatory intent.[1] By applying a statute of limitations to bar a section 1981 claim before any such evidence exists would clearly have the effect of frustrating the plaintiff's statutory right under the terms of the statute.

Third, the Supreme Court construed the statute to impose the burden on a § 1981 plaintiff to prove the element of racial intent.   It is manifestly unjust, therefore, to trigger a limitations period (that doesn't even exist) at any time before the § 1981 plaintiff can plausibly satisfy his burden to prove this necessary element in a court of law.

(3)     **As a Matter of Constitutional Law, the Borrowing of Local Time Limitations Subsequent to the Civil Rights Act of 1991 Impinges the Doctrine of Separation of Powers.**

"When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." Stone v. INS, 514 U.S. 386, 397 (1995). "Where Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Keene Corp. v. United States, 508 U.S. 200, 208 (1993) (quoting Russello v. United States, 464 U.S. 16, 23 (1983)). "If Congress explicitly puts a limit upon the

---

[1] A plaintiff does not have to allege in the complaint every piece of evidence that they will produce. "[T]he pleading standard Rule 8 announces does not require

time for enforcing a right which it created, there is an end of the matter."
Holmberg v. Armbrecht, 327 U.S. 392, 395 (1946).

Plaintiffs respectfully submit that the constitutional doctrine of
"separation of powers" forecloses the Court's application of a non-existent
"statute" of limitations to claims predicated on the Reconstruction Acts of 1867.
"In deference to the doctrine of separation of powers, the Court has been
circumspect in adopting principles of equity in the context of enforcing federal
statutes." County of Oneida v. Oneida Indian Nation, 470 U.S. 226, 244 n. 12
(1985) (Stevens, J., dissenting) (referenced with approval in the majority
opinion. Id. at 239 n. 16.). When the court borrows a state law analogue, the
court may be viewed as granting a form of equitable relief to the Defendant.

Plaintiffs acknowledge that prior to 1991, Courts routinely borrowed local
limitations periods in the proper case arising under Section 1981.   This
resulted in lack of uniformity.  Those problems led courts and commentators to
"cal[l] upon Congress to eliminate these complex cases, that do much to
consume the time and energies of judges but that do little to advance the cause
of justice, by enacting federal limitations periods for all federal causes of
action." Sentry Corp. v. Harris, 802 F.2d 229, 246 (7th Cir. 1986).   Congress
was reportedly aware of the problems associated with the practice of borrowing
state statutes of limitations when it enacted the general "catch-all" four-year
limitations period of § 1658.[2]

---

[2] Indeed, the problems associated with borrowing state statutes of limitations
prompted Congress in 1955 to enact a federal period of limitations governing
(Footnote continued on following page)

Moreover, in 1991, Congress elected to amend 42 U.S.C. § 1981 without intending to supersede the original congressional mandate from the Reconstruction Acts of 1867 or otherwise legislatively adopting a*ny* statute of limitations.  Perhaps more importantly, Congress did not enact any statute of *repose* to legal claims arising out of a the Reconstruction Acts. Cf <u>Landgraf v. USI Film Products</u>, 511 U.S. 244, 263 (1994) ("the history of the 1991 [Civil Rights] Act conveys the impression that the legislators agreed to disagree about whether and to what extent the Act would apply to preenactment conduct").

Given that Congress elected to amend 42 U.S.C. § 1981 in the year 1991; and given that Congress decided not to graft any statute of limitations period to claims arising under the Reconstruction Acts despite an opportunity to do so; the Congressional intent should be clear on its face: the statute of limitations (borrowed from any third source) cannot function to bar claims arising under the Reconstruction Acts.  The federal courts' borrowing of a state limitations period subsequent to 1991 therefore implicates a raw act of judicial power that undermines the People's decision via their elected representatives not to time-bar claims on statutory grounds.  In short, the *true* absence of Defendants' affirmative defense of statute of limitations, as applicable to the Reconstruction Acts of 1867, should be addressed to Congress, not to the courts.

---

treble damages actions under the antitrust laws. 15 USC § 15b [15 USCS § 15b] . See S. Rep. No. 619, at 5 (explaining that "[i]t is one of the primary purposes of this bill to put an end to the confusion and discrimination present under existing law where local statutes of limitations are made applicable to rights granted under our Federal laws").

**(4)     Application of a Time-Bar in this Case Does Not Serve the Underlying Policy of the Statute of Limitations**

In Gabelli vs. SEC, the U.S. Supreme Court explained that "the basic policies of all limitations provisions are "repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities." Rotella v. Wood, 528 U.S. 549, 555, 120 S. Ct. 1075, 145 L. Ed. 2d 1047 (2000). Statutes of limitations are intended to "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." Railroad Telegraphers v. Railway Express Agency, Inc., 321 U.S. 342, 348 -349, 64 S. Ct. 582, 88 L. Ed. 788 (1944).

Here, none of the underlying policies behind the statute of limitations apply because the same wrongful actors during the course of eleven seasons were responsible for the disparate treatment of Black Golden Ticket holders. Moreover, all of the internal or business record documents have been ostensibly preserved via PDF and the case is more likely to be proven through documentary or audio-visual evidence than via live witness testimony.  And, finally, the high profile nature of *American Idol* has left a large footprint on-line which permitted substantial pre-filing discovery of documents.

**B.     CAUSES OF ACTION UNDER THE RECONSTRUCTION ACT DID NOT ACCRUE UNTIL SOME DATE AFTER MARCH 14, 2012**

**(1)     Under The "Standard" Rule Of Accrual, Plaintiffs' Reconstruction Act Claims Were Timely Filed No More Than 15 Months After The Causes Of Action Became Justiciable**

While the length of a statute of limitations may be borrowed from state

law, federal law governs the accrual of the federal claim. Kaiser v. Cahn, 510 F.2d 282, 285 (2d Cir.1974). Under federal law, the standard rule is that a claim accrues "when the plaintiff has a complete and present cause of action." Gabelli v. SEC, 133 S. Ct. 1216, 1220 (2013); Clark v. Iowa City, 87 U.S. 583, 20 Wall. 583, 589, 22 L. Ed. 427 (1875) ("All statutes of limitation begin to run when the right of action is complete . . . .")[3] "Unless Congress has told us otherwise in the legislation at issue, a cause of action does not become 'complete and present' for limitations purposes until the plaintiff can file suit and obtain relief." Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201, 118 S. Ct. 542, 139 L. Ed. 2d 553 (1997);[4] quoting Rawlings v. Ray, 312 U.S. 96, 98, 61 S. Ct. 473, 85 L. Ed. 605 (1941). "It would be inconsistent with basic limitations principles for a limitations period to commence before a party may file suit." Bay Area Laundry, 522 U.S. at 200 (1997).

There is no indication in the Reconstruction Act of 1867 that Congress intended a plaintiff's causes of action to accrue before suit can be filed.  As

---

[3] United States v. Lindsay, 346 U.S. 568, 569, 74 S. Ct. 287, 98 L. Ed. 300 (1954) ("In common parlance a right accrues when it comes into existence . . . ."); quoting 1 A. Burrill, A LAW DICTIONARY AND GLOSSARY 17 (1850); "Accrue" is defined as to come into existence as an enforceable claim or right." Citing BLACK'S LAW DICTIONARY 23 (9th ed. 2009) (defining "accrue" as "[t]o come into existence as an enforceable claim or right").

[4] See also Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson, 545 U.S. 409, 418, 125 S. Ct. 2444, 162 L. Ed. 2d 390 (2005) (recognizing that Congress generally sets statutory limitations periods to begin when their associated causes of action accrue, this Court has often construed statutes of limitations to commence when the plaintiff is permitted to file suit."). TRW Inc. v. Andrews, 534 U.S. 19, 34 n.6, 122 S. Ct. 441, 151 L. Ed. 2d 339 (2001) ("The question presented in Bay Area Laundry was whether a statute of limitations could commence to run on one day while the right to sue ripened on a later day. We answered that question ... 'no,' unless the statute indicates otherwise.");

with the statute at issue in <u>Bay Area Laundry</u>, there is no clear indication in sections 1981 or 1985(3) that Congress intended for the limitations period to begin running "prior to the time that a party could file a complaint," that is, prior to the time that a party has a justiciable claim. <u>Somoza v. New York City Dep't of Educ.</u>, 475 F. Supp. 2d 373, 386-387 (S.D.N.Y. 2007), reversed on other grounds, <u>Somoza v. N.Y. City Dep't of Educ.</u>, 538 F.3d 106 (2d Cir. 2008).[5] "Although it may be theoretically possible for a statute to create a cause of action that accrues at one time for the purpose of calculating when the statute of limitations begins to run, but at another time for the purpose of bringing suit, the Supreme Court has admonished that we should not infer such an odd result in the absence of any such indication in the statute." <u>Reiter v. Cooper</u>, 507 U.S. 258, 267, 113 S. Ct. 1213, 122 L. Ed. 2d 604 (1993). The question as to the time when there was a "complete and present cause of action" so that the plaintiff can enforce her legal rights turns upon the construction of the applicable federal legislation. <u>Rawlings</u>, 312 U.S. 96, 97-98 (1941); <u>American Well Works Co. v. Layne & Bowler Co.</u>, 241 US 257, 260, 60 L Ed 987, 36 S Ct 585 (1916) (a suit "'arises under the law that creates

---

[5] Relatedly, a lawyer can be expected to be a zealous advocate for his clients, but the zeal does not extend to filing federal civil rights claims based on speculation or hearsay. In this case, any lawyer who would have filed civil rights claims against these same Defendants in the absence of statistically significant evidence of racial intent would have risked Rule 11 sanctions. <u>See</u> <u>Gartenbaum v. Beth Israel Med. Ctr.</u>, 26 F. Supp. 2d 645, 647-49 (S.D.N.Y. 1998) (sanctioning attorney in Title VII case where plaintiff could make out a *prima facie* case but court found no factual support from which intent to discriminate could be inferred). In modern pleading practice, a hunch and a theory is NOT enough.  , you have to have the FACTS to support the theory of discriminatory motive. In furtherance of the doctrine of uniformity, the federal standard accrual analysis in this case should incorporate a review of Fed. R. Civ. P. 11 and query whether a Plaintiff's cause of action accrues before such time as an attorney detects a plausible set of facts to support the good faith certification required to plead under Rule 11

the cause of action") (Justice Holmes); <u>Christianson v. Colt Industries Operating Corp.</u>,486 US 800, 808, 100 L Ed 2d 811, 108 S Ct 2166 (1988)  (a case may "arise under" federal law if "federal law is a necessary element of [a claim]").[6]

In the Second Circuit, the question of when a statutory cause of action is deemed "complete and present" for purposes of the standard accrual rule depends on "the law governing justiciability," <u>Somoza</u>, 538 F.3d at 115 (finding that limitations period on an IDEA claim does not begin to run until the claim is ripe for adjudication); <u>Somoza</u>, 475 F. Supp. 2d at 386; <u>Polanco v. U.S. Drug Enforcement Admin.</u>, 158 F.3d 647, 654 (2d Cir. 1998); see also <u>Alabama v. United States</u>, 630 F. Supp. 2d 1320, 1327 (S.D. Ala. 2008) (under the standard accrual rule, "a cause of action does not accrue, so as to trigger the limitations period, until the claim is ripe for judicial resolution."). In sum, a cause of action under the Reconstruction Acts accrues when a plaintiff has standing to file suit and obtain relief under the Acts *and* when the cause of action is ripe for judicial review.

There can be no "complete and present cause of action" until the Plaintiff has standing to sue under 42 U.S.C. § 1981; § 1985(3). Standing comes in three types: Article III, prudential and statutory standing.   Under the standard

---

[6] To establish a claim under 42 U.S.C § 1981, the plaintiff "must allege facts in support of the following elements: 1) the plaintiff is a member of a racial minority; 2) an intent to discriminate on the basis of race by the defendant; and 3) the discrimination concerned one or more of the activities enumerated in the statute. <u>Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.</u>, 7 F.3d 1085, 1087 (2d Cir.1993); <u>Ofori-Tenkorang v. American Intern. Group, Inc.</u>, 460 F.3d 296, 300 (2d Cir. 2006). Section 1981 claims "must be based on intentional conduct." Olivera, 281 F. Supp. 2d at 684.

accrual rule, the cause of action accrues upon the earliest date that Plaintiffs acquire Article III, prudential and statutory standing to bring suit under the federal statute in question. Cf. Palmieri v. Town of Babylon, 2006 WL 1155162, at *13 (E.D.N.Y. Jan. 6, 2006) (finding no standing in light of absolute lack of showing of disparate impact).

Article III requires a threshold showing that: "(1) a litigant has suffered or is threatened with an injury that is both "concrete and particularized," and "actual or imminent, not conjectural or hypothetical;" (2) there is a causal link between the injury and the conduct of which the litigant complains – that is, that the injury is "fairly traceable" to the challenged conduct; and (3) that the injury is "likely" to be "redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S.555, 560-61 (1992).

With respect to the Reconstruction Acts, 42 U.S.C. §§ 1981, 1985(3); satisfaction of Lujan factor #1, i.e. injury-in-fact, does not in and of itself set the clock running; rather, because a finding of liability under the Reconstruction Acts requires plaintiff to both plead and prove facts showing the defendants' specific racial intent, motive, bias, animus and/or stereotyping, Plaintiffs are required to also demonstrate the causal link, Lujan factor #2 and redressability, Lujan factor #3, before the plaintiff can file suit and obtain relief.

To show fair traceability under Lujan factor #2, a plaintiff must show that "the defendant's actions constrained or influenced the decision of the final actor in the chain of causation." Carver v. City of New York, 621 F.3d 221, 226 (2d Cir. 2010) (emphasis added).  The causation to be determined under the

Reconstruction Act claims is the racial animus and/or racially-stereotyped thinking of the defendants. Under Plaintiffs' Reconstruction Act claims, the "challenged conduct" is not the mechanism or act of contest disqualification. Rather, the conduct which the Plaintiffs complain of is the Producer's impetus, ill motive, improper intent, racial animus and/or cognitive bias for exercising the destructive mechanism of disqualification.   Suit cannot be filed, therefore, and relief cannot be obtained under the Reconstruction Acts until there is actual evidence of a causal link between the injury-in-fact and the improper motive which caused the invasion.

Lujan Factor #3, which requires a plaintiff to show that the injury is likely to be redressed by a favorable judicial decision before suit can be filed, furthers the public policy behind the statute to redress (or cure) the *constitutional* injury.   In other words, under Reconstruction Act claims, a statutory violation not only causes injury to the plaintiff, it also causes an injury to the public interest by undermining the societal objective to ensure that the nation's inhabitants are treated equally under the law, regardless of race or national origin.  Anyone can suffer the injury of being disqualified - the question under civil rights law is WHY did the victims suffer the injury.  To trigger a statute of limitations period before that question can be answered would be contrary to the legislative purpose,

Applying these justiciability standards to the facts at bar, the causes of action set forth in Counts I-VI did <u>not</u> accrue until some date after March 15, 2012, when Defendants' public disqualification of JXJ in *American Idol* (Season

11) first triggered an investigation into suspected civil rights violations that continue through the present.

**(2) Under The Federal Common Law Rule of Accrual for the Reconstruction Acts, Plaintiffs' Claims Were Timely Filed No More Than 16 Months After They Should Have Known That Their Constitutional Rights Had Been Violated**

"A cause of action filed under §§ 1981, 1983, 1985 or 1986 accrues 'when the plaintiff knows or should know that his or her constitutional rights have been violated.'" <u>Jordan vs. Crandley</u>, 1999 WL 718616, at *2 (E.D. Pa. Sept. 7, 1999) (citation omitted); <u>Smith v. City of Enid By and Through Enid City Com'n</u>, 149 F.3d 1151, 1154 (10th Cir. 1998) ("A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.  The injury which is the "basis of the action" in such a case is the violation of some constitutional right, not the physical, mental, or other harm that may have been, or will be, occasioned by it.") (citations omitted).

Here, plaintiffs lacked knowledge that their "constitutional rights had been violated" by virtue of their respective disqualifications until such time as an actionable disparity ratio in public disqualifications of Black vs. White Golden Ticket holders was reasonably detected after March 15, 2012.

**(3) Under The Second Circuit's "Diligence-Discovery Rule Of Accrual," Plaintiffs' Reconstruction Act Claims Were Timely Filed No More Than 16 Months After Evidence Of Causation Leading To Plaintiffs' Injury-In-Fact Was Discovered**

"[W]here plaintiff would reasonably have had difficulty discerning the

fact or cause of injury at the time it was inflicted, the so-called 'diligence-discovery rule of accrual' applies." Thompson v. Metro. Life Ins. Co., 149 F. Supp. 2d 38, 48 (S.D.N.Y. 2001); Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir.1980), cert. denied, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981) (holding that the time of accrual of a federal civil rights claim under Sections 1981 and 1982 is the "point in time when the plaintiff knows or has reason to know of the injury which is the basis of his action."); Corcoran v. New York Power Auth., 202 F.3d 530, 544 (2d Cir.1999) ("accrual may be postponed until the plaintiff has or with reasonable diligence should have discovered the critical facts of both his injury and its cause.") (citing Kronisch v. United States, 150 F.3d 112, 121 (2d Cir. N.Y. 1998));

"[A] claim will accrue when the plaintiff knows, or should know, enough of the critical facts of injury and causation to protect himself by seeking legal advice". Thompson., 149 F. Supp. 2d at 48.  "Where no single act is sufficiently decisive to enable a person to realize that he has suffered a compensable injury, the cause of action may not accrue until the wrong becomes apparent." Singleton, 632 F.2d at 192–93; Barrett v. United States, 689 F.2d 324, 327 (2d Cir. 1982) ("any plaintiff who is blamelessly ignorant of the existence or cause of his injury should be accorded the benefits of the more liberal accrual standard.") (emphasis added). "A claim does not accrue when a person has a mere hunch, hint, suspicion, or rumor of a claim but such suspicions do give rise to a duty to inquire into the possible existence of a claim in the exercise of due diligence."

15

<u>Kronisch v. United States</u>, 150 F.3d at 121  (citations omitted).[7]

Here, none of the causes of action set forth in the Third Amended Complaint could have been discovered by any named Plaintiff, in the exercise of reasonable due diligence, at any time before Defendants' public disqualification of *American Idol* Finalist JXJ-1 on or about March 14, 2012.  <u>See</u> TAC, ¶¶ 311, 412, 849-861,  863-872,  879-883,  896-899,  1056-1057,  1199,  1270,  1291, 1452.  Before that time, one would not know that a termination was unlawful if one did not know of the discrimination at the time of the termination. Accordingly, the clock did not begin to tick on ANY claims asserted in this action until March 15, 2012 (at the very earliest).; see TAC ¶ 311; 1194-1199; 1267; 1268; 1408; 1452; 1460.  Plaintiffs' claims were filed on July 24, 2013 [Docket No. 1], well within any of the applicable borrowed limitations periods and are therefore timely.

**(4)  Defendants' Reliance on <u>Clement vs. United Homes</u>[9] Is Misplaced Because the Cited Rule is Derived From The Congressional Language of Title VII and Therefore Has No Application to Counts I-VI.**

In the Title VII context, "the period allowed for instituting suit inevitably reflects a value judgment concerning the point at which the interests in favor of

---

[7] <u>See also</u> <u>Hunter v. American General Life and Acc. Ins. Co.</u>, 375 F.Supp.2d 442, 450 (2005) ("This court is bound by prior Fourth Circuit authority applying the "diligence-discovery rule of accrual" to Section 1981 contract formation claims. Accordingly, the court denies Defendant's motion to dismiss as to Plaintiffs' Section 1981 contract formation claims."); <u>Johnson v. Holder</u>, 377 F. App'x 31, 32 (D.C.Cir. 2010) (applying discovery rule to § 1981 discriminatory failure to hire); <u>Dique v. N.J. State Police</u>, 603 F.3d 181, 188 (3d Cir.2010) (the Third Circuit Court of Appeals has held that New Jersey's discovery rule tolls the statute of limitations in the context of selective enforcement until the victim discovers, or by exercise of reasonable diligence should have discovered, that the police action was improper).

[9] <u>Clement v. United Homes, LLC</u>, 914 F. Supp. 2d 362 (E.D.N.Y. 2012)

protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones." Johnson v. Railway Express Agency, Inc., 421 U.S. 454,463-64 (1975)). With respect to Title VII (and Title VII only), Congress has made a specific value judgment that the time limitations periods commences with the date of the "alleged unlawful employment practice." See 42 U. S. C. § 2000e-5 (e)." Del. State College v. Ricks, 449 U.S. 250, 259 (U.S. 1980). In other words, in a Title VII disparate treatment case, the triggering event for the limitations period is codified by statute in 42 U.S.C. § 2000e-5 (e), which prescribes that the limitations period commences with the date of the "alleged unlawful employment practice." 42 U. S. C. § 2000e-5 (e).

In stark contrast, Congress has never enacted a limitations period applicable to claims arising under the Reconstruction Acts, let alone a fixed accrual date or rule.  "Section 1981 sets forth a remedy for employment discrimination that is independent of Title VII." Ofori-Tenkorang v. American Intern. Group, Inc., 460 F.3d 296, 300 (2d Cir. 2006).  Indeed, the Second Circuit has expressly stated that "[a] section 1981 action is not subject to the Title VII statute of limitations . . ." Tadros v. Coleman, 898 F.2d 10, 12 (2d Cir.), cert. denied, 498 U.S. 869, 111 S.Ct. 186, 112 L.Ed.2d 149 (1990); see also Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 462 (U.S. 1975) ("Since there is no specifically stated or otherwise relevant federal statute of limitations for a cause of action under § 1981, the controlling period would ordinarily be the most appropriate one provided by state law.")

Here, Defendants have neglected to cite any authority for *any* rule of federal accrual applicable to the Reconstruction Act claims [Counts I-VI].  They have instead opted to focus on the length of a limitations period and then

presupposed under a Title VII accrual theory derived from the statute that the clock begins to run as of the date of contest disqualification.  But the rule adopted by <u>Clement</u> is simply not applicable to any of Plaintiffs' claims under 42 U.S.C. 1981; 1985(3) because such rule is drawn directly from a legislative enactment and therefore only applies to claims arising under that specific statute.  <u>Zipes v. Trans World Airlines</u>, 455 U.S. 385, 393-95, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982)

Moreover, it appears that the <u>Clement</u> doctrine cited by Defendants only applies in cases which feature ONE plaintiff who conjures up his own subjective theory of past discrimination after the limitations period has run, as opposed to cases such as this where evidence of racial discriminatory intent manifests later in time through discovery of an objective pattern of statistical disparity or "inexorable zero."  In short, without any applicable accrual rule, Defendants have failed to establish their affirmative defense as a matter of law.

**C.   COMMON LAW TOLLING DOCTRINES EQUITABLY FORECLOSE APPLICATION OF ANY LIMITATIONS PERIOD**

**(1)   The Doctrine of "Equitable Tolling" Stops The Running Of The Clock From The Date Of Each Plaintiffs' Disqualification Through At Least March 15, 2012 or April 29, 2012**

Plaintiffs' Reconstruction Act claims are not barred by the statute of limitations under the "equitable tolling" doctrine.  "The essence of the doctrine [of equitable tolling] is that a statute of limitations does not run against a plaintiff who is unaware of his cause of action." <u>Cerbone v. Int'l Ladies Garment Workers' Union</u>, 768 F.2d 45, 48 (2d Cir.1985). In order to prevail on

an equitable tolling theory, plaintiffs must show that they were not aware of their claim either because the nature of the defendant's conduct was "self-concealing" or because the defendant affirmatively acted to prevent plaintiff from discovering the conduct. Plaintiffs must also show that the concealment prevented their discovery of the claims within the limitations period and that they exercised due diligence in investigating their rights. See Cerbone, 768 F.2d at 48–49; State of New York v. Hendrickson Bros. Inc., 840 F.2d 1065, 1083 (2d Cir.1988).

The doctrine of equitable tolling applies when a plaintiff is unaware of his cause of action. Dillman, 784 F.2d at 60.  There are three principal, though not exclusive, situations in which equitable tolling may be appropriate:  (1) where the defendant has actively misled the plaintiff  respecting the plaintiff's cause of action; (2) where the  plaintiff in some extraordinary way has been prevented from  asserting his or her rights; or (3) where the plaintiff has  timely asserted his or her rights mistakenly in the wrong  forum. Smith v. American President Lines, Ltd., 571 F.2d 102, 109 (2d Cir. 1978).  Equitable tolling doctrine in the context of the Reconstruction Act causes of actions applies where a "defendant fraudulently conceals the wrong, the time limit of the statute of limitations] does not begin running until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, the cause of action." Keating v. Carey, 706 F.2d 377, 382 (2d Cir.1983)

When applying the doctrine of fraudulent concealment, the Second Circuit applies federal rather than state law. Keating v. Carey, 706 F.2d 377,

19

382 (2d Cir.1983). Under federal law, the fraudulent concealment doctrine tolls the statute of limitations until the plaintiff discovers, or with the exercise of reasonable diligence should have discovered, the underlying cause of action. Keating, 706 F.2d at 383. The Court may toll a statute of limitations under the doctrine of fraudulent concealment even without affirmative action on the part of the defendant where "the wrong itself was of such a nature as to be self-concealing," New York. v. Hendrickson Bros., Inc., 840 F.2d 1065, 1083 (2d Cir. 1988).

A defendant may be equitably estopped from asserting the statute of limitations "in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused [the plaintiff] to delay in bringing his lawsuit." Cerbone v. International Ladies' Garment Workers' Union, 768 F.2d 45, 50 (2d Cir.1985); see also Keating v. Carey, 706 F.2d 377, 382 (2d Cir.1983) . To invoke equitable estoppel, a plaintiff must show that: (1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to his detriment. See Heckler v. Community Health Services, 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984)

In this case, the fact that *American Idol* featured African-American judges and black winners or top-ranking black contestants over the years actually cuts against Defendants in this litigation because the façade rendered Defendants' violations much more difficult to detect.  Plaintiffs were completely unaware of their causes of action under any civil rights laws.  Moreover, they

20

were victims of affirmative concealment relating to their employment status. Smith v. United Parcel Service of America, Inc., 65 F.3d 266 (2d Cir.1995) (holding that the limitation period for the ADA "begins to run 'on the date when the employee receives a definite notice of the termination;" however, "for the notice to be effective, it must be made apparent to the employee that the notice states the 'official position' of the employer.")

**(2)    The Doctrine of "Continuing Violations" Stops The Running Of The Clock Until Some Date After March 14, 2012**

The continuing violations doctrine tolls the running of the statute of limitations on all discriminatory acts until the defendant has taken its last act in furtherance of its discriminatory practice. See Connecticut Light & Power Co. v. Secretary of U.S. Dept. of Labor, 85 F.3d 89, 96 (2d Cir.1996) . "There is indeed a 'continuing violation' exception to the normal knew-or-should-have-known accrual date of a discrimination claim when "there is evidence of an ongoing discriminatory policy or practice, such as use of discriminatory seniority lists or employment tests." Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 713 (2d Cir.1996) where the plaintiffs allege a violation of the civil rights act, an act can only constitute a continuing violation if the act was performed with a discriminatory intent. See Harris v. City of New York, 186 F.3d 243, 249 (2d Cir.1999)

To establish a continuing violation, a plaintiff must present proof of specific on-going discriminatory policies or practices or establish that "specific and related instances of discrimination are permitted by the employer to

continue unremedied for so long as to amount to a discriminatory policy or practice." <u>Cornwell v. Robinson</u>, 23 F.3d 694, 704 (2d Cir.1994). The continuing violation doctrine "extends the limitations period for all claims of discriminatory acts committed under an ongoing policy of discrimination." <u>Kulkarni v. City University of New York</u>, 2001 WL 1415200, at * 3 (S.D.N.Y. Nov.13, 2001) (citing <u>Quinn v. Green Tree Credit Corp.</u>, 159 F.3d 759, 765 (2nd Cir.1998)).

Under the continuing violation exception, if a plaintiff has filed a charge of discrimination "that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." <u>Lambert v. Genesee Hospital</u>, 10 F.3d 46, 53 (2nd Cir.1993), cert. denied, 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994).

Here, Plaintiffs contend that they should be permitted to bring their claims based on the continuing violations doctrine because Defendants have engaged in a continuous policy of discrimination and acts in furtherance of that policy should not viewed in isolation.

## POINT II:

### TITLE VII [COUNT VII] IS TIMELY

Almost 40 years ago, the Fifth Circuit articulated an oft-cited equitable doctrine applicable to Title VII claims which holds that the statutory clock does

not begin to run "until the facts that would support a charge of discrimination under Title VII were apparent or should have been apparent to a person with a reasonably prudent regard for his rights similarly situated to the plaintiff." Reeb v. Economic Opportunity Atlanta, Inc., 516 F.2d 924, 931 (5th Cir. Ga. 1975).

The Reeb Standard has been adopted by district courts in virtually all circuits. [11] The rationale for Reeb is squarely applicable to the case at bar:

> "Secret preferences in hiring and even more subtle means of illegal discrimination, because of their very nature, are unlikely to be readily apparent to the individual discriminated against. Indeed, employers that discriminate undoubtedly often attempt to cloak their policies with a semblance of rationality, and may seek to convey to the victim of their policies an air of neutrality or even sympathy. These tendencies may even extend to the giving of misleading or false information to the victim"

Reeb, 516 F.2d at 931.

---

[11] Reeb v. Economic Opportunity Atlanta, Inc., 516 F.2d 924, 931 (5th Cir.1975) (holding that the filing deadline with the EEOC is tolled until the time when "facts that would support a charge of discrimination ... were apparent or should have been apparent to a person with a reasonably prudent regard for his rights similarly situated to the plaintiff."); Strong v. Demopolis City Board of Education, 515 F.Supp. 730, 734 (S.D.Ala.1981) (denying a motion to dismiss plaintiff's Title VII claim and ruling that equitable tolling of EEOC time limitations was warranted because plaintiff had no knowledge of the salary disparity between male and female sports coaches); Wolfolk v. Rivera, 729 F.2d 1114 (7th Cir.1984) (holding time limit was tolled until the plaintiff, a black male, discovered that he was being paid less than white employees doing the same job); Tucker v. United Parcel Service, 657 F.2d 724 (5th Cir.1981) (time limit began running on date black employees learned that white seasonal employees were being recalled and blacks were not). Meyer v. Riegel Products Corp., 720 F.2d 303 (3d Cir.1983) (allegations that employer planned surreptitiously to replace plaintiff with a younger employee sufficient to reverse grant of summary judgment to defendants and allow plaintiff to prove that equitable tolling applies) Nelson v. United States Steel Corp., 709 F.2d 675, 677 n. 3 (11th Cir.1983); Fox v. Eaton Corp., 689 F.2d 91, 93 (6th Cir.1982) ; Wilkerson v. Siegfried Insurance Agency, Inc., 683 F.2d 344, 345 (10th Cir.1982) ; Stoller v. Marsh, 682 F.2d 971, 974 (D.C.Cir.1982) , cert. denied, 460 U.S. 1037, 103 S.Ct. 1427, 75 L.Ed.2d 787 (1983) ; Cooper v. Bell, 628 F.2d 1208, 1212 (9th Cir.1980)

In this judicial district, Judge Leisure adopted the rationale of <u>Reeb</u> in <u>Cohen v. Stephen Wise Free Synagogue</u>, 1998 U.S. Dist. LEXIS 18081, *8 (S.D.N.Y. Nov. 13, 1998), in which the district court formulated an accrual rule for New York state civil rights laws.  Judge Leisure proffered the following:

> "The discriminatory act must be viewed from the eyes of the reasonable plaintiff. Otherwise, mere notice of termination, without more, would set the limitations clock ticking, requiring that an employee quickly commence a discrimination suit when no reason for doing so has presented itself, so as to protect any potentially viable, meritorious cause of action that might eventually crystalize."

Awareness of the disparate impact that the policies created only becomes apparent upon analysis of aggregated data. <u>Adkins v. Morgan Stanley</u>, 2013 U.S. Dist. LEXIS 104369, 2 (S.D.N.Y. July 25, 2013); citing <u>Davidson v. Bd. of Governors</u>, 920 F.2d 441, 445 (7th Cir. 1990) (Posner, J.) (holding that statute of limitations period is tolled until disparate impact plaintiff has "enough evidence to determine whether the practice is unlawful," so long as "he could not obtain that evidence with due diligence"); <u>see also</u> <u>Phillips v. Better Homes Depot, Inc.</u>, 2003 WL 25867736, at *25 (E.D.N.Y. Nov. 12, 2003) ("There is a difference between being aware that you got a bad deal and being aware that you were discriminated against in a systematic fashion.").

In <u>Lewis v. City of Chicago</u>, 130 S. Ct. 2191 (2010) (Scalia, J.), the Court rejected the proposition that "present effects of prior actions" could not be cognizable violations of Title VII in a disparate impact case. 130 S. Ct. at 2199. Court held that the City of Chicago could have violated Title VII not only when it administered to aspiring firefighters a written examination alleged to have

24

caused a disparate impact, but also on each subsequent date on which it hired firefighters based on the results of that examination. Id. at 2198. In so doing, the Lewis court specifically rejected the argument that, because "the exclusion of petitioners when selecting classes of firefighters followed inevitably from the earlier decision" to hire only applicants who had reached a certain cutoff score, "no new violations could have occurred" thereafter.  Id. at 2198-99 (emphasis added). Although the initial decision might have violated the law, "it does not follow that no new violation occurred—and no new claims could arise—  when the City implemented that decision down the road." Id. at 2199.

Here, Plaintiff Corey Clark did not learn that he was an actual employee of American Idol Productions, Inc. and the Employer-Defendants until April 29, 2012, when he received his employee-related filed from Defendant FremantleMedia's legal counsel.


March 31, 2014


JH FREEMAN LAW

By: _s/ *James H. Freeman*_

James H. Freeman
3 Columbus Circle, 15 FL
New York, NY 10019
Tel.: (212) 931-8535
Fax: (212) 496-5870
james@jhfreemanlaw.com