UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
JAERED ANDREWS, COREY D. CLARK,
JACOB JOHN SMALLEY, DONNIE WILLIAMS,
TERRELL BRITTENUM, DERRELL BRITTENUM,
THOMAS DANIELS, AKRON WATSON,
JU'NOT JOYNER, CHRIS GOLIGHTLY,

                    Plaintiffs,

          - against -                    **MEMORANDUM AND ORDER**

FREEMANTLEMEDIA N.A., INC.,              13 Civ. 5174 (NRB)
AMERICAN IDOL PRODUCTIONS, INC.,
19 ENTERTAINMENT LTD., CORE MEDIA
GROUP, INC., 21ST CENTURY FOX, INC.,
FOX BROADCASTING COMPANY, INC.,
NIGEL LYTHGOE, KEN WARWICK,
FORD MOTOR COMPANY, INC.,
COCA-COLA COMPANY, INC.,
AT&T,

                    Defendants.
----------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

     Plaintiffs, former contestants on the "American Idol" talent

competition, bring this action against American Idol's production

companies, broadcasting companies, and certain of its executive

producers and sponsors.  Plaintiffs allege violations of 42 U.S.C.

§ 1981, 42 U.S.C. § 1985, and Title VII, as well as four causes of

action under California law.

     Presently before the Court are two motions.  First,

defendants have moved to dismiss plaintiffs' Third Amended

Complaint ("TAC") as time-barred and for failure to state a claim

pursuant to Fed. R. Civ. P. 12(b)(6).   Second, plaintiffs have
moved for reargument of the Court's previous Order denying them
additional leave to amend their complaint and striking certain
motions and briefs filed without leave.   For the reasons stated
herein, we grant defendants' motion to dismiss and deny plaintiffs'
motion for reargument.   We also deny plaintiffs' request for a
pre-motion conference in anticipation of making motions under Fed.
R. Civ. P. 60.

**BACKGROUND**

## I.   Factual Background

American Idol is a televised talent contest in which amateur
singers compete to win a recording contract and other prizes.
Contestants first perform for judges at open auditions held around
the country.   TAC ¶ 226.   Those selected by judges receive a
"Golden Ticket" and advance to "Hollywood Rounds" of elimination.
Id. ¶ 223.   In order to proceed to Hollywood, however, contestants
must first complete and return a Contestant Agreement and
Participant Background Questionnaire.   Id. ¶¶ 268, 272-73.   These
forms set out the rules of the competition and enable American
Idol to undertake background checks on contestants.   Id. ¶¶ 281-
305, 389-91.

After auditioning again for judges in Hollywood, certain
contestants are selected to perform live before both judges and
the public in further rounds of televised competition.   Twenty-

2

four to thirty contestants compete as semi-finalists, of whom eight to twelve are chosen by the public to continue as finalists. Id. ¶¶ 219, 228, 230. Three to four contestants may also be selected as finalists by judges or the public in an additional "Wild Card" round. Id. ¶ 230. Before advancing to final rounds, these contestants must sign a collection of agreements regarding their recording and tour obligations, which plaintiffs collectively label the "19 Entertainment Contracts." Id. ¶¶ 322, 516. Finally, following televised final performances, the public votes to eliminate finalists until one winner remains.

Plaintiffs in this action are African-American men who were contestants on American Idol between 2003 and 2010. We recount their respective experiences with the competition below.

Plaintiff Jaered Andrews appeared on the second season of American Idol and was awarded a Golden Ticket on October 31, 2002. Id. ¶ 426. Shortly after, Andrews and a friend struck a man who later died from blunt force trauma to the head. Id. ¶ 427. Andrews was interviewed by police but was not arrested in connection with the death at that time. Id. ¶ 429. Andrews subsequently competed in Hollywood Rounds and was selected as an American Idol semi-finalist. Id. ¶¶ 430-32. On January 31, 2003, before departing for semi-final rounds, Andrews was notified that he had been disqualified because a background check revealed that he had been a member of a local hip-hop group called Ordinary Peoples, in

3

violation of American Idol's requirement that contestants be unsigned amateurs. Id. ¶¶ 435-41.

Plaintiff Corey Clark appeared on the second season of American Idol. Id. ¶ 482. Clark had been arrested for alleged battery of his fifteen-year-old sister and was released on bail shortly before auditioning for American Idol on October 30, 2002. Id. ¶¶ 477, 480. After receiving his Golden Ticket, Clark was charged with misdemeanor battery and criminal restraint. Id. ¶¶ 486, 496. Clark then advanced through semi-final rounds to become one of twelve finalists, at which point he was asked to sign the 19 Entertainment Contracts. Id. ¶¶ 515, 520. On March 31, 2003, after two rounds of elimination, Clark was disqualified as a result of his failure to disclose his criminal history, which had not been discovered during an original background check because the police report concerning the 2002 arrest had misspelled Clark's name. Id. ¶¶ 528-31, 547.

Plaintiff John Jacob Smalley appeared on the second season of American Idol. Id. ¶ 556. After auditioning on November 10, 2002, Smalley was awarded a Golden Ticket and was selected in Hollywood to advance to semi-finals. Id. ¶¶ 552, 561-2. In the meantime, on November 30, 2002, Smalley was arrested for public intoxication and resisting arrest, to which he pled no contest on January 2, 2003. Id. ¶¶ 558, 566. After one performance as a semi-finalist,

Smalley was eliminated from the show by a public vote on February 13, 2003.  Id. ¶¶ 571-72.

Plaintiff Donnie Williams competed in the third season of American Idol.  Id. ¶ 574.  After advancing to semi-final rounds, Williams was cited by police on February 24, 2004, for driving while under the influence.  Id. ¶¶ 576-78.  On February 27, 2004, Williams was disqualified from the competition on account of the pending criminal matter.  Id. ¶¶ 581-82.

Plaintiffs Terrell and Derrell Brittenum appeared on the fifth season of American Idol.  Id. ¶ 585.  On October 30, 2005, after receiving a Golden Ticket, Terrell Brittenum was arrested and charged with stealing a car; he would later also be charged with fleeing from justice.  Id. ¶¶ 588-92.  Derrell Brittenum, who also received a Golden Ticket, had previously been charged with passing bad checks, convicted of contempt of court, and was the subject of several active arrest warrants in Georgia.  Id. ¶¶ 601-04.  Both Brittenums subsequently participated in Hollywood Rounds and were selected to advance to semi-finals.  Id. ¶¶ 605-06.  However, in early January 2006, Terrell Brittenum was again arrested in connection with the stolen car and detained in Georgia.  Id. ¶¶ 614-15, 628.  Derrell Brittenum likewise turned himself into a Georgia police department on January 20, 2006.  Id. ¶ 627.  On January 22, 2006, both Brittenums were disqualified due to their pending criminal actions.  Id. ¶ 631.

Plaintiff Akron Watson competed in the sixth season of American Idol. Id. ¶ 731. Watson had previously pled no contest to charges of misdemeanor drug possession. Id. ¶¶ 726-27. He received a Golden Ticket in August 2006, but was disqualified on November 9, 2006, before he could attend Hollywood rounds. Id. ¶¶ 732, 741.

Plaintiff Thomas Daniels competed in the sixth season of American Idol. Id. ¶ 688. Before auditioning, Daniels had pled no contest to driving under the influence and to charges stemming from an alleged hit-and-run. Id. ¶¶ 685-87. In October 2006, Daniels received a Golden Ticket and was selected as one of the top forty contestants. Id. ¶¶ 694, 704-05. However, he did not advance to semi-final rounds and ceased appearing on the show after the episode airing his audition was broadcast on January 17, 2007. Id. ¶¶ 712, 722.

Plaintiff Ju'Not Joyner competed in the eighth season of American Idol. Id. ¶ 771. Joyner had a criminal arrest record when he auditioned and was awarded a Golden Ticket in August 2008. Id. ¶¶ 773-74. He advanced to become one of the top thirty-six contestants, at which point he and the other semi-finalists met with 19 Entertainment agents to discuss and prepare to sign the 19 Entertainment Contracts. Id. ¶ 775. After signing the contracts, Joyner participated in semi-final rounds but was not selected as

a finalist following his performance on March 4, 2009.   Id. ¶¶ 789-91.

Plaintiff Chris Golightly competed in the ninth season of American Idol.   Id. ¶ 813. Before auditioning for American Idol, Golightly had been under contract as a member of the musical group "DREAM5," although he was later released from that contract.   Id. ¶¶ 816-18.  Golightly also had a history of criminal arrest at the time of his audition.   Id. ¶ 815.  After receiving a Golden Ticket, Golightly was disqualified on February 16, 2010, because of his failure to disclose the DREAM5 contract.   Id. ¶¶ 821, 826-27.

In season eleven, another contestant who is not a plaintiff in this action, styled as "JXJ" in the TAC, was disqualified after advancing to the final rounds of competition.   Id. ¶¶ 838-45.  On March 14, 2012, American Idol aired an episode in which executive producers confronted JXJ about his criminal history--namely, that JXJ was the subject of four active arrest warrants--and officially disqualified him.   Id. ¶¶ 870-72.  This on-air disqualification received significant media attention and raised the profile of American Idol's disqualification practices.   Id. ¶¶ 874-99.

## II.   Procedural Background

Plaintiffs filed their complaint on July 24, 2013, alleging that defendants disproportionately disqualified African-American men with criminal records and thus discriminated against

7

plaintiffs on the basis of their race (dkt. no. 1). Essentially, plaintiffs claim that defendants disqualified only African-American, rather than white, contestants with criminal records as a result of racial stereotyping of black men as criminals, both in the form of producers' implicit bias and in a conscious attempt to capitalize on "racial propaganda" and racist "scandal-mongering" in order to boost ratings. By eliminating contestants on the basis of race rather than talent, plaintiffs allege, American Idol further constituted a fraudulent "rigged contest," which plaintiffs mistakenly entered in the belief that it was a fair and merit-based competition. Id. ¶¶ 1059-99.

After defendants indicated their intent to move to dismiss plaintiffs' 436-page complaint both for failure to comply with Fed. R. Civ. P. 8 and for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the Court held a telephone conference in which it encouraged plaintiffs to amend their complaint in response to defendants' objections and pare it down to a more reasonable length. Plaintiffs subsequently filed an amended 254-page complaint on November 12, 2013, which defendants moved to dismiss on November 25, 2013 (dkt nos. 30-31).

Two days later, on November 27, 2013, plaintiffs sought to file another amended complaint (dkt. no. 35). Although noting that plaintiffs had already had "an opportunity to amend to meet the arguments in defendants' motion," the Court granted plaintiffs

8

leave to file a third amended complaint "out of an abundance of caution," but warned that this would be plaintiffs' final opportunity to amend (dkt. no. 43) (the "January Order"). Consequently, on February 19, 2014, plaintiffs filed the Third Amended Complaint, alleging eleven violations of Section 1981, Section 1985, Title VII, and California law (dkt. no. 45). Defendants moved to dismiss the TAC on March 10, 2014, and the motion was fully briefed on April 14, 2014 (dkt. nos. 47, 55, 62).

While briefing was ongoing, on Friday, April 11, 2014, plaintiffs requested a pre-motion conference in anticipation of filing another series of motions: 1) a motion to modify the January Order and grant plaintiffs leave to file a fourth amended complaint; 2) a motion for partial summary judgment on Counts I-V and VII or, in the alternative, to foreclose the First Amendment as a defense; 3) a motion to defer the affirmative defense of statute of limitations and schedule a hearing; 4) a motion for judicial notice of adjudicative facts (namely, the formula for standard deviation and the historical fact of racism); and 5) a motion for a case management conference pursuant to Fed. R. Civ. P. 16 (dkt. no. 56). On Monday, April 14, 2014, before the Court had an opportunity to respond, plaintiffs filed three documents: 1) a motion to exclude matters outside the pleadings or, in the alternative, to convert the motion to dismiss to a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d); 2) a motion to

9

defer the affirmative defense of statute of limitations and schedule a hearing pursuant to Fed. R. Civ. P. 12(i); and 3) a supplemental brief in opposition to defendants' motion to dismiss (dkt. nos. 57, 59, 64).

In an order dated April 29, 2014, the Court denied plaintiffs' requests for a pre-motion conference and for a Rule 16 conference and struck plaintiffs' motions filed on April 14 without leave (dkt. no. 65) (the "April Order"). First, we declined to disregard the January Order and grant plaintiffs leave to file a fourth amended complaint, noting that the "history of this case simply militates against departing from our earlier pronouncement which was, under the circumstances, certainly generous." Id. at 3. Second, we admonished plaintiffs for filing motions without leave where those motions raised arguments that plaintiffs could have raised but chose not to include in their opposition brief; rather, plaintiffs' attempt to advance such motions "while the motion to dismiss [wa]s outstanding [represented] no more than a blatant end-run around this Court's page limitations." Id. In addition, we struck plaintiffs' unsolicited supplemental memorandum, submitted two weeks after plaintiffs' opposition was filed, "as yet another example of plaintiffs' counsel's blatant disregard of the rules that apply to all litigants." Id. at 4. Finally, "given this Court's active involvement in the management of this case to

date," we rejected plaintiffs' request for an initial case management conference as unnecessary. Id.

On May 1, 2014, plaintiffs again requested a pre-motion conference, this time in anticipation of filing a motion to amend the April Order pursuant to Fed. R. Civ. P. 60. In addition, on May 6, 2014, plaintiffs filed a motion for reargument of the April Order, arguing that plaintiffs' 12(d) motion, 12(i) motion, and supplemental opposition brief should not have been stricken and that the Court erred in denying plaintiffs leave to file a fourth amended complaint. This motion for reargument was fully briefed on May 29, 2014. The Court held oral argument on November 6, 2014.

We address each motion in turn.

## DISCUSSION

### I. Motion to Dismiss

#### A. Legal Standard

When deciding a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the Court will accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007). Nevertheless, a plaintiff's factual allegations "must be enough to raise a right of relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation

11

omitted).  If he has not "nudged [his] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." Id. at 570; see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) (applying Twombly to "all civil actions," including discrimination suits).

### B. Statutes of Limitations Bar Nearly All of Plaintiffs' Claims

Defendants move to dismiss plaintiffs' claims as untimely under various statutes of limitations.  For the reasons set forth below, we dismiss all but four claims as time-barred.

#### 1. Counts I-V: 42 U.S.C. § 1981

The statute of limitations for a Section 1981 claim depends on whether the claim arises under the original statute or the 1991 amendments. Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382 (2004).  The 1991 amendments were enacted principally to overrule Patterson v. McLean Credit Union, 491 U.S. 164 (1989), which held that Section 1981's provision for the right to "make and enforce contracts" covered only conduct at the initial formation of the contract and conduct impairing the contract's enforcement through legal process. Bishop v. Henry Modell & Co., 08 Civ. 7541 (NRB), 2009 WL 3762119, at *9 (S.D.N.Y. Nov. 10, 2009) aff'd, 422 F. App'x 3 (2d Cir. 2011).  Thus, to determine under which statute a claim arises, courts ask "simply[] whether a plaintiff's substantive cause of action existed prior to the 1991 Act," id. at *10, or whether it was made possible only by the 1991 amendments' expanded

12

right to "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship," 42 U.S.C. § 1981(b). A claim arising under the original statute is subject to the forum state's statute of limitations; in New York, this period is three years. Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 225 (2d Cir. 2004). A claim arising under the 1991 amendments is subject instead to the four-year federal "catch all" period in 28 U.S.C. § 1658. Jones, 541 U.S. at 382.

Accrual for either statute of limitations begins "when a plaintiff knows or has reason to know of the injury that serves as the basis of the action." Singh v. Wells, 445 F. App'x 373, 376 (2d Cir. 2011). "However, where a plaintiff would reasonably have had difficulty discerning the fact or cause of injury at the time it was inflicted, the so-called 'diligence-discovery rule of accrual'" will toll the statute of limitations until the plaintiff has, or with reasonable diligence should have, discovered the "critical facts of both his injury and its cause." Corcoran v. New York Power Auth., 202 F.3d 530, 544 (2d Cir. 1999) (internal quotation marks omitted). Discovery of the "critical facts" of injury and causation "requires only knowledge of, or knowledge that could lead to, the basic facts of the injury . . . . [A] plaintiff need not know each and every relevant fact of his injury or even that the injury implicates a cognizable legal claim.

13

Rather, a claim will accrue when the plaintiff knows, or should know, enough . . . to protect himself by seeking legal advice." Kronisch v. United States, 150 F.3d 112, 121 (2d Cir. 1998). In the context of discrimination, courts have held that "a discrimination claim accrues 'from the date the claimant receives notice of the allegedly discriminatory decision,'" Singh, 445 F. App'x at 376-77, not when he has reason to know of a possibly discriminatory motive for that conduct. See, e.g., Morse v. Univ. of Vermont, 973 F.2d 122, 125 (2d Cir. 1992) ("In analyzing the timing of accrual in the context of discrimination claims, . . . the proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful.") (internal quotation mark omitted); Morris v. Broadridge Fin. Servs., Inc., 10-CV-1707 JS AKT, 2010 WL 5187669 (E.D.N.Y. Dec. 14, 2010) (citing Milani v. Int'l Bus. Machines Corp., Inc., 322 F. Supp. 2d 434, 453 (S.D.N.Y. 2004) aff'd, 137 F. App'x 430 (2d Cir. Jul. 1, 2005)) ("[I]n employment discrimination cases, lower courts have not stalled the limitations period until the point at which a plaintiff realizes an employer's motive.").[1]

---

[1]   To avoid this well-entrenched standard, plaintiffs reach outside on-point and established law to other fields.  Plaintiffs argue that the relevant accrual standard for their Section 1981 claims is not the diligence-discovery rule, but rather a standard that delays discovery until the plaintiff has information sufficient to adequately plead a cause of action, as was held in a securities fraud case, City of Pontiac Gen. Employees' Ret. Sys. v. MBIA, Inc., 637 F.3d 169, 175 (2d Cir. 2011), and followed by two predatory lending cases, Adkins v. Stanley, 12 Civ. 7667 HB, 2013 WL 3835198, (S.D.N.Y. July 25, 2013), and Saint-Jean v. Emigrant Mortgage Co., 11 Civ. 2122 SJ, 2014 WL 4803933 (E.D.N.Y. Sept. 25, 2014).  However, analysis of statutes of limitations is different in

Here, each plaintiff's claims run from the date of his disqualification, as the adverse and allegedly discriminatory act of disqualification or elimination from competition is sufficient to put a contestant on notice that he should "protect himself by seeking legal advice" and therefore to trigger the statute of limitations.

Plaintiffs seek to toll the limitations period by arguing that, even under the diligence-discovery rule, their claims could not have been discovered until JXJ was disqualified on March 14, 2012. See TAC ¶ 1199. Apart from ignoring the clear law that knowledge of a discriminatory motive is irrelevant, plaintiffs have provided no explanation of how JXJ's disqualification made apparent discrimination that was otherwise obscure; rather, they simply state that JXJ's disqualification alone revealed an actionable disparity of treatment, in a way that plaintiffs' alleged ten prior disqualifications did not. This conclusory assertion is not sufficient to toll the limitations period. In

_____

different contexts, and one accrual rule cannot simply be imported into another body of law.  Plaintiffs' proposed accrual standard derives from cases in distinct fields under different statutes, where the actionable conduct may go wholly unnoticed until after the limitations period.  Indeed, predatory lending by its nature remains unknown to the victim, and securities fraud is subject to a distinct, heightened pleading standard, making these areas entirely inapt. By contrast, where, as here, discrimination results in a clear adverse act and plaintiffs are thereby put on notice of potentially discriminatory conduct, the limitations period need not be so postponed and, as in the employment discrimination context, the diligence-discovery rule governs.  Thus, Second Circuit precedent--notably decided after City of Pontiac--expressly affirms that discrimination claims accrue at the time of the discriminatory conduct, not when plaintiffs later amass "actionable evidence of discrimination." Singh v. Wells, 445 F. App'x 373, 377 (2d Cir. 2011) (emphasis added).

addition, courts will not "apply equitable tolling where the claimant contends that he or she discovered the alleged discriminatory motive for the employer's act years later, based upon the employer's treatment of other employees." Jones v. Long Island R. Co., 96-CV-0433 (FB), 1998 WL 221365 (E.D.N.Y. May 1, 1998) aff'd sub nom. Jones v. Long Island R.R., 173 F.3d 844 (2d Cir. 1999). Nor can accrual of plaintiffs' claims be extended by the continuing violations doctrine: "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" each "constitute[] a separate actionable unlawful employment practice," Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002) (internal quotation marks omitted), such that where a discrete act "fall[s] outside the limitations period, [it] cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period." Chin v. Port Auth. of New York & New Jersey, 685 F.3d 135, 157 (2d Cir. 2012) cert. denied, 133 S. Ct. 1724 (2013).

As detailed earlier, plaintiffs Andrews, Clark, Smalley, Williams, Brittenum, Watson, Daniels, and Joyner were eliminated from the competition on or before March 4, 2009, over four years before commencing this action. As such, under either statute of limitations, their Section 1981 claims are time-barred.

Because Golightly was not disqualified until February 16, 2010, three years before filing the complaint, we analyze his claims to see which survive as falling under the longer federal period. In Counts I-III, Golightly alleges interference with the "benefits and privileges" of several contracts: the 19 Entertainment Contracts, TAC ¶¶ 1173, the American Idol Contestant Agreement, id. ¶¶ 1218-21, and an implied-in-fact "Advertised Prize Contract," in which American Idol promised contestants the opportunity to win prizes and "life-altering privileges and benefits" "flowing from their participation" on the show, id. ¶¶ 1204, 1210-11. Such claims, made possible only by the 1991 Act, are subject to the federal four-year period and therefore remain timely.

In Count IV, however, Golightly alleges interference in the formation of a contract--namely, that defendants' behavior resulted in a failure to hire Golightly, which in turn denied him the right to sign American Idol Productions' employment contracts. Id. ¶¶ 1229, 1234-36. Because this claim arises under the pre-1991 provisions and is subject to New York's three-year statute of limitations, it is time-barred.

### 2. Count VI: 42 U.S.C. § 1985

Plaintiffs Andrews, Clark, Smalley, Williams, T. Brittenum, D. Brittenum, and Watson allege that they were deprived by defendants of their constitutional rights under Section 1985(3).

Specifically, plaintiffs allege that defendants conspired to disqualify contestants on the basis of their criminal records without first providing them an opportunity to explain those criminal charges, thereby violating plaintiffs' Fourteenth Amendment due process rights. Id. ¶ 1294. Plaintiffs also allege that defendants Lythgoe and Warwick conspired to exploit and perpetuate stereotypes of African-American criminality by using plaintiffs' criminal records to disqualify them and, in so doing, violated plaintiffs' Thirteenth Amendment rights to be free from the "badges and incidents of slavery." Id. ¶ 1296.

Whether these claims would survive legal analysis, Section 1985(3) claims filed in New York are subject to a three-year limitations period. See, e.g., Keitt v. New York City, 882 F. Supp. 2d 412, 441 (S.D.N.Y. 2011); Hason v. Office of Prof'l Med. Conduct, 314 F. Supp. 2d 241, 249-50 (S.D.N.Y. 2004). Because these plaintiffs were disqualified on or before September 9, 2006, their claims are time-barred.

### 3. Count VII: Title VII

Plaintiffs allege that defendants maintained racially discriminatory disqualification practices in violation of Title VII, and they seek a permanent injunction restraining defendants from continuing such a policy of discrimination against African-Americans. TAC ¶ 1308.

18

"In states such as New York that have an agency with the authority to address charges of discriminatory employment practices, the statute of limitations for filing a charge of discrimination with the EEOC is 300 days." Manko v. Deutsche Bank, 554 F. Supp. 2d 467, 476 (S.D.N.Y. 2008) (NRB) aff'd, 354 F. App'x 559 (2d Cir. 2009) (quoting Butts v. City of N.Y. Dep't of Hous. Preservation & Dev., 990 F.2d 1397, 1401 (2d Cir.1993)). "This limitations period begins to run from the date that each discrete act, 'such as termination, failure to promote, denial of transfer, or refusal to hire,' occurs." Id. (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002)). Plaintiffs here did not file charges with the EEOC until January 2013, despite being eliminated from the competition on or before February 16, 2010 (dkt. no. 53, Ex. C-1). As such, their claims are time-barred.[2]

#### 4. Count VIII: Rescission

All plaintiffs seek rescission of their Contestant Agreements and put forth several grounds on which these contracts could be voided. Specifically, plaintiffs argue that the Contestant Agreements should be rescinded because they are illusory, because they were created as a result of fraud-in-the-factum, and because

---

[2] While we dismiss this claim as time-barred, we note that, were we to proceed to merits adjudication, we would have serious doubts as to whether plaintiffs have standing to proceed with such a claim for injunctive relief. We also entertain serious doubt as to whether plaintiffs could prove employee status, given that the Contestant Agreement explicitly provides that the contestant is "not . . . an employee of Producer . . . ." (dkt. no. 45, Ex. 2).

they violate 47 U.S.C. § 509, 47 C.F.R. § 73.216, and Cal. Civ. Code § 1668.  TAC ¶¶ 1315-16.

Claims for rescission are subject to a four-year statute of limitations under Cal. Civ. Proc. Code § 337(3).[3]   See, e.g., Gusenkov v. Washington Mut. Bank, C09-04747 SI, 2010 WL 725815, at *4 (N.D. Cal. Feb. 26, 2010).  The limitations period runs from "the date upon which the facts that entitle the aggrieved party to rescind occurred.  Where the ground for rescission is fraud or mistake, the time does not begin to run until the discovery by the aggrieved party of the facts constituting the fraud or mistake." Cal. Civ. Proc. Code § 337(3); Kulberg v. Washington Mut. Bank, 10-CV-1214 W BLM, 2011 WL 1431512, at *6 (S.D. Cal. Apr. 14, 2011). This discovery rule does not, however, excuse the plaintiff's "duty to exercise diligence to discover the facts"; thus, "when the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation (such as public records or corporation books), the statute commences to run." Schmidt v. Wells Fargo Bank, N.A., C 13-01509 WHA, 2013 WL 3187418, at *4 (N.D. Cal. June 21, 2013); see also Fitzgerald v. Pharmacia Corp., 01 Civ. 6974 (NRB), 2002 WL 826824 (S.D.N.Y. Apr. 30, 2002) aff'd, 55 F. App'x 589 (2d Cir. 2003) ("Under California law, 'a

---

[3] Parties apply California law, pursuant to the Contestant Agreements' California choice-of-law clause, TAC ¶ 305.

limitations period dependent on discovery of the cause of action begins to run no later than the time the plaintiff learns, or should have learned, the facts essential to his claim . . . . [I]t is irrelevant that the plaintiff is ignorant of his legal remedy or the legal theories underlying his cause of action.'") (quoting Gutierrez v. Mofid, 218 Cal. Rptr. 313, 316 (Cal. 1985)).

As with plaintiffs' Section 1981 claims, the relevant dates of accrual under Section 337 are plaintiffs' dates of disqualification, as each disqualification serves as the basis for rescission and would put a reasonable person on notice of possible fraud or wrongdoing.  Accordingly, because all plaintiffs except Golightly were disqualified on or before March 4, 2009, their claims are time-barred.  However, because Golighty was not disqualified until February 16, 2010, his claim is timely.

### 5. Count IX: Violation of Cal. Labor Code § 432.7

Plaintiffs Andrews, Clark, Smalley, T. Brittenum, D. Brittenum, Watson, Joyner, and Golightly allege that, by disqualifying plaintiffs on the basis of their arrests, defendants violated California Labor Code § 432.7(a), which provides that "[no] employer . . . shall . . . utilize, as a factor in determining any condition of employment including . . . termination . . . any record of arrest . . . that did not result in conviction . . . ." TAC ¶¶ 1423-24.

It is not immediately apparent what limitations period applies to these claims. Defendants have proposed that claims under Section 432.7 may be subject either to a one-year period under Cal. Civ. Proc. Code § 340 ("an action upon a statute for penalty or forfeiture") or to a three-year period under Cal. Civ. Proc. Code § 338 ("[a]n action upon a liability created by statute, other than a penalty or forfeiture"). One California case, in which an employee who was terminated on January 27, 1999 brought claims under § 432.7 on June 29, 2000 and had those claims "barred by the pertinent limitations periods," suggests that the relevant limitations period is in fact one year. Simms v. Moreno Valley Unified Sch. Dist., E031105, 2002 WL 31840892 (Cal. Ct. App. Dec. 19, 2002) (unpublished). Plaintiffs have curiously argued that their claims are subject to a two-year statute of limitations under Cal. Civ. Proc. Code § 335, which gives the period for "[a]n action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another." However, under any of these provisions, including plaintiffs' preferred limitations period, plaintiffs' claims are time-barred because plaintiffs were disqualified on or before February 16, 2010, more than three years before the filing of the complaint.

### 6. Count X: Constructive Fraud

All plaintiffs allege that defendants misrepresented the true nature of the American Idol contest, leading plaintiffs to believe

22

that the show featured a bona fide contest determined by merit when in fact defendants "rigged" the competition results.  TAC ¶¶ 1432, 1452.  By so misleading plaintiffs, defendants allegedly breached a duty to manage plaintiffs' musical careers and to act in plaintiffs' best interests, committing constructive fraud. Id. ¶ 1450.

Constructive fraud and other fraud-based claims are subject to a three-year statute of limitations under Cal. Civ. Proc. Code § 338(d).  See Hall v. FedEx Freight, Inc., 1:13-CV-01711 SKO, 2014 WL 3401386, at *10 (E.D. Cal. July 11, 2014); POGA MGMT PTNRS LLC v. Medfiler LLC, C 12-06087 SBA, 2014 WL 3963854, at *7 (N.D. Cal. Aug. 12, 2014).   While the limitations period does not run "until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake," Cal. Civ. Proc. Code § 338(d), the discovery rule "only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action. . . . In other words, plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." Clark v. Prudential Ins. Co. of Am., 289 F.R.D. 144, 192 (D.N.J. 2013) (citing Fox v. Ethicon Endo-Surgery, Inc., 110 P.3d 914 (Cal. 2005)).

As with plaintiffs' Section 1981 and rescission claims, the limitations period runs from the plaintiffs' dates of

disqualification.  Because plaintiffs were disqualified more than three years before filing the complaint, their claims are accordingly time-barred.

### 7. Count XI: Unjust Enrichment

Finally, plaintiffs allege that defendants were unjustly enriched by benefits received from plaintiffs' participation on the show.  TAC ¶¶ 1465-70.  Claims for unjust enrichment are subject to a two-year statute of limitations under Cal. Civ. Proc. Code § 339 (actions "upon a contract, obligation or liability not founded upon an instrument of writing").  See Lechner v. Capital Grp. Companies, Inc., 328 F. App'x 570, 570 (9th Cir. 2009) (affirming that plaintiff's claims alleging, inter alia, breach of contract and unjust enrichment "were barred under California's two-year statute of limitations"); Evans v. Linden Research, Inc., C-11-01078 DMR, 2013 WL 5781284 (N.D. Cal. Oct. 25, 2013) ("Claims for . . . unjust enrichment must be brought within two years of the alleged wrongdoing.").  Because all plaintiffs were disqualified more than three years before filing the complaint, their claims are time-barred.

In sum, we dismiss all plaintiffs' claims as time-barred, with the exception of Golightly's claims under Section 1981 in Counts I, II, and III, and for rescission in Count VIII.

24

## C. Golightly Fails to State a Claim under Section 1981

To state a claim under Section 1981, a plaintiff must allege facts showing: (1) he is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute. Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993). "In order to survive a motion to dismiss, the events of the intentional and purposeful discrimination, as well as the racial animus constituting the motivating factor for the defendant's actions must be specifically pleaded in the complaint." Dove v. Fordham Univ., 56 F. Supp. 2d 330, 339 (S.D.N.Y. 1999) aff'd sub nom. Dove v. O'Hare, 210 F.3d 354 (2d Cir. 2000) (internal quotation marks omitted). Thus, a complaint must include "fact-specific allegations of a causal link between the defendant's actions and the plaintiff's race," and "conclusory or naked allegations will not suffice." Grimes v. Fremont Gen. Corp., 785 F. Supp. 2d 269, 296 (S.D.N.Y. 2011). Moreover, "a complaint with other possible motives for the alleged conduct that does not contain specific facts supporting a claim of racial animus contradicts a claim of racial discrimination." Robledo v. Bond No. 9, 965 F. Supp. 2d 470, 475 (S.D.N.Y. 2013) (internal quotation marks omitted).

Here, the complaint alleges that Golightly is a member of a racial minority, TAC ¶ 813, and that the discrimination concerned

the right to make and benefit from contracts, id. ¶¶ 1173, 1204, 1222. However, the complaint fails to plead sufficient facts suggesting that defendants intended to discriminate against Golightly on the basis of his race.

While the complaint asserts that defendants disqualified Golightly because he was an African-American man with a criminal record, id. ¶ 837, it offers no facts beyond this bare allegation of racism to show that either Golightly's race or his criminal record motivated his disqualification.    Rather, the complaint provides a clear motive for Golightly's disqualification that does not turn on racial animus: Golightly's participation in a pre-existing music group.    The Contestant Agreement that Golightly signed explicitly requires contestants to warrant that they "have not previously . . . enter[ed] into any commercial, contractual . . . or other agreement . . . with respect to [their] performing abilities and entertainment career . . . ." (dkt. no. 45, Ex. 2.). As the complaint details, Golightly had been under contract as a member of a boy band named DREAM5, although he was allegedly released from the contract before auditioning for American Idol; defendants consequently disqualified him for failing to disclose this contract.    TAC ¶¶ 816-19, 823, 827-30, 835.    This disqualification as a result of Golightly's prior contract bears no apparent relation to Golightly's race or his criminal record, no less the combination thereof that serves as the gravamen of

plaintiffs' complaint. Indeed, the complaint does not allege any facts to show that producers even knew of Golightly's criminal history. See id. ¶ 815 (merely stating that Golightly had an arrest record, not that this record was reported to or discovered by American Idol).

Moreover, the complaint admits that a white contestant was disqualified for the same reason in the preceding season. See id. ¶¶ 960-61 ("Joanna Pacitti was declared 'ineligible' to compete . . . because her professional recording career was already being managed . . . ."). The recurrence of this justification without regard to race further undermines any claim that Golightly was unfairly singled out for disqualification on account of his race or that the proffered justification was not a genuine one.

Thus, standing alone, the complaint's naked assertion that "Mr. Golightly was disqualified as a Top 24 American Idol Semi-Finalist predominately [sic] because of his status as an African-American citizen coupled with Mr. Golightly's history of misdemeanor arrests," id. ¶ 837, and that defendants' explanation "was mere pretext," id. ¶ 836, is not sufficient to show racial animus. See Stoner v. Young Concert Artists, Inc., 11 Civ. 7279 LAP, 2012 WL 4471602 (S.D.N.Y. Sept. 26, 2012) reconsideration denied, 11 Civ. 7279 LAP, 2013 WL 2425137 (S.D.N.Y. May 20, 2013) (dismissing claims even under the more forgiving standard applied to pro se plaintiffs where "Plaintiff's own pleadings and the

documents incorporated by reference establish a legitimate, nondiscriminatory and non-retaliatory reason for Defendant's choice not to advance him to the semi-final round of competition" and the complaint only "asserts in the most conclusory fashion that the [proffered justification was] merely a pretext for Defendant's . . . animus"). Golightly's Section 1981 claims are therefore dismissed.[4]

## D. Golightly Fails to State a Federal Claim for Rescission

To rescind a contract, a plaintiff must state a claim for which rescission could be the remedy and seek rescission as relief. Moreno v. Citibank, N.A., C 09-5339 CW, 2010 WL 1038222 (N.D. Cal. Mar. 19, 2010); see also Lee v. Wells Fargo Bank, N.A., 5:12-CV-02820 EJD, 2013 WL 1117866 (N.D. Cal. Mar. 18, 2013) ("Rescission is not a cause of action; it is merely a remedy."). Golightly here seeks to rescind his Contestant Agreement and alleges essentially five claims for which rescission could be granted, two federal and three state. As discussed below, we find that neither federal cause of action states a claim on which rescission could be granted, and, in the absence of any remaining federal cause of action, we decline to exercise supplemental jurisdiction over the state claims.

### 1. Rigged Contest under 47 U.S.C. § 509

---

[4] Because we find that plaintiffs fail to state a claim under Section 1981, we need not address defendants' argument that plaintiffs' claims are barred by the First Amendment. Def's MTD Mem at 6-9.

First, Golightly seeks rescission on the ground that defendants violated 47 U.S.C. § 509, which makes it "unlawful for any person, with intent to deceive the listening or viewing public," to "engage in any artifice or scheme for the purpose of prearranging . . . the outcome of a purportedly bona fide contest of intellectual knowledge, intellectual skill, or chance." 47 U.S.C. § 509(a).

Section 509, however, does not create a private cause of action on which a claim for rescission may be based. See 47 U.S.C. §§ 509(c), 503(b) (specifying penalties for violations of the Act); Mehdi v. Boyce, 931 F. Supp. 268, 271 (S.D.N.Y. 1996) aff'd sub nom. Mehdi v. WABC Radio 77, 125 F.3d 844 (2d Cir. 1997) ("There is no private right of action available under the Communications Act of 1934, 47 U.S.C. §§ 151 et seq., that would permit the Court to pass judgment in this action . . . ."); Guitar v. Westinghouse Elec. Corp., 396 F. Supp. 1042, 1057 (S.D.N.Y. 1975) aff'd, 538 F.2d 309 (2d Cir. 1976) (rejecting claims for violations of 47 U.S.C. §§ 317, 501, 502, 503, and 508 because the "Act did not create, even by implication, a cause of action cognizable in the district courts, the court's sole function being the review of final orders of the F.C.C. after the plaintiff has invoked the

primary and exclusive jurisdiction of that commission")(citations omitted).  This claim is therefore dismissed.[5]

### 2. False Advertising under 47 C.F.R. § 73.1216

Second, Golightly seeks rescission on the ground that defendants violated Federal Communications Commission regulation § 73.1216, which requires a "licensee that broadcasts or advertises information about a contest it conducts" to "fully and accurately disclose the material terms of the contest, and [to] conduct the contest substantially as announced or advertised."  47 C.F.R. § 73.1216.

Like Section 509, Section 73.1216 does not create a private cause of action on which plaintiffs can state a claim for rescission.  See Conboy v. AT & T Corp., 241 F.3d 242, 251-54 (2d Cir. 2001) (affirming dismissal of claims for violations of FCC regulations "on the ground that the Telecommunications Act neither provides for an explicit nor implicit private right of action for a violation of these regulations"); Bernas v. Cablevision Sys. Corp., 215 F. App'x 64, 67 (2d Cir. 2007) ("Unless some statute authorizes a general private right of action to enforce FCC regulations, there is none."); see also Ibarra v. W.Q.S.U. Radio Broad. Org., 4:06-CV-195, 2006 U.S. Dist. LEXIS 97642, at *6-7

---

[5] While we need not address the merits of this claim, we note that, were we to reach its merits, we would also have serious questions as to whether American Idol, a singing and talent competition, constitutes a "contest of intellectual knowledge, intellectual skill, or chance" covered by the statute.

(March 6, 2008 M.D. Pa.) (refusing to imply a private right of action for § 73.1216 because "any failure to comply with the federal communications laws on the part of the defendants must be addressed by the F.C.C., the governing regulatory agency, and not the courts"). Thus, this claim is likewise dismissed.

### 3. Plaintiffs' Remaining Claims

The complaint also seeks rescission on three state law grounds, namely that: 1) the Contestant Agreement violates Cal. Civ. Code § 1668, which prohibits contracts that "exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law"; 2) the Contestant Agreement is illusory and violates the legal duty rule because defendants incurred no obligations under it; and 3) Golightly signed the Contestant Agreement without understanding its "nature, contents or consequences" because the defendants misrepresented American Idol as a bona fide contest, resulting in fraud-in-the-factum.

The Second Circuit has "generally held that where all federal claims have been dismissed at a relatively early stage, the district court should decline to exercise supplemental jurisdiction over pendent state law claims." Astra Media Group. LLC v. Clear Channel Taxi Media, LLC, 414 F. App'x 334, 337 (2d Cir. 2011) (summary order) (citing Second Circuit cases). Having dismissed all of plaintiffs' federal claims early in this

31

litigation, we decline to exercise supplemental jurisdiction over plaintiffs' remaining state law claims, which are hereby dismissed without prejudice.

In conclusion, we dismiss plaintiffs' claims as time-barred with the exception of Golightly's claims under Section 1981 and for rescission, and we dismiss Golightly's Section 1981 and rescission claims under federal law for failure to state a claim and his rescission claims under state law without prejudice.[6] Defendants' motion to dismiss is therefore granted in full.

## II.   Motion for Reargument

### A. Legal Standard

A motion for reargument "is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." Compagnia Importazioni Esportazioni Rappresentanze v. L-3 Commc'ns Corp., 06 Civ. 3157 (NRB), 2010 WL 1378992, at *1 (S.D.N.Y. Mar. 30, 2010) (internal quotation marks omitted). "To be entitled to reargument, a party must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion." Eisemann v. Greene, 204 F.3d 393, 395 n.2 (2d Cir. 2000). A motion for reargument does not constitute a "second bite at the

---

[6] In any event, Golightly's claims would likely be subject to mandatory arbitration under the terms of his contestant agreement. See Def's MTD Mem. at 4 n.4; Robertson Decl., Ex. 1 at 2.

apple" for a party dissatisfied with a court's ruling, Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998), nor is it a vehicle to advance new theories a party failed to articulate when arguing the underlying motion.  See L-3 Commc'ns Corp., 2010 WL 1378992, at *1; Griffin Ins., Inc. v. Petrojam, Ltd., 72 F.Supp.2d 365, 368 (S.D.N.Y. 1999).  Finally, the decision to grant or deny a motion for reconsideration is within the sound discretion of the district court.  L-3 Commc'ns Corp., 2010 WL 1378992, at *1.

### B. Plaintiffs' Motion

Plaintiffs dispute the propriety of the Court's decisions in the April Order denying plaintiffs leave to file a fourth amended complaint, striking plaintiffs' motions filed without leave, and striking plaintiffs' supplemental opposition brief filed without leave.  As we explain below, none of these arguments is availing.

### 1. Denial of Leave to File a Fourth Amended Complaint

Plaintiffs first argue that the Court erred in refusing them leave to file a fourth amended complaint under Fed. R. Civ. P. 15. Specifically, plaintiffs contend that courts can only deny leave to amend on the basis of certain listed criteria not referenced in the April Order and that courts cannot preemptively set a final time to amend as we did in the January Order.  Pl's Rearg. Mem. at 4-6.

It is well established that the standard for amendment of pleadings in Fed. R. Civ. P. 15(a), while liberal, is not without

its limits.    Among those limits are futility, undue delay, bad
faith or dilatory motive, or where the plaintiff has already had
several prior opportunities to amend his complaint.    Foman v.
Davis, 371 U.S. 178, 182 (1962).  These criteria are not exhaustive
and courts retain "discretion to deny leave if there is a good
reason for it."  Jin v. Metro. Life Ins. Co., 310 F.3d 84, 101 (2d
Cir. 2002); see also id. (only an "[o]utright refusal to grant the
leave without any justifying reason" will be considered an abuse
of discretion warranting reversal); Dluhos v. Floating & Abandoned
Vessel, Known as New York, 162 F.3d 63, 69 (2d Cir. 1998) ("[A]
motion to amend should be denied if there is an 'apparent or
declared reason . . . .'") (emphasis added) (quoting Foman, 371
U.S. at 182)).  The underlying purpose of this liberal standard is
to provide plaintiffs with early notice of problems with their
pleadings and an opportunity to cure them; once that purpose is
met, plaintiffs may not abuse the process by excessive amendment
and re-pleading.

    Here, plaintiffs have already amended their complaint twice
after receiving notice of defendants' challenges, first in a pre-
motion letter and once after briefing on a motion to dismiss had
already begun.    What's more, those amendments have not cured the
complaint's prolixity or deficiencies, and plaintiffs' own brief
acknowledges that plaintiffs are not "seeking to cure any
deficiencies in the" TAC by the proposed fourth amendment.    Pl's

Rearg. Mem. at 13.   Given these circumstances, we decline to revisit the April Order's denial of leave to amend.   See Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1096 (2d Cir. 1995) (affirming dismissal without leave to amend "in light of the very fundamental deficiencies in [plaintiff's] assertions . . . and the overall history of this litigation"); Salinger v. Projectavision, Inc., 972 F. Supp. 222, 236 (S.D.N.Y. 1997) ("Three bites at the apple is enough.").

The court's ability to reject excessive amendments also logically permits it to set a final time for plaintiffs to amend their pleadings, without waiting to deny each subsequent request as it arises.   Indeed, courts routinely engage in this practice of setting a final opportunity for amendment.   See, e.g., Holmes v. Harris, 11 Civ. 1543 LTS DF, 2013 WL 1195283 (S.D.N.Y. Mar. 25, 2013) ("Plaintiffs are hereby granted one last opportunity to amend their pleadings."); Gillman v. Inner City Broad. Corp., 08 Civ. 8909 LAP, 2009 WL 3003244 (S.D.N.Y. Sept. 18, 2009) ("Plaintiff shall have 30 days to file an amended complaint . . . . No other amendments shall be permitted").   The same justifications for denying leave to amend in the April Order consequently underlie and validate the Court's decision in the January Order to deny plaintiffs further opportunities to amend.[7]

---

[7] To the extent that plaintiffs also argue that Fed. R. Civ. P. 16, which contemplates that a scheduling order will govern the timeliness of amendments to pleadings, prohibits courts from foreclosing future amendments, that argument

## 2. Plaintiff's Stricken 12(i) and 12(d) Motions

Plaintiffs also argue that the court erred in striking plaintiffs' 12(i) and 12(d) motions because the motions were not "a blatant end-run around this Court's page limitations," as we asserted in the April Order, nor were they filed without leave and in violation of our Individual Rules. Plaintiffs further contend that, to the extent their motions did run afoul of the Court's Individual Rules, the Individual Rules should be abandoned because they subvert the adversarial system. Pl's Rearg. Mem. at 14-18.

First, we reject as sophistry plaintiffs' assertion that their motions were not filed without leave and in violation of Individual Rule (2)(b), which requires parties to request a pre-motion conference and either attend such a conference or receive leave from the Court before making a motion. Plaintiffs argue that by styling their motions as "motions for leave to file," they comported with the "spirit," if not the letter, of our Individual Rules, even though they filed the motions without waiting for leave or a response from the Court. Pl's Rearg. Mem. at 16, 18. However, simply labelling a motion one "for leave to file" does not change the fact that it is, nevertheless, a motion filed without leave, nor does it achieve the pre-motion conference requirement's aim of "resolving conflicts between the parties and preventing the filing

---

is belied by both the logic of the Rules and the numerous cases affirming a district court's proactive denial of leave to amend, see supra.

of unnecessary papers," Richardson Greenshields Sec., Inc. v. Lau, 825 F.2d 647, 652 (2d Cir. 1987).  Moreover, in so arguing, plaintiffs expressly concede that they did not comply with the pre-motion conference requirement.  See Pl's Rearg Mem. at 18 n.15.

This violation alone would justify a decision to strike plaintiffs' motions.  See, e.g., Sgalambo v. McKenzie, 739 F. Supp. 2d 453, 464 (S.D.N.Y. 2010) (decrying a "thinly veiled attempt to skirt [the page limits] of this Court's Individual Rules" and noting that any further submission failing to "comply with the Court's Individual Rules . . . will be rejected"); House v. Wackenhut Servs., Inc., 10 Civ. 9476 CM FM, 2012 WL 4017334, at *2 (S.D.N.Y. Aug. 20, 2012) ("[The court] would have been well within [its] rights to strike plaintiff's memoranda for failure to comply with [its] guidelines.").

However, such a decision is particularly warranted here where, rather than a technical error, the failure to comply with our Individual Rules represented little more than a "blatant end-run" around our page limitations.  Plaintiffs' suggestion that the April Order unfairly characterized these motions does not withstand even cursory analysis, as the stricken motions clearly sought to expand plaintiffs' briefing space: for example, while a major portion of defendants' brief argues that statutes of limitations bar plaintiffs' claims (as we so find), plaintiffs' answering brief makes no reference to any statute of limitations;

instead, their opposition is contained entirely within their stricken 12(i) brief.   Further, plaintiffs argue that they were driven to file their motions by defendants' pleading of "affirmative defenses" and laying of "procedural trap[s]" in their motion to dismiss, which necessitated further rebuttal by plaintiffs--an argument that only reinforces our conclusion that plaintiffs' motions were no more than an attempt to acquire additional briefing space to which plaintiffs knew they were not entitled under the Individual Rules.   Pl's Rearg. Mem. at 16-18. Motions to dismiss routinely address affirmative defenses such as the statute of limitations and parties who oppose such motions nevertheless comply with the court's Individual Rules and page limitations; plaintiffs here have offered no compelling reason for their deviation from those rules, and certainly no reason for not having sought leave before undertaking additional briefing or motion practice.

Second, we reject plaintiffs' challenge to the pre-motion conference requirement.   While plaintiffs are correct that a court cannot generally prohibit parties from filing motions altogether, see Richardson Greenshields Sec., Inc. v. Lau, 825 F.2d 647, 652 (2d Cir. 1987), courts may place certain conditions on the filing of motions, most notably by requiring parties to attend a pre-motion conference.   Indeed, the very cases affirming a party's right to file are quick to insert this caveat.   See Lau, 825 F.2d

at 652 ("We do not suggest that district judges cannot require a conference prior to the filing of motions as a means of managing litigation assigned to them."); Milltex Indus. Corp. v. Jacquard Lace Co., 55 F.3d 34, 39 (2d Cir. 1995) ("[I]t is within the judge's discretion to hold a pre-motion conference for the purpose of persuading a party not to file a perceived meritless motion [so long as the judge] not require that the court's permission be secured . . . .").

Unlike in Lau, where the court effectively prevented the plaintiffs from filing their motion by requiring a pre-motion conference, failing to hold a conference for five months, and then denying the motion as untimely, 825 F.2d at 652, plaintiffs here filed their motions a bare three days after requesting a pre-motion conference--on the Monday following a Friday letter, no less--and nothing in the plaintiffs' request indicated that time was of the essence. See Pl's. 4/11 Letter (requesting a conference "at the Court's earliest convenience"). This is not a situation where judicial negligence or intransigeance prevented longsuffering parties from filing motions to which they were entitled; plaintiffs here simply decided not to wait for the Court to respond and actively manage the case, as it had done in its previous pre-motion conference and dealings with the parties. In essence, plaintiffs' premature and excessive filing has impeded an efficient resolution of the case--the very end that the pre-motion

conference requirement seeks to avoid and for which it has been upheld.

### 3. Plaintiff's Stricken Opposition Brief

Finally, plaintiffs concede that they filed their supplemental opposition brief in "non-compliance with the Individual Practices" but argue that the Court should reinstate the brief in order to facilitate thorough resolution on the merits and as a sanction for defendants' "gross[] misrepresent[ation]" of law in their reply brief. Pl's Rearg. Mem. at 24-25.

Plaintiffs' justifications for the additional brief are unavailing. The traditional briefing schedule followed by all parties is sufficient for the Court to adequately consider and decide a motion to dismiss, and we have found no legal misrepresentations made by the defendant. More importantly, nothing prevented the plaintiffs from requesting permission to file additional briefing in advance of filing had they felt it necessary.

Plaintiffs' motion for reargument is therefore denied.[8]


### III.   Request for a Pre-Motion Conference

Finally, plaintiffs request a pre-motion conference in anticipation of filing a motion to amend the April Order pursuant

---

[8] Although we decline to reconsider our decision to strike plaintiffs' motions and brief, we note that we have reviewed the stricken materials and find nothing in them that would alter our analysis of the present motions.

to Fed. R. Civ. P. 60. Specifically, plaintiffs seek to amend the April Order under Fed. R. Civ. P. 60(b), which permits relief from a final judgment, on the ground that the Order "stands for the [erroneous] proposition that the district court has ultimate authority to decide which litigants get to make motions." Pl's 5/1 Letter at 1. They also seek to correct certain factual errors in the April Order under Fed. R. Civ. P. 60(a), namely its assertion that plaintiffs filed their proposed "Motion for Partial Summary Judgment on Counts I-V and Count VII, or Alternatively, to Foreclose the First Amendment as an Affirmative Defense" without leave, when in fact they filed no such motion because the motion they ultimately filed was titled "Motion Pursuant to Fed. F. Civ. P. 12(d) to Exclude Matters Outside the Pleadings or, in the Alternative, to Convert Defendants' Motion to Dismiss the Third Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) to One for Summary Judgment under Fed. R. Civ. P. 56." Id. at 2-3.

Such a conference would be unnecessary. Rule 60(b) applies only to "final" orders that "terminate the litigation," and therefore does not govern the April Order. See Silverman v. Miranda, 06-CV-13222 ER, 2014 WL 3728622, at *3 (S.D.N.Y. July 28, 2014). To the extent that the April Order mislabeled the motion that plaintiffs ultimately filed, we forthrightly admit our error at having failed to in effect proof the filing records against plaintiffs' letter, having never assumed that counsel would file

41

a motion not only without leave but without having even requested leave in a pre-motion letter.  We find no further error in the April Order, and therefore see no need for further conference or motion on the subject.

## CONCLUSION

For the aforementioned reasons, defendants' motion to dismiss the complaint is granted insofar as this Court dismisses all federal claims with prejudice and the state law claims without prejudice.  Plaintiffs' motion for reargument and request for a pre-motion conference are also denied.  This Memorandum and Order resolves docket numbers 47, 66, and 68, and the Clerk of Court is respectfully requested to close this case.


**SO ORDERED.**


Dated:    New York, New York
          November 19, 2014

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE